## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

THOMAS CASHMAN,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION, STEVEN A. MILLS,
CHARLES ILL, JOHN R. JOYCE, and
GREGORY ENRIQUEZ,
Defendants.

Civil Action No. 05-10306-RWZ

### IBM CORPORATION'S AND GREGORY ENRIQUEZ' ANSWER
### TO THE FIRST AMENDED COMPLAINT

Defendants International Business Machines Corporation ("IBM") and Gregory Enriquez

(collectively referred to herein as "Defendants"), by counsel, hereby respond to the First

Amended Complaint ("Complaint")[1] as follows:

### FIRST DEFENSE

Defendants respond to the individually-numbered paragraphs of the Complaint as

follows:

1.

The allegations in paragraph 1 constitute a conclusion of law to which no response is

required.  If a response is required, the allegations are denied as to the Trial Court of the

Commonwealth of Massachusetts.

---

[1] The Complaint was amended before it was served upon defendants.  To the extent required, this answer is
a response to the original complaint as well.

2.

Defendants admit that the quoted language in paragraph 2 is an excerpt from the

Massachusetts Wage Act, G.L. ch 149, § 148. IBM denies the remaining allegations of

paragraph 2, if any.

3.

The allegations in paragraph 3 constitute a conclusion of law to which no response is

required. If a response is required, the allegations are denied. The allegations are also moot

since this action has been removed to the United States District Court for the District of

Massachusetts.

4.

Defendants are without knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 4.

5.

IBM admits that it re-hired Plaintiff to work in sales for Tivoli on or about February 3,

1997, and that Plaintiff terminated his employment with IBM on or about November 30, 2004.

IBM further admits that from February 1997 to November 2004, Plaintiff held several different

positions including being a Tivoli Sales Second Line Manager and a Business Unit Executive.

IBM denies the remaining allegations of paragraph 5. Mr. Enriquez states the allegations in

paragraph 5 are not directed toward him. To the extent a response is required, he is without

knowledge or information sufficient to form a belief as to the truth of the allegations.

6.

IBM admits that it is a New York corporation with its principal place of business in New

York. IBM admits that it is a foreign corporation registered with the Secretary of State of the

Commonwealth of Massachusetts. IBM further admits that it regularly conducts and solicits

- 2 -

business in the Commonwealth of Massachusetts, and that it has offices in the cities of Boston,

Cambridge, Lexington, Marlborough, North Reading, Waltham and Westford, Massachusetts.

IBM denies the remaining allegations of paragraph 6. Mr. Enriquez states the allegations in

paragraph 6 are not directed toward him. To the extent a response is required, he is without

knowledge or information sufficient to form a belief as to the truth of the allegations.

7.

IBM admits that Charles Ill was employed by IBM as Vice President of Americas

Software in 2001 and 2002. During all or part of that time, Mr. Ill was Mr. Enriquez' direct line

supervisor. The allegations regarding Mr. Ill's status as an employer of Plaintiff constitute a

conclusion of law to which no response is required. If a response is required, the allegations are

denied. IBM denies the remaining allegations of paragraph 7. Mr. Enriquez states the

allegations in paragraph 7 are not directed toward him. To the extent a response is required, he is

without knowledge or information sufficient to form a belief as to the truth of the allegations,

except that Mr. Enriquez admits that Mr. Ill was his direct line supervisor during all or part of

2001 and 2002.

8.

IBM admits that Steven A. Mills' current title is Senior Vice President and Group

Executive of IBM's Software Group ("SWG"). Prior to May 2004, his title was SWG Executive.

IBM admits that Mr. Mills has been head of SWG since July 2000, and that he is responsible for

directing the business of SWG and shaping its strategy. IBM further admits that Mr. Mills was

responsible for reviewing the structure of the SWG sales plans since August 2000. IBM admits

that Mr. Mills maintains an office at IBM's headquarters in New York. IBM admits that Mr.

Mills does travel to Massachusetts on occasion in the course of his employment with IBM. The

- 3 -

allegations regarding Mr. Mills' status as an employer of Plaintiff constitute a conclusion of law to which no response is required. If a response is required, the allegations are denied. IBM denies the remaining allegations of paragraph 8. Mr. Enriquez states the allegations in paragraph 8 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

9.

IBM admits that John R. Joyce is currently Senior Vice President and Group Executive of IBM Global Services. From 1999 through May 1, 2004, he was Chief Financial Officer of IBM, with responsibility for, among other things, the financial activities of IBM. The allegations regarding Mr. Joyce's status as an employer of Plaintiff constitute a conclusion of law to which no response is required. If a response is required, the allegations are denied. IBM denies the remaining allegations of paragraph 9. Mr. Enriquez states the allegations in paragraph 9 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

10.

