## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS CASHMAN,<br>    Plaintiff, | )<br>) | |
| | ) | |
| v. | )<br>) | |
| INTERNATIONAL BUSINESS MACHINES | ) | Civil Action No. 05 10306 RWZ |
| CORPORATION, STEVEN A. MILLS, | ) | |
| CHARLES ILL, JOHN R. JOYCE, and | ) | |
| GREGORY ENRIQUEZ, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## BY STEVEN A. MILLS, JOHN R. JOYCE AND CHARLES ILL

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Steven A. Mills, John

R. Joyce and Charles Ill (the "Moving Defendants") move this Court to dismiss the Complaint

and the Amended Complaint for lack of personal jurisdiction.  Messrs. Mills, Joyce and Ill are

not residents of Massachusetts.  Accordingly, Plaintiff has the burden to prove that this Court has

personal jurisdiction over these non-resident defendants pursuant to both the Massachusetts long-

arm statute and constitutional principles of due process.  Plaintiff cannot show that any contacts

Messrs. Mills or Joyce had with Massachusetts meet the requirements of the long-arm statute.

Moreover, Plaintiff cannot show that constitutional principles of due process afford this Court

with personal jurisdiction over any of the Moving Defendants.  Therefore, this Court should

dismiss the Moving Defendants for lack of personal jurisdiction.

## STATEMENT OF FACTS

Plaintiff Thomas Cashman, a Massachusetts resident (Am. Compl. ¶ 4), filed this action

against International Business Machines Corporation ("IBM"), Steven A. Mills, Charles Ill, John

R. Joyce, and Gregory Enriquez (hereafter "Defendants"), in the Trial Court for the

Commonwealth of Massachusetts. Pursuant to 28 U.S.C § 1441, this action was removed to this Court on the basis of diversity jurisdiction.

Plaintiff is a former IBM employee. (Am. Compl. ¶ 5.) He has sued IBM for, among other things, his alleged unpaid commissions, claiming breach of contract (Counts I and III) or unjust enrichment or quantum meruit (Counts II and IV). He also claims IBM, as well as the individual defendants, including these Moving Defendants, violated Massachusetts law in failing to pay him his alleged commissions (Count V). Even assuming *arguendo* that Plaintiff has asserted a valid cause of action against the Moving Defendants, Messrs. Mills, Joyce and Ill do not have sufficient contacts with Massachusetts to support jurisdiction here.

A.    Steven A. Mills.

Mr. Mills is Senior Vice President and Group Executive of IBM's Software Group. (Mills Decl. at ¶4, Ex. A.) Mr. Mills is responsible for directing IBM's approximately $15 billion software business. (Id.) He is a resident of New York, and is not a resident of Massachusetts. (Id. at ¶5.)

Mr. Mills currently maintains -- and in the time at issue maintained -- an office at IBM headquarters in New York. (Id. at ¶3.) He does not maintain and has never maintained an office in Massachusetts. (Id. at ¶6.) Mr. Mills did not transact business while in Massachusetts directly relating to decisions regarding the claim at issue -- *i.e.*, Plaintiff's 2001 commissions. (Id. at ¶8.)

B.    John R. Joyce

John Joyce is the Senior Vice President and Group Executive of IBM Global Services. Prior to his current position, he was IBM's Chief Financial Officer since November 1999. (Joyce Decl. ¶4, Ex. B.) He also is not a resident of Massachusetts. Rather, he lives in Connecticut. (Id. at ¶5.)

2

Mr. Joyce currently maintains an office at IBM in Armonk, New York. His office was also in Armonk, New York during the relevant time period. (Id. at ¶3.) Mr. Joyce does not maintain and has never maintained an office in Massachusetts. (Id. at ¶6.) He has not transacted business while in Massachusetts directly relating to decisions regarding Plaintiff's 2001 commissions. (Id. at ¶8.)

C.    Charles Ill

Finally, Charles Ill is not a Massachusetts resident, but rather lives in Connecticut. (Ill Decl. ¶5 Ex. C.) He is no longer an IBM employee. (Id. at ¶4.) During the relevant time period, he was the Vice President of Americas Software for IBM. (Id.) His IBM office in 2001-2002 was in New York. (Id. at ¶ 3.) He never had an office in Massachusetts. (Id. at ¶6.) He did not come to Massachusetts to discuss with Plaintiff his 2001 commissions. Rather, Mr. Ill conducted such communications from his office in New York. (Id. at 8.)

**ARGUMENT**

I.    **THERE IS NO PERSONAL JURISDICTION OVER MR. MILLS AND MR. JOYCE**

A.    **Plaintiff cannot satisfy the requirements of the Massachusetts long-arm statute.**

Neither Messrs. Mills nor Joyce are residents of Massachusetts. (Mills Decl. ¶5; Joyce Decl. ¶5.) In diversity cases, such as this, the district court's personal jurisdiction over a non-resident defendant is governed by the forum state's long-arm statute. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Nevertheless, even if the requirements of the long-arm statute are satisfied, the court must also find that constitutional principles of due process afford the court with personal jurisdiction. Nahigian v. Leonard, 233 F. Supp. 2d 151, 158 n.1 (D. Mass 2002). The plaintiff has the burden of proof to show that jurisdiction over the defendant is permitted. Id. Plaintiff cannot meet this burden.

