UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS CASHMAN, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, STEVEN A. MILLS, CHARLES ILL, JOHN R. JOYCE, and GREGORY ENRIQUEZ, | ) ) ) ) ) ) | 1:05-cv-10306-RWZ |
| Defendants. | ) ) ) | |

PLAINTIFF THOMAS CASHMAN'S MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION FOR RECONSIDERATION OF MOTION FOR EXPEDITED
DISCOVERY AND RESPONSE TO MOTION FOR PROTECTIVE ORDER
FILED BY DEFENDANTS MILLS, ILL AND JOYCE

Defendants Steven A. Mills, John R. Joyce, and Charles Ill (the "Defendants") have responded to the plaintiff's request for expedited discovery with a motion for protective order by which the Defendants seek to prevent Mr. Cashman from obtaining *any* jurisdictional discovery, despite that the Defendants have been appropriately named individually as "employers" pursuant to express provisions of the Massachusetts Wage Act, ch. 149, § 148 (the only claim for which they are named as defendants), and all of whom were in the chain of control and supervision for Mr. Cashman in 2001. The Wage Act expressly makes individuals liable to pay their Massachusetts employees *by virtue of their corporate positions*. Therefore, the Defendants' contact with Massachusetts (and all seven IBM offices in Massachusetts) as corporate officers and managers is relevant, and arguably central, to the jurisdictional analysis. Defendants cannot circumscribe the

Defendants' contact narrowly to any direct action taken with respect to Mr. Cashman's 2001 commissions (although this contact is certainly relevant). Such circumscription undermines the very intent of the Wage Act, which is to make certain individual corporate officers strictly liable for nonpayment of wages to their Massachusetts employees. Jurisdictional analysis should therefore include all contact with Massachusetts by these individuals *by virtue of their positions*. The practical effect of taking Defendants' position is to gut theWage Act with respect to individual liability, presumably designed by the Legislature to ensure that Massachusetts employees, including the hundreds employed by IBM here, are paid their wages for their work.

Furthermore, Defendants' insistence that Plaintiff is not entitled to jurisdictional discovery, not only ignores the statutory context (and therefore the jurisdictional bases) for their liability, but also disregards the stated preference of the First Circuit for jurisdictional discovery in cases where dismissal is sought. Defendants repeatedly decry Mr. Cashman's request for discovery, made over three weeks before his opposition to the motion to dismiss is due, as made at the "eleventh hour" (although it is unclear what, if any, urgency the twelfth hour imposes). Unsurprisingly, in addition to their failure to articulate any prejudice resulting from the timing of the discovery, Defendants fail to mention that they received, with Mr. Cashman's assent, an average of 50 days to respond to his complaint [Docket No. 2], and that Mr. Cashman served on April 1, 2005, his initial disclosures pursuant to Fed. R. Civ. P. 26 that consisted of 16 pages of information and was a prerequisite for serving any discovery (*see* Initial Disclosures, attached to Affidavit of Kathleen Cross ("Cross Aff.") as Exhibit B)).

Furthermore, these Defendants, all of whom were employees of IBM and two of

whom remain so, complain of the burden that the circumscribed requests would impose should they be required to answer. This complaint is particularly disingenuous in light of IBM's mission statement, "At IBM, we strive to lead in the creation, development and manufacture of the industry's most advanced information technologies, including computer systems, software, networking systems, storage devices and microelectronics." *See* excerpt from IBM's website, Mission Statement, Cross Aff. at Exhibit C. IBM boasts in a recent prospectus that "IBM has one of the world's leading intranets – a virtual work environment that provides enterprise-wide information, applications and collaborative tools . . . . *Extensive information about IBM employees' expertise – education, certifications, publications, patents, languages spoken, past work projects and more – is accessible on the intranet, and is heavily used and relied upon.*" (Emphasis supplied). See Understanding Our Company: an IBM Prospectus at 30, Cross Aff. at Exhibit D. If IBM's claims are to be believed, it is hard to imagine that these Defendants would be burdened at all by providing the information requested, given their "on demand" environment.

