UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN, )<br><br>Plaintiff, )<br><br>vs. )<br><br>INTERNATIONAL BUSINESS )<br>MACHINES CORPORATION, )<br>STEVEN A. MILLS, CHARLES ILL, )<br>JOHN R. JOYCE, and )<br>GREGORY ENRIQUEZ, )<br><br>Defendants. ) | 1:05-cv-10306-RWZ |

### AFFIDAVIT OF KATHLEEN E. CROSS

I, Kathleen E. Cross, do hereby depose on oath and state as follows:

1.      I am an attorney admitted to practice in Massachusetts in 1990 and a shareholder of the law firm of Hanify & King, P.C. ("Hanify & King"), One Beacon, Boston, Massachusetts   02108.  I, along with Hanify & King, represent the plaintiff in this Matter, Thomas Cashman.

2.      In connection with Motion for Protective Order and Response of Defendants Steven A. Mills, John R. Joyce and Charles Ill to Plaintiff Thomas Cashman's Emergency Motion for Expedited discovery Respecting Personal Jurisdiction, Heather Stepler, counsel for Defendants John Joyce, Steven Mills and Charles Ill (the "Defendants"), called me on April 7, 2005.

3.      She stated that she assumed Mr. Cashman would not assent to the Defendants' motion for protective order.  I asked her the basis for the motion, reminding

her that Mr. Cashman had offered to negotiate a reasonable confidentiality agreement to protect documents from public disclosure to the extent the Defendants claimed confidentiality (without necessarily conceding confidentiality). She told me that she had not seen the motion but that it was based on overbreadth and burden of the requests and not on confidentiality. She could not tell me more.

4.      I told her that, based on what she had told me, Mr. Cashman would not assent to a protective order. However, I did email Ms. Stepler subsequently, in the early afternoon, asking if there were particular areas where Defendants claimed burden in an effort to discuss a possible modification of the request. I again mentioned the possibility of a confidentiality agreement if the problem was disclosure. A true and accurate copy of that email is attached as Exhibit A.

5.      In response to my email, I spoke to Ms. Stepler. She reiterated that the basis of the motion was burden and overbreadth. I asked if she could be more specific. She advised that I should read the motion and that, if the plaintiff offered to narrow his requests thereafter, the Defendants would consider withdrawing the motion. She stated that she did not have time to go into any further detail because the motion needed to be filed. She did not articulate any reason that the motion needed to be filed that day.

6.      Attached hereto are true and accurate copies of the following documents:

    i)      Exhibit B: Initial Disclosures of the Plaintiff, Thomas Cashman, Pursuant to Fed. R. Civ. P. 26(a)(1);

    ii)     Exhibit C: "Company Overview: Mission Statement," obtained by undersigned counsel from IBM's website;

    iii)    Exhibit D: Relevant excerpts from "Understanding Our Company: an IBM Prospectus," obtained by undersigned counsel from IBM's website; and,

iv)    Exhibit E:  Relevant excerpt from "History of IBM," obtained by undersigned counsel from IBM's website.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS

__13th__ DAY OF APRIL, 2005.

                                        __/s/ Kathleen E. Cross_____
                                        Kathleen E. Cross

428148

# Exhibit A

**From:**     Kathleen Cross
**To:**       Stepler, Heather (BOS)
**Date:**     4/7/05 1:21PM
**Subject:**  Re: Cashman v. IBM

Dear Heather,

On reflection, I wanted to clarify some of the issues raised by your call this a.m.   You indicated that you would be filing for a protective order with respect to the jurisdictional discovery we had requested.  You said that the motion was based on burden, not confidentiality (as I mentioned Mr. Cashman was willing to entertain a confidentiality agreement).  While I believe you said that you had not seen the motion, will it include all three defendants?  Does it encompass all discovery requested (in other words are you looking to block all discovery)?  If not, is there some workable compromise we can agree to?   We are willing to consider narrowing our request if you can explain why/how they are overbroad and what you would be willing to produce.  I am available all afternoon to discuss this with you.

Sincerely,

Kathleen E. Cross

Kathleen E. Cross, Esq.
Hanify & King, P.C.
One Beacon Street
Boston, Massachusetts 02108
Tel:  (617) 423-0400
Fax: (617) 423-0498
kec@hanify.com

*******************
This e-mail message and any attachments are confidential and may be privileged.  If you are not the intended recipient please notify Hanify & King P.C. immediately -- by replying to this message or by sending a message to postmaster@hanify.com - and destroy all copies of this message and any attachments.  Thank you.

