UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS CASHMAN,<br>Plaintiff<br><br>v.<br><br>INTERNATIONAL BUSINESS, MACHINES<br>CORPORATION, STEVEN A. MILLS,<br>CHARLES ILL, JOHN R. JOYCE and<br>GREGORY ENRIQUEZ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-10306-RWZ |

### PLAINTIFF THOMAS CASHMAN'S MEMORANDUM IN OPPOSITION TO DEFENDANTS STEVEN A. MILLS, JOHN R. JOYCE AND CHARLES ILL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff Thomas Cashman ("Cashman") respectfully submits this memorandum of law in opposition to the motion to dismiss for lack of personal jurisdiction filed by defendants Steven A. Mills ("Mills"), John R. Joyce ("Joyce") and Charles Ill ("Ill") (collectively, the "defendants"). As detailed below, the facts alleged in the First Amended Complaint and in the Affidavit of Thomas Cashman ("Cashman Affidavit") and Affidavit of Kathleen E. Cross, Esq. ("Cross Affidavit"), filed herewith, satisfy both the Massachusetts long-arm statute, G.L. c. 223A, §3(a), and the Due Process Clause of the United States Constitution. The defendants have been named individually as "employers" pursuant to the Massachusetts Wage Act, G.L. c. 149, §148 (the "Wage Act"). The Wage Act expressly makes certain individual corporate officers strictly liable for nonpayment of wages due their Massachusetts employees, simply *by virtue of their corporate positions*. The defendants' status as "employers" pursuant to the Wage Act, together with their contacts in Massachusetts attributable to their corporate positions, are easily sufficient to allow this Court to exercise personal jurisdiction over them.

## STATEMENT OF FACTS

Cashman hereby incorporates by reference all the facts set forth in the First Amended Complaint, which for purposes of this motion must be accepted as true, *see, e.g., JMTR Enterprises, L.L.C.* v. *Duchin*, 42 F. Supp. 2d 87, 94 (D. Mass. 1999), and the additional facts set forth in the Cashman Affidavit and Cross Affidavit.

## LEGAL STANDARD

In reviewing a motion to dismiss for lack of personal jurisdiction, "this Court must construe the facts in the light most hospitable to the plaintiff[]." *Clark* v. *City of St. Augustine, Fla.*, 977 F. Supp. 541, 542 (D. Mass. 1997). The Court

> employs the *prima facie* standard, under which the Court considers whether the plaintiffs have proffered evidence that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.' When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead 'accepts properly supported proffers of evidence by a plaintiff as true.'

*Brookfield Machine, Inc.* v. *Calbrit Design*, 929 F. Supp. 491, 494 (D. Mass. 1996) (citations omitted).

## ARGUMENT

In determining whether to exercise jurisdiction over a non-resident defendant, the First Circuit, like Massachusetts state courts, requires compliance with both statutory and federal constitutional jurisdictional standards. Where, as here, there are "sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the Fourteenth Amendment's Due Process clause," exercise of jurisdiction is appropriate. *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (citations omitted); *Good Hope Indus.* v. *Ryder Scott Co.*, 378 Mass. 1, 6 (1979)( "G.L. c. 223A[] functions as 'an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'").

I.     **The Massachusetts Long-Arm Statute Supports Exercise Of Jurisdiction Over Mills, Joyce and Ill.**

Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . ." G.L. c. 223A, § 3(a). The 'transacting any business' clause has been construed broadly. See *United Elec., Radio and Mach. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992) ("Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner."); *Fairview Machine & Tool Co.* v. *Oakbrook Int'l, Inc.*, 56 F. Supp. 2d 134, 138 (D. Mass. 1999) (same). "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements – the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994). Both requirements are satisfied here.

Notably, physical presence is not required to meet the standards of the transacting business test set forth in G.L. c. 223A, §3(a). *JMTR Enterprises, LLC,* 42 F. Supp.2d at 96 ("section 3(a) does not require that the business be transacted within the physical bounds of Massachusetts") (citations omitted); *Phillips Exeter Academy* v. *Howard Phillips Fund, Inc.*, 196 F.3d 284, 290 (1st Cir. 1999)("[T]o be constitutionally significant, forum-state contacts need not involve physical presence"). Indeed, "[m]odern technology has taken us far beyond the point where two men must stand in each other's physical presence to transact business. Widespread use of the telephone and the mails make actual physical presence unnecessary in many cases." *Good Hope Industries*, 378 Mass. at 11 (citation omitted); *Tatro*, 416 Mass. At 768. Thus, the defendants' statements under oath respecting their claimed lack of physical presence in Massachusetts are not determinative. See Declaration of Steven A. Mills, ¶("I have not

transacted business while in the Commonwealth of Massachusetts directly relating to decisions

regarding Thomas Cashman's 2001 commissions"); *see also* Declaration of John R. Joyce, ¶8

(same); *and* Declaration of Charles Ill, ¶8 ("I did not travel to Massachusetts to meet with Mr.

