UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS CASHMAN,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 05 10306 RWZ |
| INTERNATIONAL BUSINESS MACHINES<br>CORPORATION, STEVEN A. MILLS,<br>CHARLES ILL, JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | |

## MOTION OF DEFENDANTS STEVEN A. MILLS, JOHN R. JOYCE, AND CHARLES ILL FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER

Defendants Steven A. Mills, John R. Joyce, and Charles Ill hereby move this Court for leave to file a reply brief in support of their motion for a protective order. The basis for this motion is as follows:

1.    On April 1, 2005, plaintiff served defendants with discovery requests in which plaintiff sought information that he asserted was necessary for him to respond to the defendants' motion to dismiss for lack of personal jurisdiction. At the same time, plaintiff filed an "emergency" motion in this Court seeking an expedited response date for defendants to return plaintiff's requested discovery.

2.    On April 7, 2005, defendants filed their response to plaintiff's emergency motion. That response included both an opposition to plaintiff's request for discovery on an expedited basis, as well as a motion for a protective order against plaintiff's discovery requests. (*See* Defendants' Memorandum In Support Of Their Motion For Protective Order And Response Of

ATI-2165437v1

Defendants Steven A. Mills, John R. Joyce And Charles Ill To Plaintiff Thomas Cashman's Emergency Motion For Expedited Discovery Respecting Personal Jurisdiction.)

3. On April 11, 2005, the Court denied plaintiff's emergency motion for expedited discovery, but did not rule on the defendants' motion for a protective order.

4. On April 13, 2005, plaintiff filed another emergency motion, this time for reconsideration of the Court's denial of his emergency motion for expedited discovery (an emergency motion to reconsider denial of an emergency motion). Plaintiff's memorandum of law in support of this latest "emergency motion" also was fashioned as a response to the defendants' motion for a protective order. (*See* Plaintiff Thomas Cashman's Memorandum Of Law In Support Of Emergency Motion For Reconsideration Of Motion For Expedited Discovery And Response To Motion For Protective Order Filed By Defendants Mills, Ill, And Joyce.)

5. On April 14, 2005, the Court denied the plaintiff's emergency motion for reconsideration.

6. As of the date of this filing, the Court has not yet ruled on the defendants' motion for a protective order from plaintiff's jurisdictional discovery.

1. Plaintiff's April 13, 2005 response to defendants' motion for a protective order raises arguments that defendants have not had the opportunity to address. For example, plaintiff asserts that the First Circuit has a "preference" for jurisdictional discovery. (Plaintiff's Response at 2.) Defendants wish to file a reply brief to show that this assertion is a mischaracterization of the case law that plaintiff cites in his response. In addition, plaintiff argues that defendants' motion for a protective should be denied because defendants did not confer in good faith prior to filing that motion. In support, plaintiff has filed an affidavit from his counsel, Kathleen E. Cross. Defendants wish to file a reply brief to rebut this accusation, which will include a counter

declaration of their attorney, Heather Stepler, to clarify the details of her conversations with Ms. Cross about which Ms. Cross attests. The Court will only hear one side to this story if it does not allow the reply brief to be filed.

    2.    Defendants' proposed reply brief and supporting declaration of Heather Stepler is attached hereto.

    WHEREFORE, defendants Steven A. Mills, John R. Joyce, and Charles Ill respectfully request that the Court grant this motion to file a reply brief in support of their motion for a protective order.

### Local Rule 7.1(A)(2) Certification

Counsel for Defendants, Heather Stepler, certifies that she conferred with Plaintiff's counsel, Kathleen Cross, on April 29, 2005, regarding the filing of defendants' Motion For Leave To File A Reply Brief In Support Of Their Motion For A Protective Order. Ms. Cross indicated that plaintiff would not assent to the granting of this motion.

