UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| THOMAS CASHMAN, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, STEVEN A. MILLS, CHARLES ILL, JOHN R. JOYCE, and GREGORY ENRIQUEZ, | ) ) ) ) ) ) ) | 1:05-cv-10306-RWZ |
| Defendants. | ) ) | |

## PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS JOYCE, MILLS AND ILL FOR LEAVE TO FILE A REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

After filing a cursory motion to dismiss, Defendants Joyce, Mills and Ill (the "Individual Defendants") have now petitioned to this Court for leave to file a 20-page reply brief (over twice the length of their original motion) because plaintiff, Thomas Cashman, supposedly raised new arguments in his opposition to the motion to dismiss. This is neither true nor does it justify a second bite at dismissal where the first was inadequate.

In the first instance, there is nothing in Mr. Cashman's opposition that was not entirely available to the Individual Defendants when they filed their motion. The allegations and Count against the Individual Defendants have not changed. Second, Mr. Cashman cites no controlling case law that was decided after their motion was filed. Finally, the documents that Mr. Cashman attaches to his affidavit and those attached to

counsel's affidavit are all documents equally available to IBM through its web, business and litigation files. Because they did not take their motion seriously enough the first time around to be thorough, they cannot claim surprise now.

Respectfully, Mr. Cashman urges this Court to deny the Individual Defendants' motion and strike any reply. To the extent that this Court allows the Individual Defendants to reply, Mr. Cashman requests a surreply not to exceed 10 pages, by which he will address the following points in response to the Individual Defendants' Reply:

The Individual Defendants spend the largest part of their reply brief trying to shoehorn their personal jurisdiction argument using inapposite minimum contacts analysis.

1. <u>Applying Tort-Based Specific Jurisdiction Law to Mr. Cashman's Statutory Claim is Inappropriate</u>. Defendants Ill and Mills have sufficient minimum contacts to satisfy statutory and constitutional analysis with respect to Mr. Cashman's claims without resort to any general contacts with Massachusetts as executives of IBM. As all of the key cases cited by the Individual Defendants in their reply recognize, sufficient contacts must be judged by looking to the specific facts and causes of action of each case. *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corporation,* 960 F.2d 1080, 1088 (1st Cir. 1992) ("[i]n analyzing a defendant's contacts, the decisionmaker's attention must be focused on 'the relationship among the defendant, the forum, and *the litigation*,'" quoting, *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977) (emphasis supplied)); *Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir. 1997) (the court declared "[t]o evaluate meaningfully the third criterion (the relationship between the cause of action and the contacts), we must examine [the plaintiff's] complaint," and went on to evaluate the contacts in light of the claims alleged); *Interface Group-*

*Massachusetts, LLC v. Rosen,* 256 F.Supp.2d 103, 107 n. 3 (D. Mass 2003) ("[t]he First Circuit recognizes that *questions of specific jurisdiction are always tied to the particular claims asserted,"* (emphasis supplied)).

    2.    <u>Assimilating a Contract-Based Analysis is Appropriate.</u>  While Mr. Cashman's claim against the Individual Defendants is statutory, the First Circuit has analyzed jurisdiction in a similar case (for ERISA violations) using contract-based contacts.  *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corporation,* 960 F.2d at 1090; *see also, Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("[I]n contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the element of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach").  Thus, in contract-related actions, the *Nowak* causation analysis is not applicable.  *Id.* ("[b]ecause the elements differ in a tort case, a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus of between the defendant's contacts and the plaintiff's cause of action," citing *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 715-716 (1st Cir. 1996)).

    3.    Here, certainly Mssrs. Mills and Ill had "instrumental" contacts with Mr. Cashman in Massachusetts relating to his SWG Sales Plan, from which Mr. Cashman's commissions were figured.  *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 289.  Mr. Mills managed the Tivoli division by which Mr. Cashman was employed in Massachusetts; he reviewed and approved IBM's Software Group ("SWG") Sales Plan, which dictated the commission compensation for Mr. Cashman as a result of

3

his sales activity from his Massachusetts office and which is at the center of Mr. Cashman's Wage Act claim; Mr. Mills also admittedly solicited financial information from the field sales staff (which included Mr. Cashman in Massachusetts) to create commissions budgeting, a shortfall in which is precisely what Mr. Cashman understands resulted in IBM's failure to pay his commission compensation. Mr. Mills' contacts with Massachusetts are materially related to Mr. Cashman's Wage Act Claim and therefore confer personal jurisdiction.