Defendants admit that Gregory Enriquez had the title Americas Sales Vice President of Tivoli IBM Software Group from May 1, 2000 through February 1, 2002. Defendants further admit that during this time Mr. Enriquez maintained an office in New York and that Mr. Enriquez was Plaintiff's manager in late 2001. Defendants also admit that Mr. Enriquez and Plaintiff communicated via telephone and e-mail regarding Plaintiff's compensation and some of these communications may have been from/to Massachusetts. In addition, Defendants admit that Mr. Enriquez is currently employed by Stratus Technologies in Massachusetts. The allegations regarding Mr. Enriquez' status as an employer of Plaintiff constitute a conclusion of law to which

- 4 -

no response is required. If a response is required, the allegations are denied. Defendants deny the remaining allegations of paragraph 10.

11.

IBM admits that Plaintiff was offered and accepted a position to work with EMEA, which involved being relocated to the Netherlands; that he and his team were to sell to institutional customers, including those in Europe, and that Plaintiff was so assigned, in part, due to prior work experience. IBM denies the remaining allegations of paragraph 11. Mr. Enriquez states the allegations in paragraph 11 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

12.

IBM admits that Plaintiff accepted a position with EMEA in the Netherlands. IBM is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 regarding why Plaintiff accepted the position. IBM denies the remaining allegations in paragraph 12. Mr. Enriquez states the allegations in paragraph 12 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

13.

IBM admits that Plaintiff was assigned as Sales Executive Manager to the EMEA region. IBM denies the remaining allegations of paragraph 13. Mr. Enriquez states the allegations in paragraph 13 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

ATI-2156992v1

14.

IBM admits that Plaintiff's EMEA sales team called upon large institutional customers. IBM denies the remaining allegations of paragraph 14. Mr. Enriquez states the allegations in paragraph 14 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

15.

IBM admits that, in 1999, Plaintiff was assigned to Tivoli. IBM further admits that, in 1999, Tivoli had a sales plan, but denies that Exhibit A is that plan. IBM denies the remaining allegations of paragraph 15. Mr. Enriquez states the allegations in paragraph 15 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

16.

IBM denies the allegations of paragraph 16. Mr. Enriquez states the allegations in paragraph 16 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

17.

IBM denies the allegations of paragraph 17. Mr. Enriquez states the allegations in paragraph 17 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

18.

IBM denies the allegations of paragraph 18. Mr. Enriquez states the allegations in paragraph 18 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

19.

IBM denies the allegations of paragraph 19. Mr. Enriquez states the allegations in paragraph 19 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

20.

IBM denies the allegations of paragraph 20. Mr. Enriquez states the allegations in paragraph 20 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

21.

IBM denies the allegations of paragraph 21. Mr. Enriquez states the allegations in paragraph 21 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

22.

IBM denies the allegations of paragraph 22. Mr. Enriquez states the allegations in paragraph 22 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

23.

IBM denies the allegations of paragraph 23. Mr. Enriquez states the allegations in paragraph 23 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

24.

Defendants admit that Plaintiff was assigned to the Financial territory to sell Tivoli products in 2000. IBM denies the remaining allegations of paragraph 24.

ATI-2156992v1

25.

Defendants admit there was turnover in the software industry, including IBM, in the 1999-2000 time period. Defendants deny the remaining allegations of paragraph 25.

26.

Defendants deny the allegations of paragraph 26.

27.

Defendants deny the allegations in paragraph 27.

28.

Defendants admit that, in 2001, the Tivoli sales force was put on the IBM sales plan for its software group (the "2001 SWG Sales Plan;" the "Plan"), and that previously there was a plan applicable to the Tivoli sales force. Defendants admit that Plaintiff's 2001 Quota Letter shows his pay mix as a percentage of On-Target Earnings would be 50/50 (base salary/commissions and bonuses). Defendants deny that the document attached to the Complaint at Exhibit B is a true and accurate copy of "the 50/50 SWG Sales Plan for 2001," or that it constitutes or otherwise represents the Plan. Defendants deny the remaining allegations of paragraph 28.

29.