3

The relevant provision of the Massachusetts long-arm statute permits this Court to exercise personal jurisdiction over a non-resident defendant "who acts directly or by an agent, as to a cause of action in law or equity *arising from* the person's . . . *transacting any business in this commonwealth* . . . ." Mass. Gen. Laws, ch. 223A, §3 (emphasis added). In other words, the "Massachusetts long-arm statute allows personal jurisdiction over an entity transacting business in the Commonwealth *but only if the cause of action arises out of the transaction*." Radionics, Inc. v. Elekta Instrument AB, Civ. A. No. 93-10014-Z, 1994 WL 175028, at *1 (D. Mass. April 26, 1994) (Zobel, J.) (emphasis added) (attached as Ex. D); see, e.g., Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 28 (1st Cir. 1980) (finding no personal jurisdiction over the non-resident corporation; Court of Appeals noted that "even assuming that [the non-resident's] purchase contracts . . . amounted to the transaction of business in Massachusetts . . . [plaintiff's] cause of action for employment discrimination did not arise from [the non-resident's] transaction of business in Massachusetts, as required by the statute"). Here, Plaintiff cannot satisfy the statute with regard to Messrs. Mills and Joyce.

Plaintiff's only substantive allegations specifically regarding Mr. Mills appear in paragraph 8 of the Amended Complaint. Plaintiff fails to allege that Plaintiff's claims arose from *any* of Mr. Mills' contacts with Massachusetts. Rather, the Amended Complaint alleges that Mr. Mills is "responsible for shaping IBM's overall software strategy and directing its software business," that he is responsible for approving and did approve the structure of the 2001 sales plan at issue; and he was "in the direct chain of command managing and controlling software sales and commission decisions for IBM, including those complained of by Mr. Cashman in this action." (Am. Compl. ¶ 8.) Notably, Plaintiff does not contend that Mr. Mills actually participated in any decisions regarding the calculation of Plaintiff's commissions. Rather, all

4

Plaintiff can say is that he was in the "chain of command" regarding commission decisions. (Id.) Even assuming for the sake of this Motion the truth of the allegations, Plaintiff has failed to allege -- much less prove -- that Mr. Mills' activities, if any, in connection with the claims in this case, satisfy the long-arm statute. Indeed, even if he were involved in the commissions decision at issue, there is no assertion that he did anything relating to making such decisions *while in Massachusetts*. Rather, the Amended Complaint confirms that Mr. Mills' office was in New York. The only connection with Massachusetts asserted by Plaintiff is that "[u]pon information and belief, Mr. Mills travels regularly to IBM's offices in Massachusetts, to carryout his duties regarding IBM software." (Id.) This allegation is not specific to any claim in this case. Such allegation is a far cry from stating that anything Mr. Mills did *while in Massachusetts* gave rise to the cause of action. Rather, Mr. Mills has stated that he did not transact any business in Massachusetts relating to decisions regarding Plaintiff's 2001 commissions. (Mills Decl. at ¶ 8.)

The allegations are no better with regard to Mr. Joyce. Plaintiff merely alleges Mr. Joyce "was responsible for all financial and business development activities of IBM, including those taking place in Massachusetts and including compensation of its employees." There are no assertions that Mr. Joyce himself did anything relating to Plaintiff's 2001 commissions, let alone that he did any relevant act *in Massachusetts*.[1] Therefore, Plaintiff cannot meet his burden to establish that the requirements of the long-arm statute have been satisfied.

---

[1] The Amended Complaint also states "[u]pon information and belief, IBM's Finance and Planning sector, headed by Mr. Joyce, was complicitous in the decision to cut Mr. Cashman's commissions." (Am. Compl. ¶ 9.) Not only does this allegation not suffice to show Mr. Joyce *himself* did anything relating to these claims, it certainly does not establish that any act occurred in Massachusetts.

B.    **Plaintiff cannot show that jurisdiction over Messrs. Mills and Joyce is consistent with constitutional guarantees.**

In addition to the requirements of the Massachusetts long-arm statute, Plaintiff must also show that jurisdiction comports with the Due Process Clause of the United States Constitution.[2] Jana Brands, Inc. v. NexiFm, Inc., No. Civ. A. 01-12320RWZ, 2003 WL 164251, at * 1 (D. Mass Jan. 23, 2003) (attached Ex. E) (Zobel, J.).  To exercise personal jurisdiction over Mills or Joyce in this case, due process requires a showing of "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  "[T]he [central] question is whether the plaintiff's claims arise from or relate to the defendant's contact with Massachusetts, 'which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." Jana Brands, 2003 WL 164251, at * 2 (internal citations omitted).  "Arise from" or "relate to" means that "the business transacted within the state must be a 'but for' cause of the harm." Nahigan, 233 F. Supp. 2d at 158 n.1.[3]  Therefore, in this case, the constitutional requirements of relatedness cannot be satisfied if the nonresident's contacts with Massachusetts "are unrelated to the [alleged] non-payment of wages and benefits." Id.; see also Lyle Richards Int'l, Ltd. v Ashworth, Inc., 132 F.3d 111, 113-14 (1st. Cir. 1997) (denying personal jurisdiction under Massachusetts long-arm statute where defendants incidental contacts with Massachusetts did not constitute a "but

---

[2] The Massachusetts long-arm statute "'asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established.'" Debutts v. Prince of Fundy Cruises, Ltd., Civ. A. No. 90-13071-Z, 1991 WL 104091, at *1 (D. Mass. June 4, 1991) (Zobel, J.) (attached as Exhibit F).  If the requirements of the long-arm statute are not met, the court "need [not] reach the question of minimum contacts." (Id.)