  Finally, the Defendants cannot show the requisite good cause for a protective order per Fed. R. Civ. P. 26 (c), not only for lack of burden, but for failure to make a good faith effort to narrow the bases for such an order. While counsel for the Defendants claim to have conferenced their motion for a protective order pursuant to Local Rule 7.1, their effort was half-hearted at best. The first call from Defendants' counsel (Ms. Stepler) occurred on April 7, 2005, the date on which their response was due per this Court's Order. She informed plaintiff's counsel (Ms. Cross) that Defendants would be seeking a protective order. Cross Aff. at ¶ 2. Upon inquiry, Ms. Stepler could not articulate the

basis other than undue burden as she said she had not seen the motion. Ms. Cross reminded Ms. Stepler of the Plaintiff's offer to enter into a confidentiality agreement, which was offered in his initial disclosures. Cross Aff., Exhibit B, at n. 3. Ms. Stepler stated that the protective order was not based on need for confidentiality. Their motion clearly argues otherwise: "the discovery, if permitted, is likely to encompass highly sensitive, confidential, and proprietary information, given the fact that it involves communications from high-level IBM corporate executives . . ." Defendants' Memorandum in Support of Their Motion for Protective Order and Response of Defendants Steven A. Mills, John R. Joyce and Charles Ill to Plaintiff Thomas Cashman's Emergency Motion for Expedited discovery Respecting Personal Jurisdiction ("Defs.' Mem.") [Docket No. 16] at 15. Ms. Cross then emailed Ms. Stepler to offer to discuss narrowing requests if there was a particular issue and offered to discuss this option further with Defendants' counsel. Cross Aff. at ¶ 4, and Exhibit A. Ms. Stepler again said that she could not offer any substantive reasons for the alleged burden or engage in a conversation about narrowing because the motion needed to be filed. She advised that the reasons for the claim of burden could be found in the motion and that, if Mr. Cashman had suggestions after reading it, the Defendants' would consider them post filing. Cross Aff. at ¶ 5. This perfunctory contact with Plaintiff's counsel does not comply with either the spirit or letter of Fed. R. Civ. P. 26(c) (rule requires a certification "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action") or Local Rule 7.1(A)(2) (same). Defendants have failed to meet their burden of good cause, in any regard, and their motion for protective order should be denied.

To the extent that this Court would provide Defendants with the full 30 days to respond to outstanding discovery, to which Plaintiff does not object in principle, Plaintiff respectfully requests either that he be given seven days thereafter to file his opposition to the Defendants' pending motion to dismiss or that the Court stay decision on the motion and allow Plaintiff to supplement his opposition seven days after receiving Defendants' discovery responses.

A. Federal Courts Routinely Allow Jurisdictional Discovery.

Courts within the First Circuit routinely grant jurisdictional discovery when plaintiff faces a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). *United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 987 F.2d 39, 48 n. 18 (1st Cir. 1993) (failure to allow jurisdictional discovery may be an abuse of discretion and grounds for reversing a trial court's decision); *Boit v. Gar-Tec Products, Inc.*, 967 F. 2d 671, 681 (1st Cir. 1992) (noting that if the plaintiffs had requested that the court defer ruling on 12(b)(2) motion to dismiss pending jurisdictional discovery, "it might have been an abuse of discretion to deny the request," and cases therein cited); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 49 (1st Cir. 2002) (noting that the trial court allowed jurisdictional discovery); *Perotta v. Summit Home Loans, Inc.*, 2005 WL 352859 *1 n.1 (Slip. Op., Memorandum and Order on Defendants' Motions to Dismiss, February 11, 2005 (Stearns, J.)) (judge denied a motion to dismiss for want of personal jurisdiction without prejudice to allow a five-month jurisdictional discovery period); *Levin v. Harned*, 292 F. Supp. 2d 220, 221 (D. Mass. 2003) (noting that the District Court allowed supplemental jurisdictional discovery before ruling on Magistrate's Report and Recommendation on defendants' 12(b)(2) motion to dismiss);

*Bearse v. Main Street Investments,* 170 F. Supp. 2d 207, 109 (D. Mass. 2001) (noting that at hearing on motion to dismiss for lack of personal jurisdiction, Court deferred ruling and subsequently allowed plaintiff to serve interrogatories and requests for production of documents); *Szafarowicz v. Gotterup*, 68 F. Supp. 2d 3842 (D. Mass. 1999) (noting the federal rules flexibility in allowing parties to develop jurisdicational discovery). *Accord, Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F. 3d 446, 456 (3rd Cir. 2003) (while discretionary,"courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous'").