For more information about Hanify & King, P.C., please visit us at http://www.hanify.com

**CC:**          shp

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS CASHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL BUSINESS | ) | 1:05-cv-10306-RWZ |
| MACHINES CORPORATION, | ) | |
| STEVEN A. MILLS, CHARLES ILL, | ) | |
| JOHN R. JOYCE, and | ) | |
| GREGORY ENRIQUEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## DISCLOSURES OF PLAINTIFF THOMAS CASHMAN
## PURSUANT TO FED. R. CIV. P. 26(a)(1)

Thomas Cashman("Cashman"), by and through his counsel, submits the following information to defendants International Business Machines Corporation ("IBM"), Steven A. Mills, Charles Ill, John R. Joyce, and Gregory Enriquez (collectively, the "Defendants"), pursuant to the automatic disclosure requirements of Federal Rule of Civil Procedure 26(a)(1). All individuals, documents, and other material and information disclosed are without prejudice to Mr. Cashman's right to assert any applicable privilege and to supplement these disclosures as discovery in this case proceeds, and such rights are hereby specifically preserved.

I.    **INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT MAY BE USED TO SUPPORT PLAINTIFF'S CLAIMS**

The individuals that are likely to have discoverable information that Mr. Cashman may use to support his claims, and the nature of each individual's information is as follows[1]:

    A.  Thomas Cashman
       c/o Hanify & King, P.C.
       One Beacon Street
       Boston, Massachusetts 02108
       (617)423-0400

Mr. Cashman is expected to testify as to the items in the First Amended Complaint (the "Complaint").

    B.  Gregory Enriquez
       c/o Stratus Technologies
       111 Powdermill Road
       Maynard, Massachusetts 01754

Mr. Enriquez is expected to testify regarding Mr. Cashman's performance appraisals for 2001, his presence on the Executive Resource list and his eligibility for advancement to executive positions in 2001 through the time Mr. Enriquez left IBM. He is also expected to testify as to the compensation plans and means by which IBM compensates its second line sales managers generally, and specifically with respect to the events of Mr. Cashman's 2001 compensation and subsequent reductions thereof.

    C.  Joao Perez
       c/o International Business Machines, Corp.
       New Orchard Road
       Armonk, NY 10504
       (914) 499-1900

Mr. Perez is expected to have information regarding Mr. Enriquez' treatment of Mr. Cashman in 2001 and 2002 with respect to Mr. Cashman's commissions compensation and performance reviews.

---

[1] This list and the other information listed herein are based on Mr. Cashman's present knowledge. He reserves his right to add to the list based on information gained through the discovery process.

D. Thomas Wrobleski
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Wrobleski is expected to testify regarding Mr. Cashman's performance in 2001, his compensation plan for 2001, and discussions with Mr. Cashman regarding his performance appraisal for 2001.

E. Steven A. Mills
c/o International Business Machines, Corp.
294 Route 100
Somers, NY 10504
(914) 499-1900

Mr. Mills is expected to testify as to the 2001 SWG Compensation Plan for sales people; his participation and promises made to IBM sales people, including Mr. Cashman, for uncapped earnings at e-Business University in both 2001 and 2002; and IBM's sales and profit for those years, as well as Mr. Cashman's performance at IBM.

F. John Joyce
c/o International Business Machines, Corp.
294 Route 100
Somers, NY 10504
(914) 499-1900

As chief financial officer for IBM for the relevant times in the First Amended Complaint, Mr. Joyce had ultimate control and oversight of, *inter alia,* the compensation of IBM employees, including Mr. Cashman, and is expected to testify regarding this and other financial matters relevant to the Complaint.

G. Charles Ill
277 Stamford Avenue
Stamford, CT

Mr. Ill is expected to testify regarding the formulation and presentation of the 2001 SWG Compensation plan, his participation in e-Business University for 2001, and the manner in which commission compensation was reduced after the close of the books for 2001. Mr. Ill is also directly knowledgeable regarding the Open Door grievance procedure and Mr. Cashman's attempt to seek redress using that procedure for reductions in his compensation of 2001.