Cashman.  I conducted any communications with Mr. Cashman from my office in New York").

Indeed, lack of physical presence in Massachusetts is not enough to escape jurisdiction here.

*See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 36 (1st Cir 1998)

("[t]he transmission of facts or information into Massachusetts via telephone or mail would of

course constitute evidence of a jurisdictional contact directed into the forum state"); *L & P*

*Converters, Inc.* v. *H.M.S. Direct Mail Service, Inc.*, 634 F. Supp. 365, 366 (D. Mass. 1986)

("do[ing] nothing to participate in the Massachusetts economy beyond placing the phone orders

from New York" satisfied the "transacting any business" requirement).

### A.    Ill Transacted Business in Massachusetts.

In 2001, Ill was Vice President, Software, IBM Americas.  Without question, Ill

transacted business in Massachusetts.  Indeed, Ill's numerous contacts with Massachusetts that

relate directly to the subject matter of this lawsuit are considerably more extensive than those in

cases that have found the "transacting any business" language satisfied.  For example, "[o]n or

about February 5, 2002, Cashman filed an Open Door grievance with Mr. Ill respecting IBM's

failure to pay his 2001 commissions earned and due and payable pursuant to the 2001 50/50

SWG Sales Plan."  First Amended Complaint, ¶7; *see also* Cashman Affidavit, ¶16 and <u>Exhibit</u>

<u>G</u>.  Cashman further alleges that he "initiated *and received* numerous communications involving

Mr. Ill from [his] home office in Massachusetts directly related to the claims central to this

action."  First Amended Complaint, ¶7 (emphasis added); *see also* Cashman Affidavit, ¶17

(describing conversations with Ill).  In August 2001, Cashman received an email from IBM

Software Group management notifying him that his team's weekly required OMsys forecasting was forwarded to Ill on a weekly basis "for use in [Ill's] forecast calls" and were viewed as "a critical step" in the development of the Tivoli forecast. *See* Cashman Affidavit, ¶11 and <u>Exhibit C</u>.

Ill himself acknowledges contact with Cashman in Massachusetts. In ¶8 of his Declaration, while noting that he "did not travel to Massachusetts to meet with Mr. Cashman," Ill acknowledges "conducting communications with Mr. Cashman from [his] office in New York." Moreover, on January 12, 2001, Cashman received an email from Ill at his Massachusetts home office directly relating to the roll out of the 2001 SWG Sales Plan, upon which Cashman's claims are based. *See* Cashman Affidavit, ¶5 and <u>Exhibit A</u>. In his email, Ill thanked his team for their great work in 2000 and noted that, going forward into 2001, "[y]ou have my word that the entire executive team, including myself, are here to support you and be your advocate." *Id.* By that same email, Ill forwarded to Cashman and others in Massachusetts an email from defendant Mills that was intended to encourage and motivate sales people across IBM. *See id.* Thus, Ill's contacts with Massachusetts support jurisdiction more strongly than did the facts of *Hahn* v. *Vermont Law School*, 698 F.2d 48, 50 (1st Cir. 1983) (sending application information and an offer of admission into Massachusetts satisfied the "transacting any business" requirement), or the facts of *Bond Leather Co. v. QT Shoe Mfg. Co.*, 764 F.2d 928, 932-33 (1st Cir. 1985) (executing a guaranty in favor of a Massachusetts corporation, mailing four letters into Massachusetts, and receiving at least one telephone call from Massachusetts satisfied transacting any business test), or the facts of *L & P Converters, Inc.*, 634 F. Supp. at 366 ("do[ing] nothing to participate in Massachusetts economy beyond placing phone orders from New York" satisfied "transacting any business" requirement)., or the facts of *Yankee Group, Inc.*

v. *Yamashita*, 678 F. Supp. 20, 21 (D. Mass. 1988) (defendant "traveled to Massachusetts two or three times a year for several years" to meet with plaintiff's representatives and "also made phone calls to Massachusetts").