ATI-2165437v1

Respectfully submitted,

**STEVEN A. MILLS, JOHN R. JOYCE AND CHARLES ILL**

/s/ Joan Ackerstein
Joan Ackerstein, BBO # 348220
Heather Stepler, BBO # 654269
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
(617) 367-0025

Janine Cone Metcalf (admitted pro hac vice)
Jordana R. Sternberg (admitted pro hac vice)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3053
(404) 521-3939
(404) 581-8330

4

ATI-2165437v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION, STEVEN A. MILLS,<br>CHARLES ILL, JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br>    Defendants. | )<br>)<br>)<br>)   Civil Action No. 05 10306 RWZ<br>)<br>)<br>)   **PROPOSED DECLARATION**<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF HEATHER STEPLER

Heather Stepler, being duly sworn, deposes and says:

1. I am Heather Stepler. I am over 21 years of age and suffer from no disability that would preclude me from giving this Declaration.

2. This Declaration is made for all purposes permitted by law. The facts set forth in this Declaration are made upon my own personal knowledge.

3. I am an attorney admitted to practice law in the Commonwealth of Massachusetts. I am employed by Jackson Lewis LLP, which is serving as local counsel for defendants IBM, Steven A. Mills, Charles Ill, John R. Joyce, and Gregory Enriquez in this matter.

4. On March 9, 2005, defendants Mills, Joyce, and Ill filed a motion to dismiss the plaintiff's complaint for lack of personal jurisdiction.

5. On March 15, 2005, plaintiff filed a motion to extend the deadline for filing an opposition to that motion by an additional 30 days.

ATI-2163568v2

6. Defendants did not hear anything more from plaintiff concerning their motion to dismiss until the afternoon of Friday, April 1, 2005, when plaintiff served defendants Ill, Joyce, and Mills with discovery requests seeking information regarding their contacts with Massachusetts for purposes of responding to their motion to dismiss. At about 4:00 p.m. that same day, defendants received an electronic notice from the Court that plaintiff had filed an "Emergency Motion" seeking expedited discovery on the jurisdictional issues raised by defendants' motion to dismiss.

7. On April 5, 2005, only one full work day after receiving notice of the filing of plaintiff's emergency motion for jurisdictional discovery, defendants received a second electronic notice from this Court in which the Court gave defendants two days -- that is, until April 7, 2005 -- to file any opposition to the plaintiff's emergency motion for jurisdictional discovery.

8. Given the timing of this Court's notification setting the deadline for defendants' response to the plaintiff's emergency motion for expedited discovery, defendants had precious little time in which to (1) review and analyze plaintiff's emergency motion, (2) decide on what their response would be, and (3) confer with plaintiff regarding that response. That is, defendants had only *four* working days after defendants first learned of plaintiff's motion, and only *two* days after the Court's notice of a response deadline, to respond to the emergency motion.

9. After having determined that they would need to file a motion for a protective order in conjunction with their opposition to the plaintiff's emergency motion for expedited discovery, defendants then took the steps necessary to satisfy the good faith conference requirements of Federal Rule of Civil Procedure 26(c) and Local Rule 7.1.

ATI- 2163568v22

10. To this end, on April 7, 2005, I twice telephoned Kathleen E. Cross, Esq. of Hanify & King, P.C., counsel for plaintiff Thomas Cashman, to inform her that, pursuant to the deadline imposed by the Court, defendants would be filing their response to the plaintiff's motion for emergency discovery by the end of that day. I also informed her that, in connection with that response, defendants would be filing a motion for a protective order from the jurisdictional discovery that plaintiff sought in his emergency motion. These phone calls were made on April 7, 2005, the day that defendants' response was due, because defendants had at most four days prior to that to determine what their response to the plaintiff's emergency motion would be. I called Ms. Cross at the first available opportunity after defendants had made the determination that their response would include a motion for a protective order, which, due to the abbreviated time period set forth above, meant the same day that defendants needed to file that motion.