    4.    Mr. Ill was even closer to Mr. Cashman in terms of supervision and compensatory responsibility. Mr. Ill's oversight of Mr. Cashman's performance in Massachusetts is exemplified by his dialogue with Mr. Cashman and eventual sign-off on Mr. Cashman's annual performance review for 2001 electronically and by telephone while Mr. Cashman was in Massachusetts. Affidavit of Thomas Cashman at ¶ 13. Mr. Ill also directly relayed sales plan information to Mr. Cashman into Massachusetts by email. Furthermore, Mr. Ill's post-termination contacts with Cashman in Massachusetts regarding Mr. Cashman's internal grievance for nonpayment of his commission compensation, which are conceded by this Defendant, are sufficient to confer jurisdiction by themselves. Contrary to the assertion in his reply, Mr. Ill is subject to liability for retaliation against Mr. Cashman for his exercise of the grievance process, which is itself a the Wage Act. Complaint at Count V.

    5.    <u>All Individual Defendants are Subject to Personal Jurisdiction in this Commonwealth Even if *Nowak's* Proximate Cause Requirement Applies.</u> Furthermore, given that this cause of action arises from the Wage Act, which particularly describes individual liability of "the president and treasurer of a corporation and any officers and

4

agents having the management of such corporation *shall be deemed to be the employers of the employees of the corporation within the meaning of this section.*" G.L. c. 149, §148 (emphasis added), the Individual Defendants' contacts with Massachusetts as agents, officers and managers must be considered in the jurisdictional analysis.[1]  To the extent that jurisdictional analysis requires that the Individual Defendants' contacts be the proximate cause of Mr. Cashman's injury, their contacts as officers, managers, and agents are relevant.  Contacts comprising proximate cause are those forming "an 'important, or [at least] material, element of proof' in the plaintiff's case." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996) (quoting, *United Elec. Workers v. 163 Pleasant St., Corp.,* 960 F.2d 1080, 1089 (1st Cir. 1994)).  As the Individual Defendants' status as agents of IBM is essential to liability, their contacts with Massachusetts in this capacity is sufficient to confer constitutionally sanctioned jurisdiction.[2]

6. To this end, in its Answer, IBM admits that Mr. Mills has been the head of IBM's Software Group since July of 2000; that he is responsible for directing the business of SWG and shaping its strategy; he was responsible for reviewing the SWG sales plans

---

[1] The Individual Defendants seem to imply that to consider these contacts makes a premature determination on their liability under the statute.  Reply Brief at 15.  However, as Mr. Cashman's allegations must be credited as true here, this complaint is of no merit. *Massachusetts School of Law at Andover, Inc. v. American Bar Association,* 142 F.3d 26, 34 (1st Cir. 1998) ("[I]n conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim").

[2] The Individual Defendants claim in their reply that Mr. Cashman is arguing that the Wage Act itself confers liability on the individuals.  Reply Brief at 2.  This is not true.  Mr. Cashman merely argues that the elements of a violation under the Wage Act, including the individuals' status and contacts as an agents, officers and managers, inform the nature of the contacts with Massachusetts that which contacts should be considered.

(that included at least Mr. Cashman in Massachusetts) annually; he travels to Massachusetts in the course of his employment with IBM. (IBM Corporation's and Gregory Enriquez' Answer to the First Amended Complaint, at ¶¶ 5, 8). Further, in Mr. Mills' deposition in another related matter, he admits that he manages the Lotus Division (as well as Tivoli, which includes Mr. Cashman in Massachusetts) of the SWG as a function of his position, which is located in Cambridge Massachusetts. Mr. Mills stated that he monitors its performance of Lotus, which requires that Lotus report directly to him. Deposition of Stephen Mills at pp. 87-96, Exhibit E, Affidavit of Kathleen E. Cross, Esq.; Affidavit of Thomas Cashman at ¶¶ 5, 8 (both submitted with Mr. Cashman's Opposition to Motion to Dismiss).[3] He also regularly communicated with his sales staff (including Mr. Cashman in Massachusetts) via webcasts on IBM's intranet. Cashman Affidavit at ¶ 2. As to Mr. Joyce, IBM admits in its Answer that he was responsible for all financial activities of IBM during the relevant time period; it further admits that it has offices in at least seven cities and towns in the Commonwealth (including Lotus in Cambridge, see above) (IBM Corporation's and Gregory Enriquez' Answer to the First Amended Complaint, at ¶¶ 6, 9). Finally, Mr. Ill was concededly IBM's Vice President of Americas Software in 2001 and 2002. Mr. Cashman has he has attested to Mr. Ill's many contacts with Massachusetts as a senior manager with respect to Mr. Cashman's employment and, ultimately, IBM's failure to pay Mr. Cashman his 2001 compensation. Affidavit of Thomas Cashman at ¶¶ 5, 9-11, 13, 15; First Amended Complaint at ¶¶ 7, 50-