Defendants admit that Plaintiff's 2001 Quota Letter shows his 2001 pay mix included a component of base pay which was fixed so long as Plaintiff continued to work for IBM. Another component included possible commissions. There were also bonus opportunities. Plaintiff's 2001 Quota Letter shows his pay mix as a percentage of his on-target earnings at fifty/fifty (base salary/commissions and bonuses). Defendants also admit the Plan contained accelerators for attainment over 100% of quota under certain conditions. Defendants deny the remaining allegations of paragraph 29.

30.

Defendants admit that its 2001 SWG Sales Plan was designed in an effort to be competitive with the industry and to motivate the sales force. Defendants deny the remaining allegations of paragraph 30.

31.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "industry consultants" said that, "[y]our plan 'has some of the most aggressive rewards for overachievement in the industry.'" Defendants deny the remaining allegations of paragraph 31.

32.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which contained a message from Dan Lautenbach, Vice President of Worldwide Software Sales, that "[t]he software sales incentive plan recognizes the unique opportunities our sales force can identify and close this year. It is characterized by extremely high payout rates for business you close in excess of your assigned full year quota. And, because your sales plan is based on a self-funding model, there are no caps to your earnings: the more you sell, the more revenue and incremental profit for IBM, and the more earnings for you." Defendants deny the remaining allegations of paragraph 32.

33.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "[t]he plan should be competitive with the software industry marketplace," and "[t]he plan should be consistent with

industry practice in key areas of uncapped earnings, earnings at first sale, and attractive upside opportunity." Defendants deny the remaining allegations of paragraph 33.

34.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "[t]he plan should motivate Technical Support and Sales Management in a manner consistent with the team they support." Defendants deny the remaining allegations of paragraph 34.

35.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "[w]e have great expectations for a fantastic sales year with unlimited possibilities for you. There's no limit to your 2001 sales incentive opportunity;" "your earnings for performance above quota continue to be uncapped in 2001;" "[a]s soon as you start overachieving your full-year quota, the plan provides significant leverage to reward your performance. And, your earnings for attainment above 100% are uncapped;" and "[y]ou want to earn as much money as you can. We want that too, because when you win, IBM wins." Defendants deny the remaining allegations of paragraph 35.

36.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "[r]evenue drives value for IBM. That's why the revenue measure is the largest portion of the incentive plan for most job roles. Double-digit revenue growth is one of our core business objectives, and we're making sure

the Sales Incentive Plan pays you for helping achieve this goal." Defendants deny the remaining allegations of paragraph 36.

37.

Defendants admit that, in early 2001, IBM provided to some software sales personnel a preliminary overview of the 2001 SWG Sales Plan, which stated that "sales managers have accelerators that are greater than those for sales employees." Defendants deny the remaining allegations of paragraph 37.

38.

Defendants deny the allegations of paragraph 38.

39.

Defendants deny the allegations of paragraph 39, and state that any such e-mail from Steven Mills speaks for itself.

40.

Defendants admit that it designed its 2001 Sales Plan in an effort to be competitive, and that Mr. Mills made a presentation at IBM's E-Business University in early 2001, but deny that the Complaint quotes Mr. Mills correctly. Defendants deny the remaining allegations of paragraph 40.

41.

Defendants deny the allegations of paragraph 41, and state that any such e-mail from Mr. Mills speaks for itself.

- 11 -

42.

Defendants admit that Mr. Mills made a presentation at IBM's E-Business University in early 2001, but deny that the Complaint quotes Mr. Mills correctly. Defendants deny the remaining allegations of paragraph 42.

43.

Defendants deny the allegations of paragraph 43.

44.

Defendants admit that, in or about March 2001, John Dunderdale provided Plaintiff with his Quota Letter; that IBM also provided Plaintiff with a Territory Definition; and that Exhibit C contains a Quota Letter and a Territory Definition. Defendants deny the remaining allegations of paragraph 44.

45.

Defendants deny the allegations of paragraph 45.

46.

Defendants admit that Plaintiff and Mr. Enriquez communicated regarding Plaintiff's compensation and that some of those communications may have taken place while Plaintiff was in Massachusetts. Defendants deny the remaining allegations of paragraph 46.

47.

Defendants deny the allegations of paragraph 47.

48.

Defendants deny the allegations of paragraph 48.

49.

Defendants deny that they failed to honor any commitments to Plaintiff and deny the remaining allegations of paragraph 49.

ATI-2156992v1

50.

Defendants admit that IBM has a published internal grievance procedure known as the "Open Door Policy" to address employee concerns. Defendants deny the remaining allegations of paragraph 50.

51.