[3] Massachusetts "adheres to the general rule that jurisdiction over an officer cannot be based solely on jurisdiction over the corporation; it must be based on the acts of the officer themselves." Nahigan, 233 F. Supp. 2d at 158 n. 1 (citations omitted).

6

for" cause of the cause of action).  Furthermore, "the constitutional test of 'relatedness' (between

contacts and cause of action) in the First Circuit is a stricter test: essentially a proximate cause

test that is closely linked to forseeability, (i.e. that the defendant could reasonably anticipate

being haled into court in the forum state) . . . ."  Nahigan, 233 F. Supp. 2d. at 158 n.1 (citing

Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 714-16 (1st Cir. 1996)).

Plaintiff has not alleged that Mr. Joyce had *any* contact with Massachusetts. (Am. Compl.

¶9.)  With regard to Mr. Mills, his alleged contact included travel to various IBM offices in

Massachusetts, but nothing specific to Plaintiff's claim.  There is no alleged connection between

Messrs. Joyce and Mills and the forum state related to the alleged non-payment of Plaintiff's

purported commissions.  Moreover, there are no contacts by these gentlemen which would cause

them to foresee possibly being brought into a Massachusetts court as a defendant because of the

allegations brought by Plaintiff.  Therefore, even if Plaintiff could prove his purported

jurisdictional  allegations -- which at a minimum he must -- Plaintiff has not met his burden of

proof that Messrs. Mills or Joyce had any contacts with Massachusetts that (1) could constitute a

"but for" cause of the alleged non-payment of Plaintiff's commissions and (2) would have

amounted to a "fair warning" that they would be subjected to the jurisdiction of Massachusetts.

See Burger King v. Rudzewicz, 471 U.S. 462, 472 (U.S. 1985).  Accordingly, pursuant to Rule

12(b)(2), this Court should dismiss this action as to Messrs. Mills and Joyce for lack of personal

jurisdiction.

II.    **THE COURT ALSO SHOULD DISMISS CHARLES ILL FOR LACK OF
       PERSONAL JURISDICTION.**

Mr. Ill should also be dismissed for lack of personal jurisdiction.  The Amended

Complaint alleges: "Mr. Cashman initiated and received many communications involving Mr. Ill

from Mr. Cashman's home office in Massachusetts directly related to the claims central to this

7

action." (Am. Compl. ¶ 7.)  Even assuming that allegation is sufficient to satisfy the

requirements of the long-arm statute, it does not suffice to satisfy constitutional requirements.

The question becomes "whether the plaintiff's claims arise from or relate to the defendants'

contacts with Massachusetts . . . 'which resulted from an affirmative, intentional act of the

defendant, such that it is fair and reasonable to require the defendant to come into the State to

defend the action.'"  Jana Brands, 2003 WL 164251 at *2 (citing Good Hope Indus., Inc. v.

Ryder Scott Co., 389 N.E.2d 76, 79 (Mass. 1979) and Cambridge Literary Props., Ltd. v. Goebel

Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002) (other internal citations omitted)).

        The alleged contacts Mr. Ill purportedly had with Massachusetts were fortuitous and not

such that he purposefully availed himself "of the privilege of 'conducting activities within the

forum State, thus invoking the benefits and protections of its laws.'"  Jana Brands, 2003 WL

164251 at *2; see Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).  In Jana

Brands, 2003 WL 164251, this Court addressed a similar scenario.  The Jana Brands plaintiff, a

company with its principle place of business in Massachusetts, filed an action alleging breach of

contract and other claims against a non-resident defendant.  Plaintiff asserted personal

jurisdiction was proper because (1) plaintiff negotiated the transaction at issue in part by

telephone from Massachusetts; (2) plaintiff faxed sales confirmations and other documents to

defendant from plaintiff's Massachusetts office; (3) plaintiff received certain payments in

Massachusetts; and (4) on several occasions, defendant's employee called plaintiff's

Massachusetts office to discuss the dispute.  Id. at *1.  This Court held that plaintiff did not carry

its burden to establish personal jurisdiction.  In particular, the Court found the telephone calls

were not "affirmative acts whereby defendants availed themselves of the privilege of conducting

activities in Massachusetts."  Id. at *2.  Moreover, with regard to the faxes, this Court found that

8

the faxes could not confer jurisdiction because defendant merely received them -- there was no affirmative or intentional act on defendant's part in that regard.  Id.

The only contacts Plaintiff alleges here in connection with Mr. Ill are his receiving communications from or initiating communications to Plaintiff while Plaintiff was in Massachusetts.  (Am. Compl. ¶ 7.)  Mr. Ill did not come to Massachusetts for these communications.  Rather, Mr. Ill conducted business from New York.  (Ill Decl. ¶ 8.)  To the extent Plaintiff contacted Mr. Ill, that certainly was not an affirmative or intentional act on Mr. Ill's part.  Plaintiff's allegations are indistinguishable from those contacts rejected in Jana Brands as constitutionally infirm.  As such, Mr. Ill should also be dismissed for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Steven A. Mills, John R. Joyce  and Charles Ill respectfully request that this action be dismissed against them for lack of personal jurisdiction.

Respectfully submitted,

STEVEN  A.  MILLS,  JOHN  R.  JOYCE  AND CHARLES ILL


   /s/ Heather Stepler
Joan Ackerstein, BBO # 348220
Heather Stepler, BBO # 654269
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
(617) 367-0025

Dated:   March 9, 2005

ATI-2158362v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br>      Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br>STEVEN A. MILLS, CHARLES ILL,<br>JOHN R. JOYCE, and GREGORY<br>ENRIQUEZ,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO. 05-10306-RWZ |

## DECLARATION OF STEVEN A. MILLS

1. My name is Steven A. Mills. I am over the age of 21 years and suffer from no disability that would preclude me from giving this Declaration.