Defendants' claim that Plaintiffs' requests for jurisdictional discovery were made at the eleventh hour and therefore is somehow prejudicial is unsupportable. As noted above, other than the Defendants' removal of this action and the 50-day period during which they drafted and filed their motion to dismiss, this case is fresh out of the gate[1]. The plaintiff subsequently prepared its substantial initial disclosures, the prerequisite to serving discovery provided by the rules, and on the same day filed its jurisdictional discovery, three weeks in advance of the due date for its opposition. In order to comply with this due date, plaintiff asked for expedited treatement and attempted to circumscribe its discovery to request the information it needed to repond to the motion. In the alternative, Plaintiff was amenable to any period for response to the discovery served, but

---

[1] A number of the cases cited by the defendants do not concern personal jurisdiction at all, but rather simply bar discovery because it was truly sought at the eleventh hour—shortly before the close of a lengthy, full-blown discovery period. *See Harry A. v. Rick Duncan,* 223 F.R.D. 536 (D. Montana 2004) (Court quashed majority of eighty-five (85) depositions noticed for a two-week period immediately prior to the close of discovery); *Thomas v. International Business Machines Corporation,* 48 F.3d 478 (10th Cir.1995) (Court granted protective order to bar the deposition of the chairman of defendant's board of directors). In stark contrast to the above-referenced cases, discovery has only just begun in this case (no 16(b) conference has been noticed). Mr. Cashman has narrowly circumscribed his discovery to address only the issue of personal jurisdiction. Moreover, prior to filing of the Defendants' Motion For Protective Order, counsel for Cashman offered to discuss the requests and consider narrowing them. Defendants' counsel declined.

simply asked the Court for a short period of time thereafter to complete its opposition to the motion to dismiss. In light of the numerous cases in which jurisdictional discovery is not requested or allowed until a hearing on the motion to dismiss, *Measurement Computing Corp. v. General Patent Corp. Int'l,* 304 F. Supp. 2d 176, 179 (D. Mass. 2004) ("[a]fter hearing oral argument on the motion [to dismiss], the Court expressed concern regarding its jurisdiction over [defendants], but stayed its decision pending further negotiations and reasonable discovery on the issue of jurisdiction"), or well after the motion and opposition were filed, *Yusuf v. Adams,* 2004 WL 715837 *2 (D. V.I. 2004) (despite that eight months passed after defendants served motion to dismiss on grounds of personal jurisdiction, court allowed 60-day jurisdictional discovery period), the plaintiff's request, which imposes no imaginable prejudice to defendants, should be allowed.[2]

> B. The Massachusetts Wage Act, Which Makes Individual Officers and Controlling Persons Liable, Broadens the Scope of Contacts Analysis.

Defendants misperceive the claim on which they are answerable in this lawsuit. They state, "Plaintiff has alleged breach of contract and therefore should be aware of the defendants' contacts on which he bases his claim of jurisdiction." Defs.' Mem. at 10. The only claim naming these Defendants is the Wage Act Claim, Count V of the First Amended Complaint and Jury Demand [Docket No. 4]. Because the Wage Act specifically provides that "the president and treasurer of a corporation and any officers and agents having the management of such corportation shall be deemed to be the

---

[2] In the bulk of cases cited by defendant in its memorandum, some or all of the defendants move to dismiss for lack of personal jurisdiction, plaintiff(s) oppose the motion to dismiss and then, *post-opposition*, seek jurisdictional discovery.

employers of the employees of the corporation within the meaning of this section," M.G.L. ch. 149, § 148, thus these individuals have the same liability for nonpayment of Mr. Cashman's (and any other Massachusetts employee's) wages as does IBM.

Because the Defendants' liability is precisely attributable to their positions in the corporation, their contacts with Massachusetts in this capacity are extremely relevant and goes beyond their specific contact with Mr. Cashman[3].

> [I]f the corporate officer is charged with violating a statutory scheme that provides for personal, as well as corporate liability, courts have held that contacts with the forum stemming from corporate actions should be considered when evaluating whether the officer, as an individual, has minimum contacts with the forum which would support the assertion of personal jurisdiction.

*National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.,* 785 F. Supp. 1186, 1191 (W.D. Pa. 1992) (citing, *Davis v. Metro Productions, Inc.,* 885 F.2d. 515 (9th Cir. 1989) and *Retail Sofware Services, Inc. v. Lashlee,* 854 F.2d 18 (2nd Cir. 1988)). *See also, In re Royal Ahold N.V. Securities and ERISA Litigation,* 351 F. Supp. 2d 334, 351 (D. Md. 2004) (individual's status as a "control person" under federal securities law, while not alone conferring jurisdiction, "is a factor to be considered . . . in the jurisdictional analysis").