H. Michael Huether
c/o International Business Machines, Corp.
New Orchard Road

Armonk, NY 10504
(914) 499-1900

Mr. Huether served as the Commissions Analyst for the Finance Vertical of which Mr. Cashman was a part. Mr. Huether provided Target Account Lists, and updated Mr. Mr. Cashman with respect to his commission compensation via Business Registers and other communications throughout 2001 and 2002. On information and belief, Mr. Huether had at least one conversation with Greg Enriquez regarding reducing Mr. Cashman's commissions after the close of the books for 2001 and was required to remove revenue from Mr. Cashman's attainment from which Mr. Cashman's commissions compensation was figured. He is expected to testify regarding his knowledge of the SWG Compensation plan for 2001 generally and his specific involvement in calculating reductions in compensation after the close of the sales year 2001.

    I.   John Dunderdale
         c/o International Business Machines, Corp.
         New Orchard Road
         Armonk, NY 10504
         (914) 499-1900

Mr. Dunderdale was the outgoing Vice President for Americas Sales for Tivoli and provided Mr. Cashman with his Quota Letter and Compensation Plan for 2001. Mr. Dunderdale is expected to have information regarding the sales goals and compensation plan for IBM's software group generally and Mr. Cashman particularly until the time Mr. Dunderdale changed positions. Mr. Dunderdale also may have information regarding Mr. Cashman's subsequent employment history with IBM including his attempts to advance internally.

    J.   Thomas Francese
         c/o International Business Machines, Corp.
         New Orchard Road
         Armonk, NY 10504
         (914) 499-1900

Mr. Francese is expected to testify regarding Mr. Cashman's presence on the Executive Resource List and the relationship between being on that list and advancement at IBM.

    K.   Rob Geier
         c/o International Business Machines, Corp.
         New Orchard Road
         Armonk, NY 10504
         (914) 499-1900

Mr. Geier, former Vice President of Tivoli Western United States, is expected to testify regarding conversations with Mr. Enriquez regarding commissions for 2001.

L.  William Sullivan
    941 Towlston Road
    McLean, Virginia 22102

Mr. Sullivan, a former Regional Director of SWG for the Southeastern territory of the United States, is expected to testify about the reduction of commissions compensation for 2001 after the fact and the circumstances surrounding that reduction.

M.  Jeff Phelps
    c/o International Business Machines, Corp.
    New Orchard Road
    Armonk, NY 10504
    (914) 499-1900

On information and belief, Mr. Phelps was the HR Partner for SWG Americas and was the person to whom Mr. Cashman was directed to pursue an appeal of the initial determination of his Open Door grievance for IBM's failure to compensate him per his compensation plan for 2001. Mr. Phelps is expected to testify regarding this appeal.

N.  Bruno Teuber

Mr. Teuber was IBM's Vice President of Sales for Tivoli EMEA (Europe, Middle East and Asia) and supervised the structure and execution of compensation for Mr. Cashman and his team in 1999. Mr. Teuber is expected to testify regarding the compensation plan for Mr. Cashman and his team for 1999 and changes thereto that resulted in Mr. Cashman losing commission compensation that he had already earned.

O.  Maurizio Carli

Mr. Carli was IBM's Vice President of Tivoli EMEA and conferred and had knowledge of the compensation plan for Mr. Cashman and his team for 1999 and changes thereto that resulted in Mr. Cashman losing commission compensation that he had already earned.

P.  Milko van Duijl

Mr. Van Duijl was an operations executive for IBM's Tivoli EMEA and participated in the changes to Mr. Cashman's compensation in 1999 in contravention of Mr. Cashman's compensation plan. He is expected to testify regarding his knowledge of the events leading to changes in Mr. Cashman's compensation structure and his conversations with Mr. Teuber and others relevant thereto.

Q. Frank Fallon

Mr. Fallon also managed Mr. Cashman and his team during Mr. Cashman's service to IBM in 1999. Mr. Fallon is expected to testify to the compensation plan established for Mr. Cashman and his team for 1999 and changes thereto that resulted in Mr. Cashman losing commission compensation that he had already earned, as well as Mr. Cashman's performance for IBM at this time and his efforts to undo the reduction in commissions.

R. Michael Schade
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Schade has knowledge of Mr. Cashman's efforts to invoke IBM's Open Door grievance policy following the reduction of his 2001 commissions compensation.