**B.     Mills Transacted Business In Massachusetts.**

Mills "was in the direct chain of command managing and controlling software sales and commissions decisions for IBM, including those complained of by Mr. Cashman in this action." First Amended Complaint, ¶8.  Mills is the Senior Vice President and Group Executive, IBM Software.  *See* Cross Affidavit, ¶3 and Exhibit A.  Mills has acknowledged under oath in a separate matter that he had the responsibility for approving the budget for the IBM Software Group, including the Tivoli Division Unit and Lotus.  *See* Cross Affidavit, ¶10 and Exhibit E. Further, Mills acknowledged that he approved the structure of the 2001 Software Group sales plan, at issue here.  *See id.*  at ¶¶7, 9 and Exhibit E.  In addition, Mills acknowledged that he used OMsys forecast reports prepared by sales people in the field, to "understand what the field is working on" and to revise, on a monthly basis, sales forecasts previously developed and approved by him.  *See id.* at ¶8 and Exhibit E.   In his First Amended Complaint, Cashman also alleged that, "[u]pon information and belief, Mr. Mills travels regularly to IBM's offices in Massachusetts, to carry out his duties regarding IBM software." *Id.*

Furthermore, Mills directed at least one email, entitled "IBM Confidential:  Key Messages For Our Sales Teams," to the IBM sales managers reporting to him, including at least two located in Cambridge, Massachusetts.   Cashman Affidavit, ¶5 and Exhibit A.  In his email, Mills noted, "we are delivering a sales plan that will provide a big payoff for those who can drive growth.  Paying for growth is the key idea.  Giving people the opportunity for significant financial reward is part of the excitement of winning."  *See id.*  He stated, "management is totally

committed to doing what is required to assist in winning and protect them from distractions. We are their advocates. They must have trust and confidence in us." *See id.* Mills opined, "[h]ow we treat our sales force this year [2001] and their growing commitment to our common goals will be key to driving the growth of IBM software." Mills directed his managers to "[p]lease go out of your way to connect with our field force on this topic." Accordingly, Ill then forwarded Mills' email directly to Cashman and many others in Massachusetts. *See* Cashman Affidavit, ¶5 and Exhibit A. Mills also sent at least one letter directly to Cashman at his Massachusetts home office, congratulating Cashman on achieving his sales quota and thanking him for his fine work. *See id.* at ¶14 and Exhibit F. Finally, Mills gave a number of Webcasts to the IBM Software Group, to which Cashman was invited and attended. *See* Cashman Affidavit, ¶12 and Exhibit D.

Mills relies principally on *Radionics, Inc. v. Elekta Instrument AB*, Civ. A. No. 93-10014-Z, 1994 WL 175028 (D. Mass. April 26, 1994) for the proposition that he did not transact business in Massachusetts. The case is inapposite. In *Radionics*, the defendant, Elekta AB, moved to dismiss the patent infringement case against it for lack of personal jurisdiction. The plaintiff, Radionics, Inc., maintained that personal jurisdiction over the defendant parent company was proper on that basis alone. The defendant parent company's contacts with Massachusetts were attenuated at best. Granting the parent company's motion to dismiss for lack of personal jurisdiction, the Court found that plaintiff failed to show a connection between the Elekta AB and the infringement action.

Here, Mills' clear connection to the 2001 Software Group sales plan, his Webcasts attended by Massachusetts employees, including Cashman, and his correspondence with sales managers in Massachusetts regarding the "Key Messages for Our Sales Teams" goes well

beyond the isolated contact in *Radionics*.[1]  Indeed, as with Ill, the facts of Cashman's case

against Mills support jurisdiction more strongly than did the facts of *Hahn*, 698 F.2d at 50, *Bond*

*Leather Co.*, 764 F.2d at 932-933, *L & P Converters, Inc.*, 634 F. Supp. at 366, or *Yankee Group,*

*Inc.*, 678 F. Supp. at 21.

      **C.**     **Joyce Transacted Business In Massachusetts.**

In his First Amended Complaint, Cashman alleges that Joyce "was responsible for all

financial and business development activities of IBM, including those taking place in

Massachusetts and including compensation of its employees.  First Amended Complaint, ¶9.

Since 1999, Joyce has been Senior Vice President and Group Executive of IBM Global Services

(IGS).  *See* Cross Affidavit, ¶4 and Exhibit B.  Among other things, Joyce is responsible for

delivering quarterly financial reports to analysts.  *See id.* at ¶5.  Upon information and belief, the

forecasting information provided by Cashman and his team through OMsys to Ill and Mills

ultimately became part of Joyce's quarterly reports.  *Radionics, supra*, is equally unavailing for

Joyce.  *See* discussion, Part I.B, supra.  The clear connection between the forecasting information

provided by Cashman and others and the quarterly reports generated by Joyce is clearly

sufficient to support a finding of personal jurisdiction.