11. During my initial conversation with Ms. Cross, I told her that that the purpose of my call was to satisfy the good faith conference requirements of Local Rule 7.1. In further explanation, I stated that defendants Mills, Joyce, and Ill would be moving for a protective order barring plaintiff's jurisdictional discovery on the grounds that there was no basis for such discovery, the discovery was overly broad, unduly burdensome, and would not lead to the discovery of information sufficient to establish personal jurisdiction over any of the moving defendants.

12. Contrary to Ms. Cross' contentions, I did not start off my conversation with her by commenting that I assumed she would not consent to defendants' motion for a protective order.

13. I did explain to Ms. Cross, however, that I had seen a draft of the motion and the brief, but had not seen the final version which, due to defendants' limited response time, was in the final stages of being prepared.

14. Ms. Cross asked whether the motion was based on confidentiality, and I told her that, to my knowledge, that was not a basis for the motion.

15. Ms. Cross declined to consent to defendants' motion for a protective order.

16. Following that conversation, I received from Ms. Cross the email attached to her affidavit as Exhibit A. After reviewing the email, I again contacted Ms. Cross to respond to her apparent confusion concerning the basis for defendants' motion for a protective order, and to see to what extent, if any, the issues raised by that motion could be resolved without Court involvement.

17. During the second call, I told Ms. Cross that we felt that no jurisdictional discovery would be appropriate as to any of the moving defendants, but defendants were not opposed to discussing the discovery requests with her.

18. Because defendants' position was that no discovery was warranted, it was obvious that an agreement without Court involvement could not be reached with plaintiff, whose position was that at least some jurisdictional discovery was appropriate. Nevertheless, in a good faith effort to seek a compromise on the discovery issue, I did say to Ms. Cross that defendants would be willing to consider more narrowly drawn discovery requests that were reasonable in scope and breadth if plaintiff wanted to make such requests. My intention in making this statement was to indicate that if defendants lost on the first argument for their motion for a protective order concerning whether any jurisdictional discovery should be had in the first place, they would be open to further

ATI- 2163568v24

good faith discussions to resolve the second basis for their motion concerning the relevancy, breadth, and prejudice of the specific discovery requests that plaintiff had served. In that regard, however, we felt it was more appropriate for plaintiff to narrow his own requests than for defendants to rewrite them for him.

19. Ms. Cross' response was that she would "just have to read the motion."

20. Because of the time constraints under which defendants were required to file their response to the plaintiff's emergency motion for expedited discovery, and due to the fact that the first basis for defendants' motion for a protective order could not in any event be resolved without Court intervention, I conveyed my opinion to Ms. Cross that a satisfactory agreement on the second basis for defendants' motion for a protective order could not be reached prior to defendants' filing of the motion.

21. My communications with Ms. Cross on April 7, 2005 were made in good faith and a genuine attempt to resolve this dispute without Court involvement.

Signed under the pains and penalties of perjury this ___ day of April, 2005

_____
Heather Stepler

ATI- 2163568v25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION, STEVEN A. MILLS,<br>CHARLES ILL, JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br>    Defendants. | Civil Action No. 05 10306 RWZ<br><br>**PROPOSED REPLY** |

**REPLY BRIEF OF DEFENDANTS
STEVEN A. MILLS, JOHN R. JOYCE, AND CHARLES ILL
IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

**I. SUMMARY OF ARGUMENT**

The issue for the Court on this motion for a protective order is whether to allow plaintiff to take jurisdictional discovery from defendants Steven A. Mills, John R. Joyce, and Charles Ill, and, if so, what the scope of that discovery should be. The plaintiff's answer to these questions is more notable for what it does *not* say than for what it says.

*First*, plaintiff's response ignores the essential question of whether the plaintiff has demonstrated a reasonable possibility that discovery would uncover facts to support his assertion of personal jurisdiction over defendants. Instead, plaintiff merely contends generally that the First Circuit has permitted jurisdictional discovery in some cases. The point, however, is that where, as here, the plaintiff has not provided any basis for believing that discovery is likely to produce relevant evidence, then the Court should not allow him to conduct a fishing expedition in search of such evidence.