---

[3] Mr. Cashman served jurisdictional discovery upon the Individual Defendants on April 1, 2005. While Mr. Cashman was denied expedited response, the Individual Defendants served no response except objections after the full 30 days for response had passed. Mr. Cashman is sure, if given appropriate responses to his jurisdictional discovery, that general jurisdiction will be established as to all three defendants in much greater detail.

53. Thus, all Individual Defendants have exercised constitutionally sufficient contact with Massachusetts in their respective capacities.

    7.    <u>Personal Jurisdiction over the Individuals is Entirely Foreseeable</u>.  As the touchstone of constitutional Due Process with respect to personal jurisdiction is foreseeability, *Nowak*, 94 F.3d at 715, jurisdiction over all three defendants passes constitutional muster handily.  Certainly, the Individual Defendants, as business executives with responsibility for hundreds of Massachusetts' employees; and in the case of Mssrs. Mills and Ill, given their input into sales compensation plans, commissions and other pay incentives; and with respect to Mr. Joyce, given his ultimate responsibility for the financial decisionmaking of the corporate defendant that has at least seven offices in Massachusetts, each should have been aware of liability under the Wage Act, which has been the law of Massachusetts in its present form since the early 1900's.  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 523 (9th Cir. 1989) (state RICO statute providing for personal liability of corporate officers put officers on notice that corporation's transaction of business in state gave rise to jurisdiction over them).  Asking the Individual Defendants to answer in this forum for the failure to pay Mr. Cashman his wages for 2001 is both justifiable and just.

    8.    <u>Minimum Contacts Are Supplied By Exercise of General Jurisdiction</u>.  The doctrine of general jurisdiction supplies this Court with more than ample reason to take jurisdiction over these defendants and the Wage Act Claim.  Contrary to their reply, the business contacts of all three defendants are significant as a basis for personal jurisdiction. With IBM's offices in seven Massachusetts cities and towns, not the least of which is Lotus in Cambridge (which reports directly to Defendant Mills), the individual Defendants

cannot seriously contest that they have had minimum contact with Massachusetts. *Donatelli v. National Hockey League,* 893 F.2d 459, 462-463 (1st Cir. 1990) (discussing whether general jurisdiction was appropriate over unincorporated association); *United Elec. Workers v. 163 Pleasant St., Corp.,* 960 F.2d 1080, 1088 (1st Cir. 1994) ("[I]n analyzing minimum contacts, we have recognized two types of personal jurisdiction: general and specific . . .General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state"); *Massachusetts School of Law at Andover, Inc. v. American Bar Association,* 142 F.3d 26, 34 (1st Cir. 1998) (in analyzing the court's personal jurisdiction over eight individual defendants, the court declared, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction"); *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 286 (1st Cir. 1999) ("a defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's court in respect to all matters, even those that are unrelated to the defendant's contacts with the forum").  For at least the contacts described *infra* at paragraph 7 (and any further discovery that this Court should allow), general jurisdiction plainly establishes minimum contacts in all three cases.

Conclusion

The Plaintiff respectfully requests that this court deny the Motion of Defendants Steven A. Mills, John R. Joyce, and Charles Ill for Leave to File Reply Brief in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction. In the alternative, Mr. Cashman respectfully requests permission to file a surreply not to exceed 10 pages.

Respectfully submitted,

THOMAS CASHMAN
By his attorneys,

/s/Kathleen E. Cross
Kathleen E. Cross, BBO #556934
Sharon H. Patton, BBO #634780

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108
(617) 423-0400

CERTIFICATE OF SERVICE

I, Kathleen E. Cross, hereby certify that I have this day served a copy of the foregoing Plaintiff's Opposition to Motion of Defendants Joyce, Mills and Ill to File a Reply in Support of Their Motion to Dismiss, electronically to:

Joan Ackerstein, Esq.
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts 02116

And by mailing a copy of same, postage prepaid to:

Janine Cone Metcalf, Esq.
Jordana R. Sternberg, Esq.
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

/s/Kathleen E. Cross
DATED: May 24, 2005           Kathleen E. Cross

430893