Defendants admit that Plaintiff communicated with Mr. Schade, who informed Plaintiff that IBM would not tolerate any form of reprisal for the initiation of an Open Door grievance. Defendants further admit that Mr. Ill was Mr. Enriquez' manager at that time. Defendants deny the remaining allegations of paragraph 51.

52.

Defendants admit that certain sales for 2001 were credited to Plaintiff in 2002. Defendants deny the remaining allegations of paragraph 52.

53.

Defendants admit that Plaintiff filed an appeal of Mr. Ill's decision on June 13, 2002. Defendants deny the remaining allegations of paragraph 53.

54.

Defendants deny the allegations of paragraph 54.

55.

Defendants deny the allegations of paragraph 55.

## COUNT I (Breach of Contract - IBM)

56.

Defendants incorporate herein paragraphs 1 through 55 of the Answer as if each of said paragraphs were restated in their entirety.

- 13 -

ATI-2156992v1

57.

IBM states that the allegations of paragraph 57 constitute a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Mr. Enriquez states the allegations in paragraph 57 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

58.

IBM denies the allegations of paragraph 58. Mr. Enriquez states the allegations in paragraph 58 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

59.

IBM denies the allegations of paragraph 59. Mr. Enriquez states the allegations in paragraph 59 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

60.

IBM denies the allegations of paragraph 60. Mr. Enriquez states the allegations in paragraph 60 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

## COUNT II (Unjust Enrichment/Quantum Meruit - IBM)

61.

Defendants incorporate herein paragraphs 1 through 60 of the Answer as if each of said paragraphs were restated in their entirety.

62.

IBM admits that Plaintiff performed services for IBM in 1999. IBM denies the

remaining allegations of paragraph 62. Mr. Enriquez states the allegations in paragraph 62 are

not directed toward him. To the extent a response is required, he is without knowledge or

information sufficient to form a belief as to the truth of the allegations.

63.

IBM admits that Plaintiff performed services for IBM in 1999. IBM denies the

remaining allegations of paragraph 63. Mr. Enriquez states the allegations in paragraph 63 are

not directed toward him. To the extent a response is required, he is without knowledge or

information sufficient to form a belief as to the truth of the allegations.

64.

IBM denies the allegations of paragraph 64. IBM specifically denies the allegation that it

did not pay Plaintiff "full compensation" for the value of his work during calendar year 1999 and

denies any implication or inference that Plaintiff was entitled to more compensation than he was

paid. Mr. Enriquez states the allegations in paragraph 64 are not directed toward him. To the

extent a response is required, he is without knowledge or information sufficient to form a belief

as to the truth of the allegations.

65.

IBM denies the allegations of paragraph 65. IBM denies any implication or inference

that Plaintiff was entitled to more compensation than he was paid. Mr. Enriquez states the

allegations in paragraph 65 are not directed toward him. To the extent a response is required, he

is without knowledge or information sufficient to form a belief as to the truth of the allegations.

- 15 -

66.

IBM denies the allegations of paragraph 66. Mr. Enriquez states the allegations in paragraph 66 are not directed toward him. To the extent a response is required, he is without knowledge or information sufficient to form a belief as to the truth of the allegations.

## COUNT III (Breach of Contract - IBM)

67.

Defendants incorporate herein paragraphs 1 through 66 of the Answer as if each of said paragraphs were restated in their entirety.

68.

IBM states that the allegations of paragraph 68 constitute a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Mr. Enriquez states the allegations in paragraph 68 are not directed toward him. To the extent a response is required, he denies the allegations.

69.

IBM denies the allegations of paragraph 69. Mr. Enriquez states the allegations in paragraph 69 are not directed toward him. To the extent a response is required, he denies the allegations.

70.

IBM denies the allegations of paragraph 70. Mr. Enriquez states the allegations in paragraph 70 are not directed toward him. To the extent a response is required, he denies the allegations.

71.

IBM denies the allegations of paragraph 71.  Mr. Enriquez states the allegations in paragraph 71 are not directed toward him.  To the extent a response is required, he denies the allegations.

## COUNT IV (Unjust/Enrichment/Quantum Meruit - IBM)

72.

Defendants incorporate herein paragraphs 1 through 71 of the Answer as if each of said paragraphs were restated in their entirety.

73.

IBM admits that Plaintiff performed services for IBM in 2001.  IBM denies the remaining allegations of paragraph 73.  Mr. Enriquez states the allegations in paragraph 73 are not directed toward him.  To the extent a response is required, he denies the allegations.

74.

IBM admits that Plaintiff performed services for IBM in 2001.  IBM denies the remaining allegations of paragraph 74.  Mr. Enriquez states the allegations in paragraph 74 are not directed toward him.  To the extent a response is required, he denies the allegations.