2. This Declaration is made for all purposes permitted by law. The facts set forth in this Declaration are made upon my own personal knowledge.

3. I currently maintain an office at IBM headquarters in New York. My office was also in New York in 2001.

4. I am the Senior Vice President and Group Executive of IBM's Software Group. I am responsible for directing IBM's approximately $15 billion software business.

5. I am a resident of New York, and am not a resident of the Commonwealth of Massachusetts.

6.   I do not maintain and have never maintained an office in the Commonwealth of Massachusetts.

7.   I do not own property in the Commonwealth of Massachusetts.

8.   I have not transacted business while in the Commonwealth of Massachusetts directly relating to decisions regarding Thomas Cashman's 2001 commissions.

I declare under penalty of perjury that the foregoing is true and correct.

This ___8___ day of March, 2005.

_____
Steven A. Mills

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS CASHMAN,<br>  Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br>STEVEN A. MILLS, CHARLES ILL,<br>JOHN R. JOYCE, and GREGORY<br>ENRIQUEZ,<br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 05-10306-RWZ |

## DECLARATION OF JOHN R. JOYCE

1. My name is John R. Joyce. I am over the age of 21 years and suffer from no disability that would preclude me from giving this Declaration.

2. This Declaration is made for all purposes permitted by law. The facts set forth in this Declaration are made upon my own personal knowledge.

3. I currently maintain an office at IBM headquarters in Armonk, New York. My office was also in Armonk, New York in 2001.

4. I am the Senior Vice President and Group Executive of IBM Global Services. Prior to my current position, I was IBM's Chief Financial Officer from November 1999 to May 2004.

5. I am a resident of Connecticut, and am not a resident of the Commonwealth of Massachusetts.

6. I do not maintain and have never maintained an office in the Commonwealth of Massachusetts.

7.  I do not own property in the Commonwealth of Massachusetts.

8.  I have not transacted business while in the Commonwealth of Massachusetts directly relating to decisions regarding Thomas Cashman's 2001 commissions.

I declare under penalty of perjury that the foregoing is true and correct.

This __8__ day of March, 2005.

John R. Joyce

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br> Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br>STEVEN A. MILLS, CHARLES ILL,<br>JOHN R. JOYCE, and GREGORY<br>ENRIQUEZ,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO. 05-10306-RWZ

## DECLARATION OF CHARLES ILL

1. My name is Charles Ill. I am over the age of 21 years and suffer from no disability that would preclude me from giving this Declaration.

2. This Declaration is made for all purposes permitted by law. The facts set forth in this Declaration are made upon my own personal knowledge.

3. During 2001-2002, I was an employee of IBM. My office was located in New York.

4. I was the Vice President of Americas Software for IBM in 2001 and 2002. I left IBM in 2003.

5. I am a resident of Connecticut, and am not a resident of the Commonwealth of Massachusetts.

6. I do not maintain and have never maintained an office in the Commonwealth of Massachusetts.

7. I do not own property in the Commonwealth of Massachusetts.

ATI-2158383v1

8.  I did not travel to Massachusetts to meet with Mr. Cashman.  I conducted any communications with Mr. Cashman from my office in New York.

I declare under penalty of perjury that the foregoing is true and correct.

This ___8th___ day of March, 2005.

_____

Charles Ill.

Not Reported in F.Supp.
1994 WL 175028 (D.Mass.), 33 U.S.P.Q.2d 1110
(Cite as: 1994 WL 175028 (D.Mass.))
**H**

**Motions, Pleadings and Filings**

United States District Court, D. Massachusetts.
**RADIONICS, INC.**
v.
**ELEKTA INSTRUMENT AB and Elekta
Instruments, Inc.**
**Civ. A. No. 93-10014-Z.**

April 26, 1994.

Martin J O'Donnell, Cesari & McKenna, Boston,
MA, David J. Thibodeau, Jr., Cesari & McKenna,
Boston, MA, for Radionics, Inc.

Theresa M. Gillis, Thomas Heyman, Jones, Day,
Reavis & Pouge, New York City, Michael T.
Cetrone, Joseph F. Shea, Nutter, McClennen &
Fish, Boston, MA, for Elekta Instrument AB,
Elekta Instruments Inc.

*MEMORANDUM AND ORDER*

ZOBEL, District Judge.

**\*1** Radionics, Inc.'s ("Radionics") patent
infringement case is based on Elekta Instruments,
Inc.'s ("Elekta Instruments") sale of a device that
enables physicians to target surgical sites. This
memorandum addresses three sets of motions, Elekta
Instrument AB's ("Elekta AB") motion to dismiss
for lack of personal jurisdiction, Elekta Instruments'
motion to dismiss for lack of standing, and the
parties' cross motions to compel discovery.

I. Elekta AB's Motion to Dismiss for Lack of
Personal Jurisdiction.

Elekta AB, a Swedish company, moves to dismiss
for lack of personal jurisdiction. It maintains that it
does no business in Massachusetts such that the
Commonwealth's long-arm statute may reach it, and
does not have the minimum contacts with
Massachusetts necessary for this Court to assert
jurisdiction. Radionics argues that because Elekta
AB is the parent entity of several companies doing
business in the United States and Massachusetts,
jurisdiction is proper.