This is exactly the reasoning that was employed by the District Court (Lasker, J.) in *Barthel v. One Community, Inc.*, 233 F. Supp. 2d 125, 127-128 (D. Mass. 2002), when deciding personal jurisdiction with respect to the CEO and CFO of the defendant corporation on a Wage Act Claim. In *Barthel*, the individual defendants (CEO and CFO of defendant company) argued that they "did not directly participate in decisions to fire,

---

[3] Plaintiff does not intend to make his full blown opposition to the motion to dismiss herein, despite Defendants' erroneous insinuation that such an effort is required. Plaintiff merely reasserts its intention with respect to the jurisdictional discovery he seeks and the reasoning therefore.

hire, or pay wages to [plaintiff]." *Id.* at 127. Ultimately, however, the court found that it had personal jurisdiction "under the Massachusetts Long Arm statute, due to their involvement in conducting [the company's] business affairs at the Massachusetts office." *Id.* at 128. Judge Young also read the jurisdictional contact requirement broadly in the case cited by the Defendants, *Nahigian v. Leonard*, 233 F. Supp.2d 151, 158 n.1 (D. Mass. 2002), where, in *dicta*, he concluded that one defendant, an officer of the company, could be found to have sufficient contact under the Massachusetts Long Arm statute merely due to his control and (mis)management of the corporation in Massachusetts. *See, Calder v. Jones*, 465 U.S. 783, 790 (1984) (acknowledging that personal jurisdiction is not conferred over an employee merely by virtue of company's contact, but "their status as an employee does not somehow insulate them from jurisdiction. Each defendant's contact with the forum state must be assessed individually").[4]

Clearly, the causal relationship between the defendants' business activities in Massachusetts and the ultimate failure of Mr. Cashman to be paid his commission compensation is construed broadly given that the Wage Act specifically enumerates

---

[4] In their brief, as a reason for their protective order, Defendants claim that they already "have stated that they had no contacts with Massachusetts relating to the plaintiff's commissions (other than those of Mr. Ill previously discussed)." Defs.' Mem. at 15. Assumedly this is a reference to the declarations prepared and filed with their Motion to Dismiss. [Docket No. 7]. However, the affidavits do not make any such statements. At best (aside from Mr. Ill who admittedly has had contact with Mr. Cashman), each of the other two claims that he had not contact regarding Mr. Cashman's commissions compensation "*while in the Commonwealth.*" See Declarations of Mssrs. Joyce and Mills. [Docket No. 7] (emphasis supplied). Notably, they do not attest to their contact from outside the Commonwealth directed to Mr. Cashman in his Dedham office, which is certainly relevant. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir 1998) ("[t]he transmission of facts or information into Massachusetts via telephone or mail would of course constitute evidence of a jurisdictional contact directed into the forum state"); *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 932-33 (1st Cir. 1985) (executing a guaranty in favor of a Massachusetts corporation, mailing four letters into Massachusetts, and receiving at least one telephone call from Massachusetts satisfied the "transacting any business" requirement); *L & P Converters, Inc. v. H.M.S. Direct Mail Service, Inc.*, 634 F. Supp. 365, 366 (D. Mass. 1986) ("do[ing] nothing to participate in the Massachusetts economy beyond placing the phone orders from New York" satisfied the "transacting any business" requirement).

individually of controlling persons within the company. Mr. Cashman is therefore entitled to conduct discovery to develop the spectrum of contact between these Defendants and IBM's multiple Massachusetts offices (Boston, Cambridge, Lexington, Marlborough, North Reading, Waltham, Westford, as well as Mr. Cashman's Dedham home office), employees, and business, in addition to contact with Mr. Cashman specifically, the former of which cannot reasonably considered accessible to Mr. Cashman absent discovery.