S. Katherine Mavrakos
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Ms. Mavrakos has knowledge of Mr. Cashman's efforts to invoke IBM's Open Door grievance policy following the reduction of his 2001 commissions compensation.

T. Kathy Blair
710 Rolling Green Drive
Austin, Texas 78734

Ms. Blair is believed to have knowledge of the reductions in commission compensation to Mr. Cashman and others for the 2001 sales year.

U. Lawrence J. Keryc
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Keryc is believed to have knowledge of the reductions in commission compensation to Mr. Cashman and others for the 2001 sales year and to have had conversations with Mr. Enriquez regarding the same.

V.  Richard Beckert
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

An IBM financial controller, Mr. Beckert is believed to have knowledge of the reductions in commission compensation to Mr. Cashman and others for the 2001 sales year and to have had conversations with Mr. Enriquez regarding the same.

W.  R.C. Rolfe
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

During the period relevant to the Complaint, Mr. Rolfe was the worldwide head of operations for IBM's Software Group and has knowledge of reductions in revenue attainment for Mr. Cashman with respect to the Morgan Stanley Dean Witter ("MSDW") account.

X.  Vidor Swamy
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Swamy was IBM's sales representative for the MSDW account and was managed by Mr. Cashman.  He is expected to have knowledge of the treatment of revenue attainment for the sales people on this account.

Y.  William A. Entwistle
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Entwistle was the software account manager for the MSDW account.  He is expected to have knowledge of the treatment of revenue attainment for the sales people on this account.

Z.   Arlene Bishel-Knapp
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Ms. Bishel-Knapp served as manager to Mr. Huether and is believed to have full knowledge of the changes made to revenue attainment of sales people in the Software Group after the close of the calendar year 2001, including those made to Mr. Cashman's accounts and the circumstances surrounding these changes.

AA.   Jeffrey Stricklen
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Stricklen is believed to have knowledge regarding the commissions budget for the sales staff managed by Mr. Enriquez and the reductions in revenue attainment and commissions compensation for that group for 2001.

BB.   Remy Zuelle
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Zuelle was an IBM business consultant to Mr. Cashman during Mr. Cashman's tenure with EMEA in 1999.  Mr. Zuelle is believed to have information regarding reductions to Mr. Cashman's commissions compensation and performance for 1999.

CC.   Duncan Budd
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Budd was an IBM employee having some responsibility for tracking commissions compensation for the Tivoli EMEA group, of which Mr. Cashman was part, for 1999.

DD.    George Delasos
c/o International Business Machines, Corp.
New Orchard Road
Armonk, NY 10504
(914) 499-1900

Mr. Delasos was the head of finance for Tivoli EMEA during Mr. Cashman's tenure with Tivoli EMEA and is believed to have information regarding Mr. Cashman's compensation plan and reductions to Mr. Cashman's commissions compensation (and those of Mr. Cashman's team) for 1999.

EE.    Tim William Hubler
248 Deerwood Drive
Franklin, North Carolina

Mr. Hubler is believed to have information regarding the 2001 Software Incentive Sales Plan, especially as to education of IBM sales managers, as well as the presentations made at IBM's e-Business University for 2001, at which the sales plan was discussed.

FF.    John Whitling Hardin
105 San Mateo Terrace
Cedar Park, Texas

Mr. Hardin was a sales operations analyst responsible, in part, for educating IBM sales people and managers regarding commission-related issues, as well as the sales incentive plan in place for the Software Group for 2001. Mr. Hardin is believed to have prepared materials regarding commissions budget overruns for 2001 and had discussions with, *inter alia*, Mr. Enriquez as to how to reduce that overrun (including reducing Mr. Cashman's commissions compensation).

GG.    Richard Lowe

Mr. Lowe had some responsibility for accounts assigned to Mr. Cashman and his Tivoli EMEA team in 1999 and is expected to have information regarding changes to the plan made after earnings were achieved.

HH.    Cashman's Tivoli EMEA Team

Keith Andrews, Andy Astbury, Jason Tooley and Chris Butcher, all of whom were managed by Mr. Cashman during his tenure in 1999 with Tivoli EMEA, have information on the team's compensation plan and belated reductions in recognized revenue attainment for the Team for 1999.