**II.**    **The Massachusetts Wage Act, G.L. c. 149, §148 Inherently Contemplates Personal**
      **Jurisdiction.**

Mills, Joyce and Ill fundamentally misperceive the claim on which they are answerable in

this lawsuit, which has jurisdictional bearing.  Although they perfunctorily state, "Plaintiff has

alleged breach of contract and therefore should be aware of the defendants' contacts on which he

---

[1] The focus of the inquiry is the quality, not just the quantity, of the defendant's contacts with the forum.  *See, e.g.,* *Phillips Exeter Academy*, 196 F.3d at 288  ("The accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum."); *Pritzker* v. *Yari*, 42 F.3d 53, 61 (1st Cir. 1994) ("'Minimum contacts' is not necessarily a numbers game; a single contract can fill the bill."), *cert. denied*, 514 U.S. 1108 (1995).

bases his claim of jurisdiction," Defendants' Memorandum at 10, Cashman makes no such allegation.  In fact, the only claim naming the defendants (Count V of the First Amended Complaint [Docket No. 4]) is based upon the Wage Act, G.L. c. 149, §§148, 148A and 150, a claim for which jurisdictional discovery is fair and proper.

The Wage Act specifically provides that "the president and treasurer of a corporation and any officers and agents having the management of such corporation *shall be deemed to be the employers of the employees of the corporation within the meaning of this section*."  G.L. c. 149, §148 (emphasis added).  This provision unquestionably makes the defendants liable for nonpayment of Cashman's wages and commissions to the same extent as IBM itself.  *Nahigian v. Leonard*, 233 F.Supp.2d 151, 160-61 (D. Mass. 2002) (concluding that corporate officers are subject to civil suit for corporate violations of Wage Act); *York v. On-Site Communications*, 2000 WL 1511405, *3 (Mass.Super.2000), (employee could sue a company officer civilly for company's violations of Wage Act); *see also Dunfey v. Primetech Prof'l Servs., Inc.*, 2002 WL 388196, *2-3 (Mass. Super. 2002) (allowing employee to sue corporate officers under Wage Act).  Indeed, the Wage Act conclusively answers the jurisdictional question, since there can be no doubt that employing Massachusetts residents in Massachusetts constitutes transacting business for purposes of the Long Arm Statute.  *See* G.L. c. 223A, §3(a).

The defendants had more than fair warning that they could be held personally liable for Wage Act violations, rendering the claims against them justiciable by this Court.  *See Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) ("The [personal jurisdiction] requirement of fair notice ... includes fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign.") (Stevens, J., concurring in the judgment); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 523 (9th Cir. 1989) (state RICO statute providing for personal liability of

corporate officers put officers on notice that corporation's transaction of business in state gave rise to jurisdiction over them). In short, deliberate, non-fortuitous contacts "such that 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise,'" are clearly sufficient to establish jurisdiction. *See Tatro*, 416 Mass. at 767; *Good Hope Indus.*, 378 Mass. at 9-11. The Wage Act makes the defendants "employers" of all of IBM's Massachusetts employees, puts them on notice that they may be haled into a Massachusetts court, and renders them amenable to suit by any Massachusetts employee under the Wage Act. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (personal jurisdiction requires that defendant could reasonably expect to be haled into forum state's courts); *Transportation Communic. Int'l Union v. Sultran Ltd.*, 187 F.Supp.2d 880, 886-87 (E.D. Mich. 2002) ("Michigan and the United States have a strong interest in seeing that its citizens are fairly compensated by their employer...."); *Garcia v. Vasquez*, 524 F. Supp. 40, 42 (S.D. Tex. 1981) (an employer may be sued for employment practices in the forum in which the employees are recruited and work).

### III.   Cashman's Injuries "Arise From" The Defendants' Contacts With Massachusetts.

Under the Massachusetts long-arm statute, "the 'arising from' language is to be generously construed in favor of asserting personal jurisdiction." *JMTR Enterprises*, 42 F. Supp.2d at 96. The Massachusetts Supreme Judicial Court has adopted a "but for" causation test for the "arising from" prong of the analysis under the long-arm statute. Under this test, "a claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." *Tatro*, 416 Mass. at 771. The Court has rejected a more restrictive "proximate cause" test. *Id.* at 771; *see Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 713 (1st Cir. 1996), *cert. denied*, 520 U.S.