*Second*, plaintiff improperly focuses on irrelevant contacts that defendants allegedly had with Massachusetts relating generally to their positions at IBM instead of specifically to the

ATI-2165391v4

plaintiff's claim in this case for unpaid commissions. Defendants do not dispute that they had contacts with Massachusetts pursuant to their business responsibilities with IBM. There is no need for jurisdictional discovery to establish facts that are not in dispute.

*Third*, plaintiff's good-faith consultation arguments are without merit. Defendants did the best they could under the circumstances of belated discovery requests and a short court deadline to respond. Moreover, the defendants do not believe *any* jurisdictional discovery is appropriate. So they would have filed their motion in any event, even if the plaintiff had agreed to narrow his requests, unless plaintiff would have withdrawn his requests in their entirety.

*Fourth*, the plaintiff responds to the defendants' overbroad and unduly burdensome arguments with ridicule rather than convincing argument. One need only read the discovery in question to see that it is obviously excessive in scope and burden. If plaintiff is entitled to discovery at all, it must be limited to the narrow factual matters that would establish personal jurisdiction over the defendants in this case.[1]

## II. ARGUMENT AND CITATION TO AUTHORITIES

### A. PLAINTIFF'S DISCOVERY REQUESTS ARE NOTHING MORE THAN A FISHING EXPEDITION.

As defendants demonstrated, the law is clear that an out-of-state defendant should not be required to answer to jurisdictional discovery unless the plaintiff can present a reasonable basis for predicting that the discovery is likely to turn up facts that would support jurisdiction in the case. The rationale for the rule is simple: To allow discovery based on merely a whim or a hope that such facts will be uncovered would defeat the purpose of the constitutional and statutory

---

[1] Defendants argued in their response to the plaintiff's emergency motion for expedited discovery that they were prejudiced by the lateness of plaintiff's discovery requests and his attempt to impose an expedited discovery schedule on them. Plaintiff's response to these arguments (*see* Pl. Response at 6-7) is moot because this Court already has denied plaintiff's motion for expedited discovery, as well as his motion for reconsideration of the denial.

protections of the due process clause and the Massachusetts long-arm statute, which is to protect an out-of-state defendant from the burden of litigating in a distant forum where he lacks the requisite minimum contacts.

Plaintiff all but ignores this issue. Instead, he asserts broadly that courts "routinely grant jurisdictional discovery when [a] plaintiff faces a motion to dismiss." (Pl. Response at 5.)[2] None of the cases cited by plaintiff in support of this contention, however, addresses the question *at issue here* of whether jurisdictional discovery should be allowed where the plaintiff is obviously on a fishing expedition. Defendants have not argued that jurisdictional discovery is *per se* inappropriate. Rather, their point is that such discovery is not appropriate *unless* the plaintiff can demonstrate some likelihood that it will produce its intended results. This rule has been universally applied by the federal courts, including the First Circuit.[3]

In all but one of the cases cited by plaintiffs, the propriety of jurisdictional discovery was not even at issue. The reason that it was not at issue was that the plaintiffs had *a demonstrable need* in those cases for the discovery *on a particular question directly relevant to the jurisdictional analysis*. In short, the plaintiffs in those cases had demonstrated, unlike the

---

[2] To the extent that plaintiff is suggesting that the possible dismissal of his complaint somehow alters the rule for when jurisdictional discovery should be allowed, that contention is without merit. The plaintiff *always* is facing the possibility of dismissal as to the moving defendants when the issue of personal jurisdiction is raised. Regardless, the plaintiff has no right to "undertake wholly exploratory operations in the vague hope that something will turn up." *Mack v. The Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