75.

IBM denies the allegations of paragraph 75.  IBM specifically denies the allegation that it did not pay Plaintiff "full compensation" for the value of his work during calendar year 2001 and denies any implication or inference that Cashman was entitled to more compensation than he was paid.  Mr. Enriquez states the allegations in paragraph 75 are not directed toward him.  To the extent a response is required, he denies the allegations.

ATI-2156992v1

76.

IBM denies the allegations of paragraph 76.  IBM denies any implication or inference that Plaintiff was entitled to more compensation than he was paid.  Mr. Enriquez states the allegations in paragraph 76 are not directed toward him.  To the extent a response is required, the allegations are denied.

77.

IBM denies the allegations of paragraph 77.  Mr. Enriquez states the allegations in paragraph 77 are not directed toward him.  To the extent a response is required, the allegations are denied.

## COUNT V (Violations of Mass. Gen. Laws Ch. 149, §§ 148, 148A, 150 - IBM, Ill, Mills, Joyce and Enriquez)

78.

Defendants incorporate herein paragraphs 1 through 77 of the Answer as if each of said paragraphs were restated in their entirety.

79.

Denied.

80.

Denied.

81.

Admitted.

82.

The allegations of paragraph 82 contain conclusions of law to which Defendants are not required to respond.  If a response is required, the allegations are denied.

83.

Denied.

ATI-2156992v1

84.

Denied.

85.

Defendants deny the allegations in the first sentence of paragraph 85. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 85. Defendants deny the remaining allegations of paragraph 85, if any.

**COUNT VI (Interference with Advantageous Business Relations - Enriquez)**

86.

Defendants incorporate herein paragraphs 1 through 85 of the Answer as if each of said paragraphs were restated in their entirety.

87.

Defendants admit that IBM maintains a list for executive promotions from which individuals are from time to time added or removed. Defendants deny the remaining allegations of paragraph 87.

88.

Mr. Enriquez denies the allegations of paragraph 88. The allegations in Count VI, of which paragraph 88 is a part, are not directed toward IBM. To the extent a response is required, IBM denies the allegations.

89.

Defendants deny the allegations of paragraph 89.

90.

Mr. Enriquez denies the allegations of paragraph 90. The allegations in Count VI, of which paragraph 90 is a part, are not directed toward IBM. To the extent a response is required, IBM denies the allegations.

91.

Mr. Enriquez denies the allegations of paragraph 91. The allegations in Count VI, of which paragraph 91 is a part, are not directed toward IBM. To the extent a response is required, IBM denies the allegations.

92.

Mr. Enriquez denies the allegations of paragraph 92. The allegations of Count VI, of which paragraph 92 is a part, are not directed toward IBM. To the extent a response is required, IBM denies the allegations.

93.

To the extent any allegation requiring a responsive pleading was not expressly admitted, it is hereby denied. In addition, Defendants deny that Plaintiff is entitled to any of the relief he seeks herein.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

This Court lacks personal jurisdiction over some of the Defendants.

## FOURTH DEFENSE

Plaintiff's claims should be dismissed, in whole or in part, due to the defense of payment.

## FIFTH DEFENSE

The Complaint is barred by the applicable statute of limitations.

<u>SIXTH DEFENSE</u>

Plaintiff's claims should be dismissed, in whole or in part, due to the defense of laches.

<u>SEVENTH DEFENSE</u>

Plaintiff's claims should be dismissed, in whole or in part, due to the defenses of waiver,

settlement, ratification, release, and/or accord and satisfaction.

<u>EIGHTH DEFENSE</u>

Plaintiff's claims should be dismissed for failure to exhaust administrative remedies.

<u>NINTH DEFENSE</u>

Count V is barred for failure to exhaust procedural requirements or provide notice.

<u>TENTH DEFENSE</u>

Count VI fails due to the defenses of justification or privilege.

<u>ELEVENTH DEFENSE</u>

Such other and further defenses as may be discovered during the pendency of this action.

WHEREFORE, Defendants seek dismissal of the Complaint, their costs and expenses of

defending this action, and such other and further relief as justice may require.

Respectfully submitted,

INTERNATIONAL BUSINESS MACHINES
CORPORATION AND GREGORY ENRIQUEZ


   /s/ Heather Stepler
Joan Ackerstein, BBO # 348220
Heather Stepler, BBO # 654269
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
Dated:  March 9, 2005          (617) 367-0025

ATI-2156992v1