A nonresident defendant must be amenable to
service of process before a court can assert

jurisdiction. In addition, due process requires a
showing that the defendant "purposefully established
" 'minimum contacts' " in the forum State." *Asahi
Metal Indus. Co. v. Superior Court of California*,
480 U.S. 102, 108-09 (1987) (quoting *Burger King
Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).
The necessary connection between the defendant and
the forum state must arise from "an action of the
defendant purposefully directed toward the forum
State." *Asahi*, 480 U.S. at 112 (emphasis omitted).
Mere foreseeability that defendant's products might
enter the forum state's market is not enough. *Id.*
Thus, whatever the specifics of a state's long-arm
statute, the exercise of jurisdiction is improper
absent the requisite contacts between the defendant
and the forum state.

A. *Elekta AB's Contacts with Massachusetts*

First, Radionics claims that Elekta AB is the sole
shareholder and exercises plenary control of Ruggles
Corporation ("Ruggles"), a surgical instrument
company in Quincy, Massachusetts. According to
Radionics, Ruggles is undercapitalized and shares a
common board of directors with Elekta AB. In its
view, this corporate structure justifies piercing the
corporate veil and subjecting Elekta AB to
jurisdiction through its Massachusetts subsidiary.

Radionics has failed to show a connection,
however, between Ruggles and the instant case. It
has not even suggested that Ruggles manufactures,
markets, sells or distributes the Elekta Instruments
products it is accused of infringing. The
Massachusetts long-arm statute allows personal
jurisdiction over an entity transacting business in the
Commonwealth, but only if the cause of action
arises out of the transaction. Mass.Gen.L.Ann. ch.
223A, § 3 (West 1985). Thus, even if Elekta AB
wielded full-scale control over the Ruggles
operation, it would not be subject to this Court's
jurisdiction.

**\*2** Second, Radionics asserts that Elekta AB itself
marketed and sold its products in Massachusetts.
Elekta AB allegedly distributed press releases for an
April, 1993 neurosurgeons' convention in Boston.
Radionics submits two newspaper articles to support
its claim. The first article is an announcement by
Elekta Instruments (the United States company), not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
(Cite as: 1994 WL 175028, *2 (D.Mass.))

Page    2

Elekta AB (the Swedish company), regarding its products; it suggests no connection between Massachusetts and Elekta AB. The second article reported that a Canadian company had agreed with Elekta AB to distribute a "viewing wand," a device not accused of infringing. (Thibodeau Aff., Exs. F, G). Again, Radionics has failed to show a connection between Elekta AB's local business dealings and this infringement action.

Radionics relies on several cases (all decided before the Supreme Court gutted the foreseeability doctrine in *Asahi* ) for the proposition that a foreign company which induces a United States company (Elekta Instruments) to distribute infringing products is subject to federal jurisdiction at the situs of the patent holder. First, that situs is Utah, not Massachusetts. Second, each of these cases is distinguishable from the instant case because the foreign companies had additional contacts with the forum state which justified jurisdiction. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975) (distributor company located in forum state; foreign company furnished publicity material and warranties to forum state); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* 403 F.Supp. 9 (W.D.Pa.1975) (foreign corporation negotiated contracts in forum state); *Engineered Sports Prods. v. Brunswick Corp.,* 362 F.Supp. 722 (D.Utah 1973) (foreign company directed trade names and advertising into forum state); *S.C.M. Corp. v. Brother Int'l Corp.,* 316 F.Supp. 1328 (S.D.N.Y.1970) (foreign corporation identified itself with domestic, forum state corporation in advertising); *Olin Mathieson Chem. Corp. v. Molins Org., Ltd.,* 261 F.Supp. 436 (E.D.Va.1966) (foreign company sent its employees to do business in forum state); *Huchel v. Sybron Corp.,* 212 U.S.P.Q. (BNA) 133 (S.D.Tex.1980) (foreign corporation advertised its products within forum state); *Antonious v. Kamata-Ri Co.,* 204 U.S.P.Q. (BNA) 110 (D.Md.1979) (foreign company negotiated patent and retained sales agent in forum state); *Kearns v. Wood Motors, Inc.,* 204 U.S.P.Q. (BNA) 485 (E.D.Mich.1978) (foreign corporation offered forum's customers option of receiving their products directly from Germany).

Finally, Radionics claims that due process is satisfied by aggregating the contacts of a foreign corporation. It is true that in federal question cases, a defendant may be subject to federal jurisdiction if it has minimum contacts with the United States rather than with the forum state. Before a defendant can be hailed into court, however, it must be amenable to service of process, either through the state's long-arm statute, or a statute allowing nationwide service of process, because service of process constitutes the vehicle by which the court obtains jurisdiction. *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992); *In re Plastic Bag Production Patent and Antitrust Litigation,* No. MDL-705, 1987 WL 14500, at *2 (D.Mass. Apr. 24, 1987) (aggregate United States contacts satisfy due process in suit under the Clayton Act which allows nationwide service of process). The Massachusetts long-arm statute will not reach Elekta AB.

**\*3** Because Radionics has submitted no evidence of contacts sufficient to satisfy either the service of process statutes or the due process requirements of federal jurisdiction, Elekta AB's motion to dismiss (# 11) is granted.

II. Elekta Instruments' Motion to Dismiss for Lack of Standing or Failure to Join an Indispensable Party.

Elekta Instruments claims that Radionics is a mere licensee of the disputed U.S. Patent No. 4,608,977 (the "Brown patent") and therefore has no standing to sue for infringement. According to Elekta Instruments, when an exclusive licensee brings a patent infringement suit, the patent owner must be joined as a necessary party. Radionics maintains that it is legally an assignee of the Brown patent and thus may sue in its own name without joining the patent owner.