### C. Defendants Have Not Articulated Any True Burden.

As stated above, IBM's claim of burden as a basis for a protective order cannot be seriously credited. In this age of high-speed electronic transfer of information, IBM markets itself as leading the pack. "IBM's character has been formed over nearly 100 years of doing business in the field of information-handling. Nearly all of the company's products were designed and developed to record, process, communicate, store and retrieve information – from its first scales, tabulators and clocks to today's powerful computers and vast global networks." History of IBM, Cross Aff., Exhibit E. Given IBM's colossal capacity to store and retrieve information, the relatively short-term and specific requests for information between these three and Massachusetts cannot pose any serious burden. Furthermore, given IBM's nearly 319,000 employees (per its website), it is difficult to believe these high-level Defendants cannot and will not obtain the assistance necessary to respond to the requests[5].

Defendants' specific complaints of burden seem to be that Mr. Joyce will be

---

[5] Furthermore, as articulated above, plaintiff's counsel expressed a willingness before the motion for protective order to discuss the types of information available from defendants in an attempt to limit the response. Defendants were unwilling to entertain such a discussion prior to filing.

required to produce SEC filings and that emails will be difficult to sort. How providing financial information will be burdensome when there is a link directly from IBM's website to its SEC filings, is difficult to conceive. Further, the location of recipients or senders of emails should be equally accessible. In the first instance, IBM's claim that it has complete command over all of its employee information electronically, see *supra*, would seem to eliminate the lion's share of this perceived burden. Further, most emails allow the address and text to be searched for content, which would further allow electronic segregation of emails responsive to Plaintiff's requests. Neither of these instances seemingly produce a true obstacle to an world-wide information management company.

As to the "highly sensitive, confidential, and proprietary information" that these requests will allegedly elicit (Defs.' Mem. At 15), Plaintiff offered in both its Initial Disclosures and prior to the filing of the motion for a protective order, to discuss a reasonable confidentiality agreement to protect such information from public disclosure (while reserving his right to contest such designation as necessary). Again, Defendants represented confidentiality did not form the basis of the motion and disregarded Plaintiff's offer.

Defendants filed their motion with overinflated claims of burden and without heeding any opportunity to limit the issues placed before the Court offered by the Plaintiff. "A party seeking a protective order must demonstrate particular and specific facts to establish 'good cause' for the order." *Prozina Shipping Co., Ltd. v.Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998) (citing, *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986)); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.

1988), *cert. denied,* 488 U.S. 1030 (1989) (if movant does not show good cause, discovery is not entitled to judicial protection).  Furthermore, given that Defendants' spectrum of contact with Massachusetts (beyond merely the nonpayment of Mr. Cashman's commissions for 2001) is relevant to his demonstration of the propriety of personal jurisdiction, entitlement to this discovery outweighs any perceived burden. 6 James W. Moore, Moore's Federal Practice, §26.104[1] at 26-252 (3rd ed. 2005) ("good cause is not established merely by showing that discovery may involve inconvenience and expense").  As such, the Defendants have not met their burden or their obligation to confer in good faith, and their motion for protective order should be denied.

## CONCLUSION

Plaintiff, Thomas Cashman, respectfully requests that this Court deny the Defendants' motion for a protective order and reconsider and allow Plaintiff's request for either 1) expedited discovery or 2) allow the Plaintiff to extend the date by which he must respond to the Defendants' motion to dismiss until seven days after pending jurisdictional discovery has been produced or 3) stay hearing and decision on the motion to dismiss,

allowing Plaintiff seven days after jurisdictional discovery has been produced to supplement his opposition.

                Respectfully submitted,

                THOMAS CASHMAN
                By his attorneys,

                /s/ Kathleen E. Cross
                Kathleen E. Cross, BBO #556934
                Sharon H. Patton, BBO #634780

                HANIFY & KING
                Professional Corporation
                One Beacon Street
                Boston, MA  02108
                (617) 423-0400

### CERTIFICATE OF SERVICE

I, Kathleen E. Cross, hereby certify that I have this day served a copy of the foregoing pleading, Plaintiff, Thomas Cashman's Memorandum in Support of his Emergency Motion for Reconsideration of its Motion for Jurisdictional Discovery and Response to Motion for Protective Order Filed by Defendants Mills, Ill and Joyce and the Plaintiff's Emergency Motion for Reconsideration, and the Affidavit of Kathleen E. Cross electronically to all counsel of record and by mailing a copy of same, postage prepaid to:

Joan Ackerstein, Esq.
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts  02116

Janine Cone Metcalf
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

Jordana R. Sternberg
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

                /s/ Kathleen E. Cross
                Kathleen E. Cross

DATED: April 13, 2005

427896