## II. Description of Documents

Mr. Cashman supplies the following description of documents by category and location that it may use to support its claims, with the exception of impeachment[2]. The following documents are at least in Mr. Cashman's possession[3].

a) **IBM Contracts, Revenue and Sales Materials, and Performance Evaluations directed to Mr. Cashman -- Mr. Cashman intends to rely on electronic, web, and hard copy contractual, revenue, performance and sales documents from IBM, including, but not limited to, the following:**

i)   Tivoli Systems (UK) Ltd: 1999 Sales Director Commission Worksheet for Cashman.

ii)  Finance Vertical Team Attainment Listing for December 1999

iii) Tivoli Team Finance package, dated March 4, 1999 Update

iv)  Letter from Steve Standring, Director Verticals, Tivoli to Cashman, dated May 12, 1999, concerning base salary and commissions

v)   Employee Quota Letter for Cashman for period 1/1/2001 through 12/31/2001

vi)  Tivoli Systems 2Q 2001 Commissions Attainment Summary for Cashman, dated July 27, 2001.

vii) IBM Software Group, Tivoli Target Incentive Pay Summary, 2Q 2001 for Tom Cashman

viii) Hard copy of IBM website information:  Voice Your Opinion:  Open Door Overview, Request, Investigation, Resolution

ix)  50/50 SWG Sales Plan Example

---

[2]  In addition, this list does not include documents that may be used to establish personal jurisdiction over certain of the defendants who are contesting such jurisdiction.  These documents would include emails, correspondence and other materials delivered to Mr. Cashman in Massachusetts.

[3]  To the extent IBM considers any document listed to be confidential and proprietary, without agreeing that it is, Mr. Cashman is willing to enter a reasonable confidentiality stipulation that is acceptable to the Court for use of the information during this lawsuit.

x)    Manager's Toolkit:  Evaluating Performance and Paying Incentives compensation materials including attainment summaries

xi)    Attainment Adjustments printout for Cashman, dated February 1, 2002

xii)    Brochure:  IBM:  Welcome to the fabulous world of your 2001 Software Sales Incentive Plan

xiii)    2001 Tivoli Systems Individual Compensation Plan:  Territory Definition for Cashman, dated February 21, 2001

xiv)    Letter from L. V. Gerstner, Jr. re: award of stock options to Cashman, dated, June 25, 2001

xv)    Tivoli Systems Inc., Southeast Region/Financial Vertical, Third Quarter Region Review, August 15, 2001

xvi)    IBM Software Group, Tivoli Target Incentive Pay Summary, 3Q 2001 for Cashman

xvii)    PBC (Personal Business Commitments) for Cashman, Thomas R., for January 1, 2001 to August 31, 2001 for BUE [Business Unit Executive] – Finance Vertical position.

xviii)    PBC for Cashman, Thomas R., for September 1, 2001 to December 31, 2001 for Tivoli Director

xix)    Tivoli U.S. Sales Operations 4Q-2001 Incentive Compensation Authorization Form for Cashman

xx)    2001 Attainment worksheet for Cashman for 2001

xxi)    Tivoli systems 4Q 2001 Commissions Attainment Summary, dated January 28, 2002 for Cashman

xxii)    Hard copy of IBM website section, entitled, "Sales Incentives:  What's new for 2001?"

xxiii)    Payroll records indicating what was owed and paid to Cashman by IBM for the years 1999 and 2001.

xxiv)    Letter from Steven Mills and Mike Lawrie, dated March 18, 2003, directed to Cashman in Dedham, Massachusetts, congratulating Cashman on achieving his sales quota.

**b) Emails – Mr. Cashman intends to rely on email communications among and between himself and IBM employees, including, but not limited to, the following:**

i)     Email from Maurizio Carli to Larry Hirst re: Banking Sector and Tivoli linkages in 1999, dated, December 22, 1998

ii)    Email from Sati Punni to Cashman, dated 7/26, 1999 re: accounts for his team

iii)   Email from Cashman to Richard Lowe listing accounts for salespeople on Cashman' s team

iv)    Email from Richard Lowe to Sati Bagal re: Finance Vertical 4 accounts

v)     Email to Sati Bagal from Cashman attaching sales team goals proposed by Cashman and agreed to by Bruno Teuber in May of 1999, dated August 23, 1999

vi)    Email from Frank Fallon to Cashman dated October 22, 1999

vii)   Email from Milko van Duijlt to Keith Andrews dated October 29, 1999 re: Tivoli Sales plan

viii)  Email exchange with Richard Lowe re: PBC's for Cashman and Team, dated, September 28-29, 1999

ix)    Emails dated January 16, 2002 between Cashman and Michael Huether concerning revised final attainment figures.