1155 (1997)(" *Tatro* is controlling insofar as it deals with the construction of the Massachusetts long-arm statute . . . .").

Here, there can be no doubt that Cashman's claims arise out of the defendants' respective transactions of business within the Commonwealth. The defendants' liability under the Wage Act is precisely attributable to their positions in the corporation, making the totality of their contacts with Massachusetts a subject of relevant inquiry. Defendants' assertion to the contrary notwithstanding, that inquiry is *not* limited to their specific contact with Cashman or his compensation. *Yankee Group, Inc.*, 678 F.Supp. at 22 (jurisdiction over nonresident corporate officer may be established by examination of personal and professional contacts with the forum). Indeed, the fact that the defendants are charged with violating a remedial statutory scheme that provides for personal liability militates strongly in favor of this Court exercising jurisdiction over them. *See Lautman v. Loewen Group, Inc.*, 2000 WL 772818, at *5 (E.D. Pa. June 15, 2000); *Huth v. Hillsboro Ins. Mgmt.*, 72 F.Supp.2d 506, 511 (E.D.Pa. 1999) (the business contacts of a corporate officer could be considered for jurisdictional purposes because the statute the plaintiff was suing under allowed the corporate officer to be held personally liable for statutory violations). In such cases, courts have held that the individual's "contacts with the forum stemming from corporate actions should be considered when evaluating whether the officer, as an individual, has minimum contacts with the forum which would support the assertion of personal jurisdiction." *National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F. Supp. 1186, 1191 (W.D. Pa. 1992) (citing *Davis v. Metro Productions, Inc.*, 885 F.2d. 515 (9th Cir. 1989) and *Retail Sofware Services, Inc. v. Lashlee*, 854 F.2d 18 (2nd Cir. 1988).[2]

---

[2] In these circumstances, Cashman's request for discovery respecting personal jurisdiction is entirely proper and warranted. Accordingly, Cashman respectfully requests leave to supplement this Opposition following receipt of jurisdictional discovery from Mills, Joyce and Ill.

In support of their arguments that Cashman's claims do not "arise from" their respective contacts with Massachusetts, Mills and Joyce argue that there is no allegation that they did anything respecting the commissions decisions at issue while in Massachusetts. *See* Defendants' Memorandum at 5 and Declarations of Mills and Joyce.[3]   For Mills, this claim is belied by his admitted final authority with respect to sales plans for the Software Group, *see* Cross Affidavit, ¶¶7,9, 10 and Exhibit E, and the email he sent out to "motivate" the sales force, including Cashman.  *See* Cashman Affidavit, ¶5 and Exhibit A.  Similarly, for Joyce, his numerous Quarterly Webcast reports to investors and employees, including many in Massachusetts, demonstrate that Cashman's claims "arise from" his contacts with Massachusetts.  *See* Cross Affidavit, ¶5 and Exhibit C.  Likewise, for Ill, his contacts respecting Cashman's Open Door grievance alone easily demonstrates that Cashman's claims "arise from" Ill's contacts with Massachusetts.  *See* Cashman Affidavit, ¶¶16-17.   None of the defendants explain how, in light of *Tatro*, the claims against them do not "lie in the wake of" their extensive Massachusetts contacts with Cashman and other Massachusetts employees of IBM.[4]

## IV.    Exercise of Jurisdiction Over Defendants Is Consistent With Due Process.

In assessing whether exercise of personal jurisdiction over an out-of-state defendant is constitutional, courts in this circuit employ a three-part test.

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum.  Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws.  Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of

---

[3] Joyce further asserts that there is no claim that he did anything relating to Plaintiff's 2001 commissions. Defendants' Memorandum at 5.
[4] The question is whether there is a "but for" relationship between the defendants' respective contacts with Massachusetts and Cashman's claims against each of them.  The facts and the applicable law clearly show that there is such a relationship.

jurisdiction.

*Phillips Exeter Academy* v. *Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999).  On

each score, the defendants' respective contacts with Massachusetts suffice.