[3] *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001) (a plaintiff who has made out a "colorable" case for jurisdiction may be entitled to jurisdictional discovery, but "that entitlement is not absolute") (internal quotation marks and citation omitted); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 & n. 3 (1st Cir. 1997) (the rule allowing a diligent plaintiff with a colorable claim of jurisdiction to take jurisdictional discovery "has its limitations," for instance, when "the assertion of jurisdiction appears frivolous").

plaintiff here, that they were *not* on a fishing expedition.[4] The one case plaintiff cites that does raise the propriety of jurisdictional discovery -- *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455-56 (3d Cir. 2003) -- actually supports defendants' motion.[5]

In addition, the discovery sought in several of the cases cited by plaintiff concerned information that was peculiarly in the possession of the defendant.[6] Here, the only relevant

---

[4] *See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 47-48 (1st Cir. 1992) (where record obviously was incomplete as to all of the facts relevant to jurisdiction, it would be an abuse of discretion for the trial court to deny plaintiffs the opportunity for discovery before dismissing their complaint for lack of personal jurisdiction); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 680-81 (1st Cir. 1992) (holding that the plaintiff would have been entitled to serve either an interrogatory or request to admit to ask the defendant a question plaintiff regarded as crucial to the jurisdictional analysis and for which only the defendant knew the answer); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002) (court granted limited jurisdictional discovery on a discreet and contested issue relevant to the jurisdictional question and totally within the knowledge of the defendants); *Szafarowicz v. Gotterup*, 68 F. Supp. 2d 38, 42 (D. Mass. 1999) (limited discovery permitted where "gaps in the record [left] open the possibility that a very significant amount of [the defendant's] business, perhaps even a substantial majority, was derived from its marketing activities in the United States"); *see also Perotta v. Summit Home Loans, Inc.*, 2005 WL 352859, No. Civ. A. 03-CV-10756-RG, at *1 n.1 (D. Mass. Feb. 11, 2005) (Ex. "B") (no explanation given for why discovery was granted; court merely notes that it denied the motion to dismiss for lack of personal jurisdiction without prejudice pending the completion of discovery); *Levin v. Harned*, 292 F. Supp. 2d 220, 221 (D. Mass. 2003) (no explanation given for why discovery was granted; court merely notes that it decided the personal jurisdictional issue "[a]fter a hearing, supplemental jurisdictional discovery, and review of the voluminous briefing"); *Bearse v. Main St. Inv.*, 170 F. Supp. 2d 107, 109 (D. Mass. 2001) (no explanation given for why discovery was granted, although court subsequently *denied* plaintiff's motion for supplemental jurisdictional discovery "on the grounds that it was 'highly unlikely that the [discovery sought] would yield any further information on the pertinent issue'").

[5] The Third Circuit held that the district court erred in denying jurisdictional discovery because it focused exclusively on the defendant's web site as being the only potential source of relevant contacts with the state. The district court ignored "other Internet and non-Internet contacts -- indicated in various parts of the record -- which, if explored, might provide the 'something more' needed to bring [defendant] within our jurisdiction." *Id.* at 456. In contrast, the facts that plaintiff says would be uncovered by his discovery would *not* provide the "something more" needed to bring defendants Mills, Joyce, and Ill within this Court's jurisdiction, *and* there is no indication in the record that his discovery would uncover any other facts that *are* relevant to the jurisdictional question.

[6] *See Boit*, *Daynard*, and *Szafaarowicz*, *supra* at n. 4.

information that plaintiff's discovery might uncover is information that plaintiff already should have, namely, communications between defendants and plaintiff concerning plaintiff's contention that he is entitled to unpaid commissions.  Indeed, plaintiff's recently filed affidavit proves this point.  In that affidavit, plaintiff cites to numerous emails, letters, and phone calls that he received or sent from Massachusetts to or from defendants.  (*See* Affidavit of Thomas Cashman, ¶¶ 5, 11, 12, 13, 14, 16, 17.)  None of these emails, letters, or phone calls are relevant to the jurisdictional analysis in this case because they do not relate to the plaintiff's claim for unpaid commissions.  But the fact that plaintiff can attest to personal knowledge of them demonstrates that he also would know about contacts defendants had that *did* relate to plaintiff's claim for unpaid commissions, if such contacts actually existed.