*A. Radionics' Standing to Sue for Infringement*

Standing to sue for infringement generally rests with the patent owner or the owner's assignees. *Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891); *Arachnid, Inc. v. Merit Indus.,* 939 F.2d 1574, 1579 (Fed.Cir.1991). A non-exclusive licensee has no title to the patent and has no right to sue for infringement. *Waterman,* 138 U.S. at 255; *Amgen, Inc. v. Chugai Pharmaceutical Co.,* 808 F.Supp. 894, 899-900 (D.Mass.1992). Thus, the crucial question is whether, as a matter of law, Radionics was effectively the assignee of the Brown patent.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-10306-RWZ    Document 7-5    Filed 03/09/2005    Page 3 of 4

Not Reported in F.Supp.
(Cite as: 1994 WL 175028, *3 (D.Mass.))

Page 3

Whether a transfer is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. *Vaupel Textilmaschinen v. Meccanica Euro Italia,* 944 F.2d 870, 875 (Fed.Cir.1991) (quoting *Waterman,* 138 U.S. at 256). The legal effect is determined by the substance of rights the patent owner granted and the rights it retained. *Vaupel,* 944 F.2d at 874-75. An agreement transferring all substantial rights and retaining only incidental ones is an assignment and provides the assignee standing to sue for infringement. *Id.*

A patent owner holds "the right to exclude others from making, using, and selling" the claimed invention. 35 U.S.C.A. § 154 (West 1984). Courts considering whether a grant of rights also confers upon the transferee standing to sue have examined whether the transferor granted "essential" rights to the patent. These are the " 'right of exclusivity, the right to transfer and *most importantly* the right to sue infringers.' " *Ciba-Geigy Corp. v. Alza Corp.,* 804 F.Supp. 614, 630 (D.N.J.1992) (quoting *Calgon Corp. v. Nalco Chemical Co.,* 726 F.Supp. 983, 986 (D.Del.1989) ).

The agreement ("Agreement") between Brown and Radionics grants Radionics the following rights: (1) the exclusive right to make, have made, use, lease and sell the invention (Agreement, ¶¶ II(A), (B)); (2) the right to transfer the license (Agreement, ¶ II(C)); and (3) the right to bring suit for infringement (Agreement, ¶ V(B)). Brown retained the following rights: (1) the right to convert the license to a non-exclusive license if annual minimum royalties were not paid (Agreement, ¶ III(H)); (2) the right to consent to the transfer or assignment of the license, with the proviso that consent will not be unreasonably withheld (Agreement, ¶¶ II(C), (D)); and (3) the right to bring suit if Radionics does not exercise its right to sue within six months of notice from Brown (Agreement, ¶ V(B)). As discussed further below, none of these reserved rights is so substantial as to reduce the transfer to a mere license, therefore, Radionics has standing to sue for infringement.

*1. Exclusivity*

*4 The right to convert the license to a non-exclusive arrangement if minimum royalties are not

paid does not affect the exclusivity of the grant. An assignment of a patent " 'may be either absolute, or by way of mortgage and liable to be defeated by non-performance of a condition subsequent.' " *Vaupel,* 944 F.2d at 875 (quoting *Waterman,* 138 U.S. at 256); *Ciba-Geigy,* 804 F.Supp. at 629-33 (exclusive licensee who has sufficient rights to maintain an infringement action does not lose that ability because a condition subsequent would destroy its exclusive license). *Cf. Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352, 1371-73 (D.Del.1993) (where patent owner retained right to manufacture invention, licensee had no standing to sue). Until lost by the nonpayment of royalties, Radionics' rights to the patent are exclusive and thus support its suit.

*2. Transferability*

Similarly, the fact that Brown retained the right to consent to the granting of sublicenses, but agreed that consent will not be unreasonably withheld, does not destroy the assignment. At most, such a consent provision is "a minor derogation from the grant of rights" which does not "substantially interfere with the full use ... of the exclusive rights under the patent." *Vaupel,* 944 F.2d at 875; *Ciba-Geigy,* 804 F.Supp. at 633-34.

*3. Right to Sue for Infringement*

Finally, the agreement did transfer the right to sue for infringement, subject to defeasance only if not exercised. Such a provision does not destroy the assignment. *Vaupel,* 944 F.2d at 875; *Ciba-Geigy,* 804 F.Supp. at 635. Notably, Brown does not retain a concurrent right to bring a lawsuit; he may only sue if Radionics does not.

The *Vaupel* court saw the grant of the right to sue for infringement as particularly dispositive, because in that case, as here, the ultimate question was whether the licensee could sue alone or only in conjunction with the patent owner. *Vaupel,* 944 F.2d at 875. The court noted that the policy underlying the requirement that an exclusive licensee join the owner is to prevent the possibility of two suits on the same patent against a single infringer. *Id.* That policy is not undercut here because the right to sue rests solely with Radionics unless Radionics forgoes its right, which it has not done. *See Vaupel,* 944 F.2d at 875-76.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
**(Cite as: 1994 WL 175028, \*4 (D.Mass.))**

B. *Joinder under Rule 19*

Under the Federal Rules of Civil Procedure, a person must be joined if "complete relief cannot be accorded among those already parties," or if a decision in the case may make "persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." Fed.R.Civ.P. 19(a).    Following the reasoning above, it is clear that Radionics can secure complete relief for itself without the joinder of Brown. Further, the defendants will not be subject to multiple or inconsistent obligations because this suit bars a later action on the same patent by Brown. Defendant Elekta Instruments' motion to dismiss for lack of standing or failure to join an indispensable party (# 23) is denied.