x)     Email to Mike Schade from Cashman, dated, January 29, 2002, re: loss of commissions compensation to Cashman report Bill Wallace.

xi)    Email dated January 12, 2001, to Cashman and many others from Charles Ill (through assistant Maggie Matturro) regarding concerning sales for 2001 and 2002 and forwarding email from Steve Mills dated January 4, 2001 regarding e-business universities and sales kickoff for 2001, as well as sales plans and attainment for IBM salespeople for 2001.

xii)   Email dated February 22, 2001 to Cashman from Huether with attachment (Financial Vertical TAL [Target Account List] as of 2/21/ 2001).

xiii)  Email from Whit Hardin to, *inter alia,* Cashman re: Quota Letters for Tivoli for 2001, dated February 27, 2001.

xiv)    Email from John Dunderdale to Cashman with 2001 Comp Plan and Quota Letter attached, dated, March 5, 2001.

xv)    Email from Cashman to Phelps re: Appeals Process, dated, November 6, 2002.

xvi)    Email series between Cashman and Phyllis Helms and Ann Langbein regarding Cashman's Open Door Appeal, dated June 13, 2002 through September 25, 2002.

xvii)    Email from Cashman to Jeff Phelps re: Open Door Communication, dated, June 12, 2002

xviii)    Email from Cashman to Charlie Ill dated, February 5, 2002 regarding commission compensation reduction.

xix)    Email from Cashman to Huether re: 2Q Attainment Summary, dated July 11, 2001

xx)    Email from Huether to Cashman attaching 2Q Pay summary for Cashman and his team, dated July 25, 2001

xxi)    Email from Ray Petruch to Cashman re: Farmer's Q1 Bus reg [Business Register] revenue, dated May 21, 2002

xxii)    Email series between and among Cashman, Ann Langbein, Phyllis Helms regarding appeal of Open Door grievance dated, June 13, 2002 through November 1, 2002

xxiii)    Email from Wroblewski to Cashman re: Stock Options and congratulations, dated July 23, 2001

xxiv)    Email from Cashman to Tom Francese re: discussion with Enriquez, dated August 16, 2001

xxv)    Email exchange between Tom Wroblewski and Michael Huether re: Cashman PCO3 challenge, dated October 10-11, 2001, attaching an email from Tom Wroblewski to Tom Cashman dated September 18, 2001

xxvi)    Email from Michael Huether to Cashman re: 4Q 2001 Final Attainment Revised per Greg Enriquez with copy of Final 2001 Individual Attainment Spreadsheet attached, dated January 16, 2002

xxvii)    Email from Michael Huether to Cashman with 3Q Commissions Forms, 3Q2001 Incentive Compensation Summary, 4Q Commissions Form, 4Q

attainment removed , 3466 Analysis, Cashman Quota, Cashman Territory definition and 2001 Plan calculator attached, dated, February 1, 2002.

xxviii) Email from Cashman to Michael Huether re: 4Q 2001 Final Attainment Revised Per Greg Enriquez, dated January 16, 2002

xxix)  Email from Terri Holt re: 3466 NSM transactions from June-December of 2001with spreadsheet attached.

(c)  **Documents from** *Robert L. Howatt v. International Business Machines Corp. d/b/a Tivoli Systems, Inc.,* **Civ. Action No. 02cv2594 (N.D. Georgia).**

i)  Deposition transcripts, including those of Wroblewski, Sullivan, Hardin, Enriquez, Mills, Black, Blair, Hess, Lantz, Hubler, and Jensen, and exhibits thereto, as necessary, from *Robert L. Howatt v. International Business Machines Corp. d/b/a Tivoli Systems, Inc.,* Civ. Action No. 02cv2594 (N.D. Georgia), all of which are assumedly in the possession of IBM.

ii)  Pleadings, including affidavits and declarations, from *Robert L. Howatt v. International Business Machines Corp. d/b/a Tivoli Systems, Inc.,* Civ. Action No. 02cv2594 (N.D. Georgia).