### A.    Cashman's Claims Relate To or Arise Out Of The Defendants' Respective Contacts with Massachusetts.

The relatedness prong of the requisite constitutional analysis borrows from the traditional

tort notions of causation.  While state courts in Massachusetts apply a "but for" causation

analysis to assess whether a defendants' contacts are sufficiently related to the causes of action

alleged, the First Circuit favors a more restrictive "proximate cause" standard in most

circumstances.  However, the First Circuit has emphasized that proximate cause analysis will be

loosened in instances where "a resident is harmed while engaged in activities integral to the

relationship the corporation sought to establish, we think the nexus between the contacts and the

cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness

stage." *Nowak*, 94 F.3d at 715-716.  While the First Circuit in *Nowak* court specifically

reviewed the contacts of a corporation, it indicated that this loosening was available "in other

kinds of fact patterns." *Id.* at 716.  The situation presented by this case warrants the same

broadened approach.

The Court in *Nowak* rejected the necessity of showing "proximate cause" in the case

before it, finding instead that a "meaningful link between [defendant's] contact and the harm

suffered" was enough to support jurisdiction. *Id.* at 716.[5]  The Court noted,

> [w]e are persuaded that strict adherence to a proximate cause standard in all
> circumstances is unnecessarily restrictive.  The concept of proximate cause is
> critically important in the tort context because it defines the scope of a
> defendant's liability.  In contrast, the first prong of the jurisdictional tripartite test

---

[5] *Nowak*'s discussion of the "relatedness" inquiry was circulated to the active judges of the First Circuit before it was issued, indicating that it may have been viewed as a modification of the legal standard set forth in prior decisions. *See Nowak*, 94 F.3d at 711 n.1.

is not as rigid: it is, "relatively speaking, . . . a 'flexible, relaxed standard.' " *Sawtelle*, 70 F.3d at 1389 (citation omitted). We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.

*Nowak*, 94 F.3d at 715. Such a "meaningful link" exists in this case for the same reasons that Cashman's claims "arise from" the defendants' respective Massachusetts contacts, as discussed above. *See supra* Part III. In the case of Ill, he had a direct supervisory role over Cashman's performance and sales, as is demonstrated by his signature on Cashman's PBC for 2001, which provided Cashman with a review of his 2001 performance and related directly to a component of Cashman's 2001 compensation. *See* Cashman Affidavit, ¶13 and Exhibit E. In addition, Ill wrote an email to all sales staff of the Software Group at the outset of 2001, approximately 20 of whom were located in Massachusetts, including Cashman. This email not only attached words of inspiration from Mills to his sales force, but also included his own pep talk encouraging sales in 2001 and promising certain rewards. *See* Cashman Affidavit, ¶5 and Exhibit A. Ill also directed and received communications from Cashman regarding his request for an internal "Open Door" appeal IBM's failure to pay Cashman his 2001 compensation. *See id.* at ¶¶16, 17 and Exhibit G.

Likewise, Mills admittedly had integral involvement with the creation of sales forecasts for the Software Group of IBM using information he received from fields sales managers, including Cashman. Mills also annually reviewed and approved the Sales Plan for 2001, which included a budget for commissions. *See* Cross Affidavit, ¶¶7-10 and Exhibit D. Mr. Cashman received, in Massachusetts, his personalized sales plan information from Mills' staff over the IBM intranet. *See* Cashman Affidavit, ¶15. Mills also sent an email directed to management in his Software Group (including staff in Massachusetts), discussing the 2001 plan year and

attempting to motivate his sales force.  He invited his managers to "[p]lease go out of your way to connect with *our field force* on this topic."  *See* Cashman Affidavit ¶5 and <u>Exhibit A</u> (emphasis added).  In addition, Cashman created weekly sales forecasts that he sent from his Massachusetts office to his supervisors in the Software Group, precisely because they were needed by Ill and Mills and eventually Joyce, to assess and project Tivoli's financial contribution to IBM.  These were precisely the type of reports that Mills described in his deposition as being used to "monitor the field" and revise sales forecasts. *See* Cross Affidavit, ¶8 and <u>Exhibit D</u>.

Judge Lasker was presented with very similar circumstances in *Barthel v. One Community, Inc.*, 233 F. Supp.2d 125 (D. Mass. 2002), and found jurisdiction existed in Massachusetts over both a CEO and CFO of an out-of-state corporation.  In *Barthel*, as here, the plaintiff sued his former employer and its officers, alleging that defendants violated the Massachusetts Wage Act by failing to pay him earned monies in the form of due and payable commissions. In concluding that the "relatedness" test was satisfied, the Court noted that "defendants' role in the operations at [defendant corporation] satisfy the 'but for' analysis: the alleged decision by defendants to deny [plaintiff] wages was 'made possible by, or lies in the wake of' the transaction of business in the forum state." *Id.* at 127.  The *Barthel* Court concluded, "defendants have enjoyed at least minimum contacts with Massachusetts through their visits and communications, and that these contacts satisfy due process requirements." *Id.*