In short, the only circumstance under which jurisdictional discovery would be appropriate is if plaintiff could show a reasonable, non-speculative factual basis for believing that such discovery would uncover contacts by the defendants with Massachusetts that are related to plaintiff's claim in this case for unpaid commissions.  Those circumstances are not present here, and defendants are entitled to a protective order barring plaintiff's discovery requests.[7]

---

[7] Plaintiff again complains that defendants' declarations filed in support of their motion to dismiss are insufficient to establish a lack of contacts with Massachusetts.  (*See* Plaintiff Response at 9, n. 4.)  Plaintiff is referring to the declarations of defendants Joyce and Mills, which state that they did not transact business while in the Commonwealth of Massachusetts directly relating to plaintiff's 2001 commissions.  This statement addressed plaintiff's allegations in the complaint concerning the basis for plaintiff's assertion of jurisdiction over defendants.  Plaintiff alleged that defendant Mills "travel[ed] regularly to IBM's offices in Massachusetts, to carryout his duties regarding IBM software." (First Am. Cmplt., ¶ 8.)  Plaintiff alleged that Joyce "was responsible for all financial and business development activities of IBM, including those taking place in Massachusetts and including compensation of its employees." (*Id.*, ¶ 9.)  The defendants' declarations were submitted to refute those bases alleged in the complaint.  *See Nahigian v. Leonard*, 233 F. Supp. 2d 151, 158 n. 1 (D. Mass. 2002) (plaintiff carries the burden of proving that jurisdiction over the defendants is permitted).  Thus, defendant Mill's declaration established that, while he may have traveled to Massachusetts on business as the complaint alleged, those travels did not involve the transaction of business concerning plaintiffs' 2001

B.  **PLAINTIFF DOES NOT NEED JURISDICTIONAL DISCOVERY TO DETERMINE THE GENERAL BUSINESS CONTACTS THAT DEFENDANTS MAY HAVE WITH MASSACHUSETTS.**

Plaintiff's primary argument, which he presents as an issue under the Massachusetts Wage Act, is that defendants' contacts with Massachusetts that are not related to his claim for unpaid commissions but that arise generally out of their positions at IBM are relevant. (*See* Pl. Response at 1-2, 7-10.) The main problem with this argument for purposes of the question of discovery is that for purposes of the motion to dismiss *the defendants do not dispute that they had such generalized business contacts* with Massachusetts such as sending emails into or receiving emails from the Commonwealth. Defendants' position on the motion to dismiss, which will be explained more fully if this Court permits the defendants to file a reply,[8] is that such *general* business contacts with Massachusetts as high-level executives of IBM that are unrelated to plaintiff's specific claim in this case are not sufficient to establish personal

---

(continued...)
commissions. And defendant Joyce's declaration established that, while he may have been responsible for compensation decisions regarding employees in Massachusetts as the complaint alleged, he did not make those decisions -- let alone any specific decision as to plaintiff's 2001 commissions -- while in Massachusetts. Plaintiff suggests the possibility that these two defendants may have contacted plaintiff, who was in Massachusetts, from locations outside Massachusetts, which contact, plaintiff says, would be sufficient to establish personal jurisdiction. The complaint alleges such contacts only as to defendant Ill, however. Therefore, the declarations of defendants Joyce and Mill did not address the point. In any event, such contacts, even if they were sufficient under the Massachusetts long-arm statute, would not satisfy constitutional due process requirements, as demonstrated in defendants' memorandum in support of their motion to dismiss in the section discussing jurisdiction over defendant Ill. (*See* Def. Mem. In Support of Motion to Dismiss at 8-9 (citing this Court's opinion in *Jana Brands, Inc. v. NexiFm, Inc.*, 2003 WL 164251, *2 (Case No. Civ. A. 01-12320 RWZ) (D. Mass. Jan. 23, 2003)) (Ex. "E" to Def. Mem. In Support of Motion to Dismiss.) Moreover, even if such contacts were sufficient, plaintiff does not need discovery to establish their existence because, as he himself says, these out-of-state contacts (assuming they exist) were "directed *to [him]* in his Dedham office." (Pl. Response at 9, n.4 (emphasis added).) If the contacts were "directed to Mr. Cashman," (*Id.*) he would know about them already.