III. Discovery Disputes.

**\*5** The foregoing renders most of the litigants' discovery quarrels moot.  The parties shall attempt to resolve the remaining disputes, and only if unable to do so shall detail the issues to which a decision is required.

### Conclusion
Elekta AB's motion to dismiss (# 11) is allowed. Elekta Instruments' motion to dismiss for lack of standing and failure to join an indispensable party (# 23) is denied.

**Motions, Pleadings and Filings (Back to top)**

.            **1:93CV10014**            **(Docket)**
(Jan. 07, 1993)

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2003 WL 164251 (D.Mass.)
**(Cite as: 2003 WL 164251 (D.Mass.))**
C

Page   1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
**JANA BRANDS, INC.**
v.
**NEXIFM, INC. d/b/a IFM International Foods
and Gustavo Vela**
No. Civ.A. 01-12320RWZ.

Jan. 23, 2003.

*MEMORANDUM OF DECISION*

ZOBEL, J.

**\*1** Plaintiff Jana Brands, Inc., a Delaware corporation with its principle place of business in Natick, Massachusetts, produces frozen fish products. Defendant NexiFM, Inc., a Texas corporation with its principle place of business in Texas, distributes frozen foods. In 2000, defendant sought to purchase frozen seafood and contacted a food broker in California [FN1] who called Kevin McCarthy, Jana Brand's president, at the plaintiff's Seattle, Washington office. Negotiations for the sale continued via telephone while Mr. McCarthy was at the company's Massachusetts headquarters. During these discussions, the plaintiff requested that the broker send additional credit information for the defendant to its Washington office to be forwarded to the Massachusetts headquarters. After approval, the plaintiff's Massachusetts office faxed to defendant sales confirmations, import/export related documents and invoices.

> FN1. A factual discrepancy exists between the plaintiff and the defendants as to the particular broker who contacted the plaintiff's Washington office. Where such discrepancy exists, the plaintiff's allegations will be presumed true. Here, the plaintiff has not specified the location of the broker, while the defendants have alleged that they contacted a broker in California.

In December 2000, defendant purchased three 35,200 pound containers of frozen seafood for $90,288 from the plaintiff. The seafood was shipped

from Los Angeles, California. In January 2001, plaintiff's Massachusetts office received a payment of $30,976. Thereafter, defendant Gustavo Vela, NexiFM's president and sole owner, sent three payments to the plaintiff totaling $15,000. Two of the payments were sent directly to plaintiff's bank at an unidentified location. Mr. McCarthy collected the third payment at defendants' Texas office. Because defendant Vela orally agreed to pay the remaining balance by the end of 2001, the plaintiff agreed not to sue. Defendant Vela called plaintiff's Massachusetts office several times to discuss the matter but did not make additional payments.

The plaintiff filed suit on December 26, 2001, alleging breach of contract, unjust enrichment, quantum meruit, and unfair and deceptive trade acts and practices under Massachusetts law. Defendants have filed a Motion to Dismiss for lack of personal jurisdiction.

When a defendant contests personal jurisdiction, the plaintiff has the burden of proof to show that jurisdiction over the defendant is permitted. *Landmark Bank v. Machera,* 736 F.Supp. 375, 380 (D.Mass.1990). In doing so, the plaintiff "must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Brother, Inc.,* 609 F.2d 1022, 1024 (1st Cir.1979) (citations omitted.).

In a diversity case, personal jurisdiction over a nonresident defendant is restricted by: (1) the forum state's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment. *Lyle Richards International, Ltd. v. Ashworth,* 132 F.3d 111, 112 (1st Cir.1997). The Massachusetts' long-arm statute states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth...." Mass. Gen. Laws ch. 223A, § 3. Because jurisdiction under the statute is authorized to the limits permitted by the Constitution, the sole issue is whether Section 3(a) confers jurisdiction within its literal and constitutional boundaries. *Good Hope Industries, Inc. v. Ryder Scott Co.,* 389 N.E.2d 76, 79-80 (Mass.1979).

**\*2** The literal requirement of the statute is easily

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2003 WL 164251, *2 (D.Mass.))

met: a single " 'isolated' transaction, or one with 'little impact on the commerce' of the commonwealth" suffices. *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 932 (1st Cir.1985). Therefore, in the ordinary case, the inquiry focuses on the constitutional issue. *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik,* 295 F.3d 59, 63 (1st Cir.2002). Then the question is whether the plaintiff's claims arise from or relate to the defendants' contacts with Massachusetts, *Sigros v. Walt Disney World Co.,* 129 F.Supp.2d 56, 66 (D.Mass.2001), "which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Good Hope Industries, Inc.,* 389 N.E.2d at 79. *See also Cambridge Literary Properties, Ltd.,* 295 F.3d at 63. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

In the present case, the plaintiff has not carried its burden to establish the existence of personal jurisdiction over the defendants. By engaging in the instant transaction, defendants did not purposefully avail themselves of the privilege of "conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Bond Leather Co., Inc.,* 764 F .2d at 933 (stating that "the fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction."). Defendants' contacts with Massachusetts were fortuitous. The telephone conversations defendants' agent had with plaintiff's president while the latter was in Massachusetts and defendant Vela's subsequent calls concerning payment cannot be construed as affirmative acts whereby defendants availed themselves of the privilege of conducting activities in Massachusetts. *See Aub v. Technicolor Entertainment Services,* 2002 WL 31269003 (stating that the "fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that [business was transacted] *in* Massachusetts."). Furthermore, although defendants' payments were ultimately received by the plaintiff, the facts indicate

that only one was sent to Massachusetts, which is insufficient to confer jurisdiction. *See 'Automatic' Sprinkler Corp. of America v. Seneca Foods Corp.,* 280 N.E.2d 423, 445 (Mass.1972) (stating that "making payments through the mail" is not a significant contact.). The only other contacts defendants had with Massachusetts did not involve an affirmative or intentional act by them; they merely received faxes from the plaintiff.