## III. EXPERTS

Mr. Cashman has not identified, at this time, an expert witnesses at the trial of this matter, but recognizes his duty to seasonably supplement this information should his position change.

## IV. DAMAGES

As is set forth in the First Amended Complaint and based on the compensation plans provided to him, Mr. Cashman has been damaged by IBM's failure to pay the compensation earned by Mr. Cashman in 1999 and 2001 by arbitrarily cutting his

attainment revenue (for 1999, approximately $737,100 in commissions were lost after cuts in his attainment revenue were instituted; for 2001, approximately $9,164,000 in attainment revenue was cut, thereby resulting in a loss of approximately $335,000 in commissions compensation); and by failing to pay full commissions on revenue booked for the Morgan Stanley Dean Witter account in 2001 as well as the "3466" accounts (totaling approximately $39,000 in lost commissions).    Damages for lost commission compensation are calculated based on formulas and percentages provided in the 2001 SWG Sales Incentive Plan using complete revenue attainment figures that should have been credited to Mr. Cashman.

In addition, Mr. Cashman has been damaged by the retaliatory actions of IBM and its agents (specifically, Mr. Enriquez) after Mr. Cashman initiated an internal grievance, and was subsequently removed from the Executive Resource List, and denied promotion opportunities as a result. In addition, in retaliation for Mr. Cashman's pursuit of an internal grievance, Mr. Enriquez unjustly lowered Mr. Cashman's performance rating, costing Mr. Cashman a loss of at least $25,000 in compensation.  More specific damage calculations will be possible after information regarding lost positions and accompanying compensation information becomes available through discovery.

Mr. Cashman will also be eligible for multiple damages and fees per the Massachusetts Wage Act, Mass. Gen. Law 149, § 150 and all other damages that the Court deems due and proper.

## V. INSURANCE AGREEMENTS

Mr. Cashman is unaware of any insurance policy available to satisfy his claims.

Respectfully submitted,

THOMAS CASHMAN
By his attorneys,

Kathleen E. Cross, BBO #556934
Sharon H. Patton, BBO #634780

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400

## CERTIFICATE OF SERVICE

I, Kathleen E. Cross, hereby certify that I have this day served a copy of the foregoing Disclosures of Thomas Cashman Pursuant to Fed. R. Civ. P. 26(a)(1), by delivering a copy by hand to:

Joan Ackerstein, Esq.
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts  02116

Kathleen E. Cross

DATED: March 31, 2005

# Exhibit C

**IBM.**

# Company overview

**Information on IBM - the company, including who we are, what we do, and what we offer**

**Mission statement**

At IBM, we strive to lead in the creation, development and manufacture of the industry's most advanced information technologies, including computer systems, software, networking systems, storage devices and microelectronics.

We translate these advanced technologies into value for our customers through our professional solutions and services businesses worldwide.

**Financials**

**2004 4Q from continuing operations**

Revenue: $27.7 billion
Net Income: $3.1 billion
Earnings Per Share: $1.81

**2004 year-end from continuing operations \***
\* Reclassified to reflect the company's continuing and discontinued operations.

Revenue: $96.5 billion
Net Income: $8.4 billion
Earnings Per Share: $4.94
Total Assets: $109.1 billion

Net Cash from Operating Activities: $10.5 billion

Number of employees: 319,273
Stockholders of record: 671,610

**Business operations**

IBM delivers on demand solutions through the following business segments:

| Hardware | Financing |
|---|---|
| Servers | A leading provider of financing and |
| Storage | asset management services to |

# Exhibit D



UNDERSTANDING OUR COMPANY
AN IBM PROSPECTUS

# 3 Adaptive and collaborative

### AS INDIVIDUALS AND AS A WHOLE

Innovation by its very nature is dynamic and ever-changing. A company that exists to deliver innovation for its clients must synthesize invention with marketplace insight. Doing so continually requires a culture of learning, skill building and collaboration. Specifically, it means that technologists and business experts need to work closely together, not simply to share insights, but to create entirely new intellectual capital.

## Virtual collaboration

In a manufacturing economy, teamwork was mostly a matter of large-scale coordination among specialized forms of manual labor. But a business model based on innovation requires a much more individualized and deeply collaborative workforce strategy. To facilitate that, IBM has one of the world's leading intranets—a virtual work environment that provides enterprise-wide information, applications and collaboration tools.