Similarly, here, the defendants' respective roles in the operations at IBM satisfy the "but for" analysis:  the determination to deny Cashman his commissions due, owing and payable was made possible by, or lies in the wake of, the defendants' transaction of business in Massachusetts. *See id.* at 127.  IBM has at least seven offices in Massachusetts, including Lotus in Cambridge, Massachusetts.  Lotus reports directly to Mills. *See* Cross Affidavit, ¶10.  Joyce

regularly reported on Lotus' and Tivoli's financial position as part of his quarterly public webcasts regarding IBM.  *See* Cross Affidavit, ¶5 and <u>Exhibit C</u>.  As in *Barthel*, the defendants have at least minimum contacts, as explicitly described above, and these contacts satisfy due process prerequisites, especially in light of the legislature's expressed intention in the Wage Act to hold individual officers accountable for failure to pay their employees, while garnering the full benefit of having Massachusetts employees working for their benefit.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 61 (1st Cir. 2002) ("parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequence of their activities")(citations omitted).

Massachusetts has indicated a very strong interest in protecting its employees from the failure to pay wages earned and owing to its residents.  *See* G.L. c. 149, §§148, 148A and 150.  IBM and Ill, Mills and Joyce have statutory responsibility for the payment of Cashman's wages and have enjoyed the benefits of the substantial business IBM conducts in this Commonwealth, through its officers and employees here.  In these circumstances, to employ a strict proximate cause standard would be tantamount to voiding the individual liability portion of the Wage Act for officers of foreign corporations – a harsh result given the reality of national commerce in this electronic age. *Lashlee,* 854 F. 2d at 24 ("the limits of the due process clause will not be offended by effectuating the statutorily expressed intent of the New York legislature [to reach nonresident corporate officers and directors]"); *see generally* Cashman Affidavit, ¶18 and <u>Exhibits H, I and J</u>.

**B.**    **Mills, Joyce And Ill Purposely Availed Themselves Of The Privilege Of Conducting Business In Massachusetts.**

The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state, but rather guarantees that the exercise of jurisdiction is 'fair, just, or reasonable.' The Defendants' contacts with the forum state must be voluntary – that is, not based on the unilateral actions of another party or a third person. In addition, the Defendants' contacts with the forum state must be such that he should reasonably anticipate being haled into court there.

*Nowak*, 94 F.3d at 716 (citations omitted).    Mills, Joyce and Ill all have sufficient voluntary contacts with Massachusetts to reasonably anticipate being haled into court here. For example, both Mills and Joyce have given numerous Webcasts that Massachusetts IBM employees, including Cashman, were invited to attend and did attend. *See, e.g.*, Cashman Affidavit, ¶12 and Exhibit D; *See* Cross Affidavit, ¶5 and Exhibit C. Ill has also acknowledged contact in Massachusetts, with Cashman specifically. *See* Declaration of Charles Ill, ¶8. Moreover, given the "on-demand" environment touted by IBM as a hallmark of its business, it is hard to imagine that the Defendants' respective contacts with Massachusetts would not be sufficient to satisfy the purposeful availment test. *Daynard,* 290 F.3d at 62 ("[e]ven in cases where the defendant was not physically present in the forum, where the defendant initiated the transaction by mailing or calling the plaintiff in the forum and when the defendant contemplated that the plaintiff would render services in the forum . . . many courts have found jurisdiction"); *see generally* Cashman Affidavit, ¶18 and Exhibit J (touting global, "on demand" environment). Indeed, the defendants, officers and controlling persons of IBM, a sophisticated, global company, cannot credibly argue that they were unaware of the laws of Massachusetts and did not expect to be held accountable for failing to fulfill the promises made to Cashman by IBM, Ill, Mills and Joyce by failing to pay Cashman for his 2001 sales. *Lashlee,* 854 F.2d at 23.

**C.      Exercise of Jurisdiction Over Defendants Is Reasonable In Light Of the "Gestalt" Factors.**

The final prong of the First Circuit's test for personal jurisdiction requires that the Court

assess the "fairness of subjecting a nonresident to a foreign tribunal." *Nowak*, 94 F.3d at 717.

This part of the test involves examination of five so-called "Gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.*  In this case, as set forth below, three of the Gestalt factors favor jurisdiction (factors 2, 3, and

5), and two are neutral (factors 1 and 4).  Consequently, "the exercise of jurisdiction in

Massachusetts is reasonable and does not offend the notions of fair play and substantial justice."