[8] Defendants intend to seek leave of Court to file a reply brief in support of their motion to dismiss to reply to new arguments made by plaintiff in his response to defendants' motion.

jurisdiction over them, notwithstanding plaintiff's arguments under the Massachusetts Wage Act. Regardless of how the Court resolves the relevancy issue raised by plaintiff's Wage Act arguments on the motion to dismiss, however, the plaintiff does not need discovery to establish a fact that defendants admit (although contend is irrelevant).

C. **DEFENDANTS SATISFIED THE REQUIREMENT THAT THEY CONSULT IN GOOD FAITH WITH THE PLAINTIFF IN AN ATTEMPT TO RESOLVE THIS DISPUTE BEFORE FILING THEIR MOTION FOR A PROTECTIVE ORDER.**

Plaintiff's extensive discussion of defendants' supposed failure to engage in a good faith conference pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 7.1 is much ado about nothing. (*See* Pl. Response at 3-4.) Defendants submit the declaration of Heather Stepler, the attorney who communicated on defendants' behalf with plaintiffs' counsel for purposes of the required good faith conference. (*See* Ex. A, attached.) This declaration demonstrates that the plaintiff's spin on the good faith conversations between the attorneys in question is misleading at best. This is particularly true as to the timing of Ms. Stepler's conversations with opposing counsel, which did occur, as plaintiff says, on the day that the defendants filed their motion for a protective order. What plaintiff does not say, however, is that this Court just *two days* earlier had set that day as the deadline for defendants to respond to the plaintiff's emergency motion for expedited discovery. (*See* Stepler Dec., ¶¶ 4-10.) Therefore, defendants are not to blame for the lateness of their consultation with plaintiff, which was the result of the last-minute nature of the plaintiff's request for jurisdictional discovery and the Court's imposition of a tight deadline for a response.

In any event, the defendants' primary argument here is that no jurisdictional discovery of any kind should be allowed. The defendants therefore satisfied their duty of consulting with opposing counsel by asking if counsel would withdraw all discovery. (*See* Cross Affidavit, ¶¶ 3,

4.) Since the plaintiff would not agree to this, the defendants were entitled to file their motion for a protective order.

**D.     PLAINTIFF'S DISCOVERY REQUESTS ARE UNDULY BROAD AND OVERLY BURDENSOME.**

Finally, the plaintiff's arguments as to the scope and burden of the discovery sought fall completely flat. (*See* Pl. Response at 2-3, 10-12.) To begin with, IBM's global capabilities are not relevant to the discovery plaintiff seeks from these defendants. The defendants are individuals, not IBM. Regardless of whether they are able to obtain assistance, as plaintiff says, from "IBM's nearly 319,000 employees" (Pl. Response at 10),[9] defendants remain personally responsible as the parties subject to the discovery. Thus, defendants will be burdened greatly by this discovery, which no doubt is the actual reason that plaintiff is pressing for it. Indeed, while *plaintiff* does not "seriously credit[]" defendants' claim of burden (*id.*), the courts certainly do: "[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation."[10]

Moreover, the fact that IBM is a large, technologically advanced corporation is not relevant to the appropriateness of plaintiff's discovery. If it were, then a party could get away with seeking almost anything from IBM no matter how irrelevant and unnecessary. In other words, plaintiff's argument would create an exemption from the rules of discovery for any party seeking discovery against IBM solely because of IBM's size and technological capabilities. There is no such exemption in the law. IBM and its employees are entitled to the same protections under the Federal Rules of Civil Procedure as any other party.