*3 All other relevant facts occurred outside of Massachusetts. Significantly, the defendants' broker or agent initially contacted the plaintiff's Washington office and began negotiations there. Plaintiff notably had defendants' broker send the credit information to the plaintiff's Washington office. Finally, the seafood sold under the contract was shipped from California. Given the minimal contacts defendants had with the state, they could not have reasonably anticipated being haled into a Massachusetts court.

Accordingly, the defendants' Motion to Dismiss is allowed. Judgment may be entered dismissing the Complaint without prejudice.

2003 WL 164251 (D.Mass.)

**Motions, Pleadings and Filings (Back to top)**

1:01CV12320    (Docket)
(Dec. 26, 2001)

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1991 WL 104091 (D.Mass.), 1992 A.M.C. 1363
(Cite as: 1991 WL 104091 (D.Mass.))

Page 1

**Motions, Pleadings and Filings**

United States District Court, D. Massachusetts.
**Lorraine K. DEBUTTS, Adm'x of the Estate of
Richard J. Debutts**
v.
**PRINCE OF FUNDY CRUISES, LTD.**
Civ. A. No. 90-13071-Z.

June 4, 1991.

David B. Kaplan, Thomas M. Bond, The Kaplan Group, P.C., Boston, Mass., for plaintiff.

Thomas H. Walsh, Jr., Neal Anthony Rosen, William E. O'Gara, Bingham, Dana & Gould, Boston, Mass., for defendant.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

*1 Plaintiff, a New Hampshire resident, brought this admiralty action against defendant, a Bermuda corporation with its principal place of business in Maine, for maritime negligence resulting in the death of plaintiff's husband while a passenger on a cruise ship between Portland, Maine, and Yarmouth, Nova Scotia, in October 1990. Defendant moves to dismiss the case for lack of personal jurisdiction, arguing that plaintiff fails to satisfy the requirements of the Massachusetts long-arm statute, Mass.Gen.L. ch. 223A, § 3 (1986), while plaintiff claims that she need only (and does) satisfy the "minimum contacts" test. [FN1]

Beyond those already mentioned, the facts relevant to the question of personal jurisdiction are as follows. Each year, defendant places ten or twelve advertisements in *The Boston Globe* and five or six in the *The Boston Herald* and other area newspapers. It does not advertise on any Massachusetts radio or television stations, provide passenger service from any Massachusetts ports, or have any offices, employees, agents, bank accounts, or other assets in Massachusetts. Defendant's vessels have visited Massachusetts ports on three occasions in the last ten years, with one visit to Boston occurring in April 1988 and one in April 1990. [FN2] Both were promotional visits lasting two days.

"Before a federal court may exercise personal

jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.... Thus, ... there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). As there is no applicable federal statute for service of process, Fed.R.Civ.P. 4(e) obliges me to look to the Massachusetts long-arm statute. *Id.* at 105.

Mass.Gen.L. ch. 223A, § 3, "asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6, 389 N.E.2d 76, 80 (1979); *see also Hahn v. Vermont Law School*, 698 F.2d 48, 50 (1st Cir.1983). [FN3] Plaintiff cannot establish any such statutory basis, however. The only conceivably relevant provisions in § 3(a) (causes of action arising from transacting any business in Massachusetts); (c) (causes of action arising from a person's causing tortious injury by an act of omission in Massachusetts); and (d) (causes of action arising from a person causing tortious injury in Massachusetts under certain circumstances) all fail. Plaintiff's cause of action for negligence did not arise from defendant's transaction of business in Massachusetts--much like *Gray v. O'Brien*, 777 F.2d 864 (1st Cir.1985), there is no allegation that plaintiff's decedent went on the cruise in response to the Massachusetts promotions--and neither the alleged tortious injury nor the act or omission causing it occurred in Massachusetts. As a result, I do not need to reach the question of minimum contacts.

*2 Defendant Prince of Fundy's motion to dismiss for lack of personal jurisdiction is granted. Judgment may be entered dismissing the complaint without prejudice.

*JUDGMENT*

In accordance with the Memorandum of Decision, dated June 4, 1991, it is

ORDERED that judgment be and it is hereby

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
**(Cite as: 1991 WL 104091, \*2 (D.Mass.))**

Page   2

entered dismissing the complaint without prejudice.

> FN1. Defendant argues in the alternative that even if plaintiff need only show minimum contacts, she has failed to do so.

> FN2. Neither party presented any information with respect to the third visit.

> FN3. Mass.Gen.L. ch. 223A, § 2 (1986), is inapplicable as it concerns persons domiciled in, organized under the laws of, or maintaining their principal place of business in the Commonwealth.

1991 WL 104091 (D.Mass.), 1992 A.M.C. 1363

**Motions, Pleadings and Filings (Back to top)**

.           **1:90CV13071**           (Docket)
**(Dec. 26, 1990)**

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.