### ON DEMAND WORKPLACE

A pioneer in electronic work environments in the 1980s, IBM has embraced the Internet and On Demand Business throughout its internal operations. Every working day, our intranet receives a million visits from IBMers. Web-based applications and tools support virtually every process and function in the company, including development, sales, procurement, supply chain, human resources and finance. In 2004, this 21st-century workplace saved at least 3 million work hours.

### IMPROVED EXPERTISE UTILIZATION

Thanks to a workforce tool that automates the coordination and management of marketplace demand with service professionals' availability and deployment, IBM Global Services was able to share the equivalent of 13,000 additional employees globally across its business lines in 2004, an increase of 28 percent over the prior year. In 2005, this system will be integrated with those from other business units, creating an enterprise-wide system to match expertise with opportunity across IBM.

### EXPANDED EXPERTISE LOCATION

Extensive information about IBM employees' expertise—education, certifications, publications, patents, languages spoken, past work projects and more—is accessible on the intranet, and is heavily used and relied upon. In 2004, expertise searches rose from about 100,000 to almost 600,000 per month—while saving an estimated half hour each month per employee. More than 267,000 employees have updated their online expertise profiles within the past year.

### COLLABORATION AND TRUSTED INFORMATION

The heaviest use of the On Demand Workplace is for learning and collaboration. Every day, more than 3 million instant messages are exchanged and 1,400 e-meetings are held. More than half of IBM's training is via e-learning. IBM's intranet is rated as the most credible and useful source of information about the company by 72 percent of our employees.

---

### WORKPLACE FLEXIBILITY

## 4 out of 10 IBMers

### AROUND THE WORLD

frequently work outside a traditional office, whether at a client site, while mobile or from a home office.

  

The National Medal of Technology

The National Medal of Science

IBM's Heinrich Rohrer (above, left) accepts the Nobel Prize in Physics in 1986 for co-inventing the Scanning Tunneling Microscope.

### PIONEERING NEW FRONTIERS OF RESEARCH

IBM scientists and researchers—including five Nobel Prize winners, ten National Medal of Technology honorees, five National Medal of Science recipients, four A.M. Turing Prize winners and two Japan Prize laureates—continually expand the frontiers of discovery, pushing information technology into some surprising fields.

**WE ARE ENTERING RESEARCH FIELDS BEYOND TRADITIONAL IT:** Automation, Autonomic Computing, Bioinformatics and Biomedical Engineering, Information Management, Management Science, Nanotechnology, Operations Research and Statistics, Pharmaceuticals, Psychology, Services (Supply Chain, Engineering and Technology Services) and Speech Science.

# Exhibit E

**IBM®**

# History of IBM

| **Introduction** | Timeline |
|---|---|
| • 1880s | • 1950s |
| • 1890s | • 1960s |
| • 1900s | • 1970s |
| • 1910s | • 1980s |
| • 1920s | • 1990s |
| • 1930s | • 2000s |
| • 1940s | |

The character of a company -- the stamp it puts on its products, services and the marketplace -- is shaped and defined over time. It evolves. It deepens. It is expressed in an ever-changing corporate culture, in transformational strategies, and in new and compelling offerings for customers. IBM's character has been formed over nearly 100 years of doing business in the field of information-handling. Nearly all of the company's products were designed and developed to record, process, communicate, store and retrieve information -- from its first scales, tabulators and clocks to today's powerful computers and vast global networks.

IBM helped pioneer information technology over the years, and it stands today at the forefront of a worldwide industry that is revolutionizing the way in which enterprises, organizations and people operate and thrive.

The pace of change in that industry, of course, is accelerating, and its scope and impact are widening. In these pages, you can trace that change from the earliest antecedents of IBM, to the most recent developments. You can scan the entire IBM continuum from the 19th century to the 21st or pinpoint -- year-by year or decade-by-decade -- the key events that have led to the IBM of today. We hope that you enjoy this unique look back at the highly textured history of the International Business Machines Corporation.

**Download files**

The file listed below has been compressed and is available in .zip format. You will need to use Winzip® or a similar program to expand the file prior to use.

☞ Go to the WinZip® homepage

➥ History of IBM interactive exhibit (1306KB)