*Id.* at 719.

As to the first Gestalt factor, "[i]t is almost always inconvenient and costly for a party to

litigate in a foreign jurisdiction.  Thus for this particular gestalt factor to have any significance in

this case, the moving defendants must demonstrate that 'exercise of jurisdiction in the present

circumstances is onerous in a special, unusual, or other constitutionally significant way.'"

*Nowak*, 94 F.3d at 718.  Mills, Joyce and Ill made no such demonstration.  Moreover, IBM holds

itself out as a global company with an "on demand" environment.  *See* Cashman Affidavit, ¶18.

If anything, this Gestalt factor favors exercise of jurisdiction in Massachusetts.  At worst, it is

neutral.

With respect to the second Gestalt factor-- the forum state's interest in adjudicating the

dispute, "[t]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some

other jurisdiction, but to determine the extent to which the forum *has* an interest." *Foster-Miller*

v. *Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995).  Massachusetts "has an interest

in providing its citizens with a convenient forum in which to assert their claims." *Nowak*, 94 F.3d at 718.  Mills, Joyce and Ill do not suggest otherwise.  Given Massachusetts' interest and the defendants' respective contacts here, this Gestalt factor favors jurisdiction.

Here, the third Gestalt factor—Cashman's choice of forum—also weighs in favor of jurisdiction.  "This Court has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.  *See, e.g., Foster-Miller, Inc.*, 46 F.3d at 151.  "Unquestionably, it would be more convenient for [Cashman] to litigate . . . in [his] home state rather than elsewhere." *Sawtelle*, 70 F.3d at 1395.

The fourth Gestalt factor, the judicial system's interest in obtaining the most effective resolution of the controversy, does not favor any other forum over Massachusetts.   Usually this factor is a wash." *Nowak*, 94 F.3d at 718.  The defendants offer no argument to the contrary.  Since Cashman's cause of action against Mills, Joyce and Ill is a creature of Massachusetts law, Massachusetts courts are in the best position to resolve this controversy.  Therefore, this factor is neutral.

Finally, the fifth Gestalt factor—pertinent policy arguments, favors Massachusetts jurisdiction.  "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 473 (1985).  Defendants failed to articulate any countervailing policy argument.  The fifth Gestalt factor favors exercising jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants Mills, Joyce and Ill's Motion to Dismiss for Lack of Personal Jurisdiction should be denied in its entirety.

Respectfully submitted,

THOMAS CASHMAN

By his attorneys,

/s/Sharon H. Patton
Kathleen E. Cross BBO # 556934
Sharon H. Patton BBO#634780
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
(617) 423-0400

DATED:  April 22, 2005

### Certificate of Service

I, Sharon H. Patton, hereby certify that I have this 22nd day of April 2005 served copies of (1) Plaintiff Thomas Cashman's Memorandum Of Law In Opposition To Defendants Steven A. Mills, John R. Joyce And Charles Ill's Motion To Dismiss For Lack Of Personal Jurisdiction; (2) Affidavit of Thomas Cashman; and (3) Affidavit of Kathleen E. Cross, Esq. by mailing a copy of same, postage prepaid to:

Janine Cone Metcalf, Esq.
Jordana R. Sternberg, Esq.
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

It is my understanding that all other parties will receive service electronically from the Court.

   /s/ Sharon H. Patton
Sharon H. Patton

425990

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS CASHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL BUSINESS | ) | 1:05-cv-10306-RWZ |
| MACHINES CORPORATION, | ) | |
| STEVEN A. MILLS, CHARLES ILL, | ) | |
| JOHN R. JOYCE, and | ) | |
| GREGORY ENRIQUEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Christopher M. Morrison hereby certify that on April 22, 2005, I mailed a copies of *Plaintiff Thomas Cashman's Memorandum in Opposition to Defendants Steven A. Mills, John R. Joyce and Charles Ill's Motion to Dismiss for Lack of Personal Jurisdiction; Affidavit of Thomas Cashman and Affidavit of Katherine E. Cross, Esq.,* by first-class mail, postage prepaid to the following:

Jordana R. Sternberg, Esq.
Jones Day
1420 Peachtree Street, N.E.
Atlanta, GA  30309

Janine Cone Metcalf, Esq.
Jones Day
1420 Peachtree Street, N.E.
Atlanta, GA  30309

All other parties were served electronically on April 22, 2005.

/s/Christopher M. Morrison