---

[9] Plaintiff's assertions regarding the ability of IBM to litigate this matter raises the question why plaintiff felt the need to name these individuals at all. IBM is a party to this action, and is named in the Wage Act count of the complaint, the only count where these defendants are named.

Finally, plaintiff's responses to the specific examples defendants gave to demonstrate the burden and overbreadth of his discovery requests are fatuous. For example, plaintiff says that defendants can easily print out SEC filings from the IBM intranet. The defendants' point, however, was not about the difficulty entailed in finding and producing the SEC filings. Requiring a party to produce reams and reams of paper that have no possible relevance to the issues in the case is overly broad and unduly burdensome. Just coming up with a list of documents signed by Mr. Joyce -- once the CFO of IBM -- that also made their way into Massachusetts is daunting. The point is that SEC filings are not relevant to the jurisdictional question here, yet plaintiff's discovery requests would call for their production. Another example is when plaintiff scoffs at defendants' suggestion that it would be difficult if not impossible to identify the location of the sender or recipient of emails. "Just employ your great information technology expertise, IBM," plaintiff taunts. The point, however, is that while defendants are capable of searching the address and text of emails, a search would not identify all emails to or from Massachusetts because there may be no words identifying the location of the sender or recipient in either the address or text.

A final example that deserves special mention is the plaintiff's repeated assertion that he offered to enter into a confidentiality agreement with defendants. The point of defendants' reference to confidentiality issues, however, was that plaintiff has no right to confidential business information unless it is related to a jurisdictional issue in this case. Where, as here, the information encompassed in plaintiff's overly broad requests is *not* relevant, the entry of a confidentiality order -- the purpose of which would be to protect *relevant* confidential business

---

(continued...)
[10] *Wertheim Schroder & Co., Inc. v Avon Prod., Inc.*, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995) (No. 91 CIV. 2287 (PKL)) (Ex. 2 attached to Defendants' opening memorandum).

information from *public* disclosure -- is simply beside the point.  Moreover, the local rules of this Court do not permit blanket confidentiality orders.  Rather, to file a document under seal, there must be a motion for each document.  L.R. 7.2(e) ("The court will not enter blanket orders that counsel for a party may at any time file material with the clerk, marked confidential, with instructions that the clerk withhold the material from public inspection.  A motion for impoundment must be presented each time a document or group of documents is to be filed.").

### III. CONCLUSION

Plaintiff's response to defendants' motion for a protective order relies on rhetoric, invective, and citation to irrelevant case law, while missing defendants' actual point that plaintiff has failed to demonstrate that he reasonably expects, through the discovery he seeks, to uncover facts that would permit this Court to assert personal jurisdiction over defendants Mills, Joyce, and Ill.  Plaintiff's request for jurisdictional discovery is a fishing expedition and nothing more -- a mere hope, resting on pure speculation and the off-chance that discovery might turn up something in his favor.  The federal courts prohibit discovery in these circumstances, and defendants' motion for a protective order, accordingly, should be granted.

        Respectfully submitted,

        **STEVEN A. MILLS, JOHN R. JOYCE AND CHARLES ILL**

        _____
        Joan Ackerstein, BBO # 348220
        Heather Stepler, BBO # 654269
        JACKSON LEWIS LLP
        75 Park Plaza, 4th Floor
        Boston, Massachusetts  02116
        (617) 367-0025

        Janine Cone Metcalf (admitted pro hac vice)
        Jordana R. Sternberg (admitted pro hac vice)
        JONES DAY
        1420 Peachtree Street, N.E., Suite 800
        Atlanta, Georgia 30309-3053
        (404) 521-3939
        (404) 581-8330

Dated:  April ___, 2005