UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS CASHMAN,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br>STEVEN A. MILLS, CHARLES ILL,<br>JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    1:05-cv-10306-RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MOTION TO FILE A SURREPLY IN RESPONSE TO MOTION OF DEFENDANTS MILLS, ILL AND JOYCE TO DISMISS

The Plaintiff, Thomas Cashman, respectfully requests that this Court allow him to file a brief surreply in response to the 20-page reply brief, which the Defendants, Mssrs. Mills, Ill and Joyce (the "Individual Defendants"), have asked this Court to consider.  As reasons therefore, Mr. Cashman states:

1.  The Individual Defendants originally filed a motion to dismiss the claim brought by Mr. Cashman against them, which alleges their violations of the Massachusetts Wage Act, G.L. ch. 149, §§ 148, 148A and 150.  Their memorandum in support of their motion consisted of 9 pages.

2.  In response, Mr. Cashman submitted his opposition, which elaborated on his bases for jurisdiction articulated in his First Amended Complaint, including certain documents in his possession.  No document submitted with Mr. Cashman's opposition was not or should not have been equally available to

the Individual Defendants as they consisted of litigation, website and

company communications in which IBM and/or the Individual Defendants

participated.

3.  In response to Mr. Cashman's opposition, the Individual Defendants requested

permission to file a 20-page reply, in which, for the first time, they articulate

their position on personal jurisdiction in any detail.

4.  In fairness to Mr. Cashman, who is supposed to be the respondent in the

context of this motion to dismiss, which may be dispositive, he requests that

he be allowed to address the expansive reply of the Individual Defendants in a

brief surreply (attached as *Exhibit A*) and Affidavit of Kathleen Cross in

Support of Surreply (attaching an exhibit, attached hereto as *Exhibit B*).

<u>Conclusion</u>

For the foregoing reasons, Mr. Cashman respectfully requests that this Court

allow his motion to file the attached Surreply and Affidavit of Kathleen Cross in response

to the Individual Defendants' Reply.

Local Rule 7.1 Certification

Counsel for the plaintiff hereby certifies that they conferred in good faith with

counsel for the Individual Defendants and could not resolve or narrow the issues

presented in this motion.

Respectfully submitted,

THOMAS CASHMAN
By his attorneys,


/s/Kathleen E. Cross _____
Kathleen E. Cross, BBO #556934
Sharon H. Patton, BBO #634780

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400

CERTIFICATE OF SERVICE

I, Kathleen E. Cross, hereby certify that I have this day served a copy of the
foregoing pleading, electronically to:

Joan Ackerstein, Esq.
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts  02116

And by mailing a copy of same, postage prepaid to:

Janine Cone Metcalf, Esq.
Jordana R. Sternberg, Esq.
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

DATED: June 14, 2005

/s/Kathleen E. Cross
Kathleen E. Cross

432238

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br>STEVEN A. MILLS, CHARLES ILL,<br>JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     1:05-cv-10306-RWZ |

## PLAINTIFF'S SURREPLY IN RESPONSE TO MOTION OF DEFENDANTS MILLS, ILL AND JOYCE TO DISMISS

The defendants Mssrs. Mills, Ill and Joyce ("Inidvidual Defendants"), executives

of IBM who admittedly do business in Massachusetts with IBM's seven offices and

thousands of Massachusetts employees, cannot sidestep the inevitability of a Wage Act

claim brought by a Massachusetts IBM employee under their control and supervision by

proffering a self-serving, but completely inappropriate measure of personal jurisdiction.

The narrow, tort-based contacts test argued by the Individual Defendants to defeat

personal jurisdiction is inapposite to this Wage Act Claim, which is best analogized to the

broader breach-of-contract contacts test. When the defendants' contract-based contacts

are analyzed, it is clear that Mr. Mills, who had a hand in the creation and ultimately

approval of both the SWG Sales Plan by which the Plaintiff was paid (which was sent to

him in Massachusetts), and the budget from which the commissions should have been

paid (but were not due to a budget shortfall) by collecting data from the sales force,

including from Mr. Cashman, and rolled out this Plan to Massachusetts employees including Mr. Cashman, is amenable to suit in Massachusetts. Mr. Ill, who was merely one manager away from Plaintiff on the supervisory ladder, had direct dealings in Massachusetts with Mr. Cashman regarding his employment with IBM in 2001, its failure to pay his commissions and his internal grievance filed with IBM.

Once the minimum contacts analysis is broadened, as it should be, to include the Individual Defendants' contacts with Massachusetts as managers, agents, officers (and therefore employers of Plaintiff, as defined by the Wage Act), all Individual Defendants, who admittedly conduct regular business for IBM here, should be answerable to a suit for their actions in precisely that capacity.

Finally, with regard to these same contacts, these defendants, especially Mr. Mills who runs at least two Massachusetts divisions of IBM's Software Group (Lotus and Rational), have such regular contact with Massachusetts in the conduct of their business that assertion of general jurisdiction is entirely appropriate to satisfy the constitutional basis for requiring the Individual Defendants to defend in the Commonwealth.

I.    Applying Tort-Based Specific Jurisdiction Law to Mr. Cashman's Statutory Claim is Inappropriate.

Defendants Ill and Mills have sufficient minimum contacts to satisfy statutory and constitutional analysis with respect to Mr. Cashman's claims without resort to any general contacts with Massachusetts as executives of IBM. As all of the key cases cited by the Individual Defendants in their reply recognize, sufficient contacts must be judged by looking to the specific facts and causes of action of each case. *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corporation,* 960 F.2d 1080, 1088 (1st Cir. 1992) ("[i]n analyzing a defendant's contacts, the decisionmaker's

attention must be focused on 'the relationship among the defendant, the forum, and *the litigation*,'" quoting, *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977) (emphasis supplied));

*Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir. 1997) (the court declared "[t]o evaluate meaningfully the third criterion (the relationship between the cause of action and the contacts), we must examine [the plaintiff's] complaint"); *Interface Group-Massachusetts, LLC v. Rosen,* 256 F.Supp.2d 103, 107 n. 3 (D. Mass. 2003) ("[t]he First Circuit recognizes that *questions of specific jurisdiction are always tied to the particular claims asserted,"* (emphasis supplied)).  When viewed in light of Mr. Cashman's Wage Act claim, the Defendants' contacts with Massachusetts (at least those presently known to Mr. Cashman), easily pass jurisdictional scrutiny.

II.     A Contract-Based Analysis is Best Suited for this Wage Act Claim.

While Mr. Cashman's claim against the Individual Defendants is statutory, the First Circuit has analyzed jurisdiction in a similar case (for ERISA violations) using a contract-based analysis of contacts.  *United Elec. Workers,* 960 F.2d at 1090; *see also, Burger King, Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985) (analyzing jurisdiction for claim of breach of contract, the court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing"); *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("[i]n contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the element of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach"); *see also,  Remick v. Manfredy,* 238 F.3d 248, 256 (3rd Cir. 2001).

Thus, in contract-related actions, the *Nowak* causation analysis, persistently proffered by the Defendants, is not applicable. *Phillips Exeter,* 196 F.3d at 289 ("[b]ecause the elements differ in a tort case, a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus of between the defendant's contacts and the plaintiff's cause of action . . . Thus, the court below appropriately drew a distinction between [Plaintiff's] contract and tort claims," citing *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 715-716 (1st Cir. 1996), *cert. denied,* 520 U.S. 1155 (1997)).

Here, certainly Mssrs. Mills and Ill had "instrumental" contacts in Massachusetts relating to Mr. Cashman's employment relationship with IBM and, most important, his SWG Sales Plan, from which Mr. Cashman's unpaid commissions should have been figured. *Id.* Mr. Mills managed the Tivoli division which employed Mr. Cashman in Massachusetts and reviewed and approved IBM's Software Group ("SWG") Sales Plan, which dictated the commission compensation for Mr. Cashman as a result of his sales activity from his Massachusetts office and which is at the center of Mr. Cashman's Wage Act claim. Mr. Mills also admittedly solicited financial information from the field sales staff (which included Mr. Cashman in Massachusetts) to create commissions budgeting, a shortfall in which is precisely what Mr. Cashman understands resulted in IBM's failure to pay his commission compensation. Mr. Mills' contacts with Massachusetts are materially related to Mr. Cashman's Wage Act Claim and therefore confer personal jurisdiction.

Mr. Ill's contact with Mr. Cashman in Massachusetts was even more direct in terms of supervision and compensatory responsibility. Mr. Ill's oversight of Mr.

Cashman's performance in Massachusetts is exemplified by his dialogue with Mr.

Cashman and eventual sign-off on Mr. Cashman's annual performance review for 2001

electronically and by telephone with Mr. Cashman was in Massachusetts.  Affidavit of

Thomas Cashman ("Cashman Aff.") at ¶ 13.   Mr. Ill also directly relayed sales plan

information to Mr. Cashman into Massachusetts by email.  Furthermore, Mr. Ill's post-

termination contacts with Mr. Cashman in Massachusetts regarding Mr. Cashman's

internal grievance for nonpayment of his commission compensation, which are conceded

by this Defendant, are sufficient to confer jurisdiction by themselves.  Contrary to the

assertion in his reply, Mr. Ill is subject to liability for retaliation against Mr. Cashman for

his exercise of the grievance process, which is itself a violation of the Wage Act.  *See*

Complaint, Count V.

> III.    All Individual Defendants are Subject to Personal Jurisdiction in this
>         Commonwealth Even if *Nowak's*  Proximate Cause Requirement Applies.

Furthermore, given that the cause of action against the Individual Defendants

arises from the Wage Act, which particularly describes individual liability of  "the

president and treasurer of a corporation and any officers and agents having the

management of such corporation *shall be deemed to be the employers of the employees of*

*the corporation within the meaning of this section*," G.L. c. 149, §148 (emphasis added),

the Individual Defendants' contacts with Massachusetts as agents, officers and managers

must be considered in the jurisdictional analysis.[1]  To the extent that jurisdictional

---

[1]  The Individual Defendants imply that to consider these contacts makes a premature
determination on their liability under the statute.  Reply Brief at 15.  However, as Mr. Cashman's
allegations must be credited as true here, this complaint is of no merit.  *Massachusetts School of
Law at Andover, Inc. v. American Bar Association,* 142 F.3d 26, 34 (1st Cir. 1998) ("[i]n
conducting the requisite analysis under the prima facie standard, we take specific facts
affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the
light most congenial to the plaintiff's jurisdictional claim").

analysis requires that the Individual Defendants' contacts be the proximate cause of Mr.

Cashman's injury or that they simply be "instrumental to" his claim as required in a

contract-based case, their contacts as officers, managers, agents and employers are

relevant.  Contacts comprising proximate cause are those forming "an 'important, or [at

least] material, element of proof' in the plaintiff's case." *Nowak*, 94 F.3d at 715 (quoting,

*United Elec. Workers,* 960 F.2d at 1089.  As the Individual Defendants' status as

managers of IBM (thus Mr. Cashman's employer) is essential to liability, their contacts

with Massachusetts in this capacity must also be considered in the jurisdictional

analysis.[2]

To this end, in its Answer, IBM admits that Mr. Mills has been the head of IBM's

Software Group since July of 2000; that he is responsible for directing the business of

SWG and shaping its strategy; he was responsible for reviewing the SWG sales plans

(that included at least Mr. Cashman in Massachusetts) annually and he travels to

Massachusetts in the course of his employment with IBM.  (IBM Corporation's and

Gregory Enriquez' Answer to the First Amended Complaint, at ¶¶ 5, 8).   Further, in Mr.

Mills' deposition in another related matter, he admits that he manages the Massachusetts-

based Lotus Division (as well as Tivoli, which includes Mr. Cashman in Massachusetts)

of the SWG as a function of his position.  Mr. Mills stated that he monitors the

performance of Lotus, which requires that Lotus report directly to him.  Deposition of

Stephen Mills at pp. 87-96, <u>Exhibit E</u>, Affidavit of Kathleen E. Cross, Esq.; Cashman

---

[2]  The Individual Defendants claim in their reply that Mr. Cashman is arguing that the Wage Act
itself confers liability on the individuals.  Reply Brief at 2.  This is not true.  Mr. Cashman merely
argues that the elements of a violation under the Wage Act, including the individuals' status and
contacts as an agents, officers and managers, inform the nature of the contacts with Massachusetts
that should be considered.

Aff. at ¶¶ 5, 8 (both submitted with Mr. Cashman's Opposition to Motion to Dismiss; see also, Response of Defendants Steven A. Mills, John R. Joyce, and Charles Ill to Plaintiff's Request for Leave to File Surreply at 3, "[t]hese defendants do not dispute they had business contacts with Massachusetts pursuant to their responsibilities to IBM").[3] He also regularly communicated with his sales staff (including Mr. Cashman in Massachusetts) via webcasts on IBM's intranet. Cashman Aff. at ¶ 2. As to Mr. Joyce, IBM admits in its Answer that he was responsible for all financial activities of IBM during the relevant time period; it further admits that it has offices in at least seven cities and towns in the Commonwealth (including Lotus in Cambridge, see above) (IBM Corporation's and Gregory Enriquez' Answer to the First Amended Complaint, at ¶¶ 6, 9). Finally, Mr. Ill was concededly IBM's Vice President of Americas Software in 2001 and 2002. Mr. Cashman has attested to Mr. Ill's many contacts with Massachusetts as a senior manager with respect to Mr. Cashman's employment and, ultimately, IBM's failure to pay Mr. Cashman his 2001 compensation. Cashman Aff. at ¶¶ 5, 9-11, 13, 15; First Amended Complaint at ¶¶ 7, 50-53. Thus, all Individual Defendants have exercised constitutionally sufficient contact with Massachusetts in their respective capacities as agents of IBM such that requiring each to answer a Wage Act Claim in this Commonwealth is both foreseeable and fair.

---

[3]  Mr. Cashman served jurisdictional discovery upon the Individual Defendants on April 1, 2005. While Mr. Cashman was denied expedited response, the Individual Defendants served no response except objections after the full 30 days for response had passed. Counsel for Mr. Cashman initiated a Rule 7.1 conference and will file his motion to compel answers to this discovery imminently. Mr. Cashman is sure, if given appropriate responses to his jurisdictional discovery, that general jurisdiction will be established as to all three defendants in much greater detail.

IV.    <u>Personal Jurisdiction over the Individuals is Entirely Foreseeable</u>.  As the touchstone of constitutional Due Process with respect to personal jurisdiction is foreseeability, *Nowak*, 94 F.3d at 715, jurisdiction over all three defendants passes constitutional muster handily.  Certainly, the Individual Defendants, as business executives with responsibility for hundreds of Massachusetts' employees should understand that the employment law of the Commonwealth applies to them.  In the case of Mssrs. Mills and Ill, given their input into sales compensation plans, commissions and other pay incentives; and with respect to Mr. Joyce, given his ultimate responsibility for the financial decisionmaking of the corporate defendant that has at least seven offices in Massachusetts, each should have been aware of liability under the Wage Act, which has been the law of Massachusetts in its present form since the early 1900's.  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 523 (9th Cir. 1989) (state RICO statute providing for personal liability of corporate officers put officers on notice that corporation's transaction of business in state gave rise to jurisdiction over them).  Requiring the Individual Defendants to answer in this forum for the failure to pay Mr. Cashman his wages for 2001 is both justifiable and just.

V.    <u>Constitutionality is Further Supplied By Exercise of General Jurisdiction.</u>

To obtain personal jurisdiction over the Individual Defendants, the Massachusetts Long-Arm Statute must be satisfied[4] and separately federal constitutional notions of due process need to be addressed.  *Massachusetts School of Law,* 142 F.3d at 26 ("[e]ven if that [long-arm] statute, correctly applied, would purport to grant jurisdiction over the [individual defendants] – a matter of state law on which we take no view – MSL still

---

[4] The Plaintiff's support for satisfaction of M.G.L. ch. 223A is found in Plaintiff's Opposition to the Individual Defendants' Motion to Dismiss [Docket No. 21] at 3-12.

would have to demonstrate that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'")[5]. Here, should the Court need to go beyond the contacts of each defendant in the context of the Wage Act Claim, it certainly finds support in the Constitutional notion of general jurisdiction[6].

Contrary to their reply, the business contacts of all three defendants are significant as a basis for personal jurisdiction. With IBM's offices in seven Massachusetts cities and towns, not the least of which is Lotus in Cambridge and Rational of Lexington[7] (both of which report directly to Defendant Mills), with which the Individual Defendants admit they do business, the individual Defendants cannot seriously contest that they have had sufficient contact with Massachusetts to satisfy constitutional concerns of foreseability

---

[5] Furthermore, the Supreme Judicial Court has "interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States,'" which the First Circuit has stated allows it to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 52 (1st Cir.), *cert. denied, Scruggs v. Daynard,* 537 U.S. 1029 ( 2002) (quoting, *Automatic Sprinkler Corp. of Am. V. Seneca Foods Corp.,* 361 Mass. 441 (1972)). As such, it may be that a finding of general jurisdiction is enough to satisfy both the statute and the constitutional concerns.

[6] In their Response to Plaintiff's Request for Leave to File Surreply, Individual Defendants contend that general jurisdiction does not apply to individuals. However, the Supreme Court *dicta* cited by the Individual Defendants is not even mildly determinative of their position. *Burnham v. Superior court of California, County of Marin,* 495 U.S. 604 (1990), is a fractional opinion in which there are concurrences in the judgment but four separate opinions. The part containing *dicta* regarding the application of principles of general jurisdiction to individuals is joined by only four of the nine justices and further definitively states, "we express no views on these matters." Furthermore, scores of cases in the First Circuit and elsewhere have considered asserting personal jurisdiction over individuals based on general jurisdiction. *Massachusetts School of Law,* 142 F.3d at 34; *Ness Motley,* 290 F.3d at 35; *United Elec. Workers v. 163 Pleasant St., Corp.,* 960 F.2d 1080, 1088 (1st Cir. 1994); *Donatelli v. National Hockey League,* 893 F.2d 459, 462-463 (1st Cir. 1990); *Wilson v. Belin,* 20 F.3d 644, 649-651 (5th Cir.), *cert. denied,* 513 U.S. 930 (1994); *Lake v. Lake,* 817 F.2d 1416 (9th Cir. 1987); *Remick,* 238 F.3d at 256, to list a few.

[7] See accompanying Affidavit of Kathleen E. Cross in Support of Plaintiff's Surreply, attaching an IBM press release discussing IBM's acquisition of Rational with over 3,400 employees and headquarters in Lexington, Massachusetts and Cupertino, California. The release states, "[w]hen the acquisition closes, Mike Devlin [of Rational] will become the general manager of the new division and will report to Steve Mills."

and reasonableness. *Donatelli v. National Hockey League,* 893 F.2d 459, 462-463 (1st

Cir. 1990) (discussing whether general jurisdiction was appropriate over unincorporated

association); *United Elec. Workers,* 960 F.2d at 1088 ("[i]n analyzing minimum contacts,

we have recognized two types of personal jurisdiction:  general and specific");

*Massachusetts School of Law,* 142 F.3d at 34 (in analyzing the court's personal

jurisdiction over eight individual defendants, the court declared, "[a] district court may

exercise authority over a defendant by virtue of either general or specific jurisdiction");

*Phillips Exeter Academy*, 196 F.3d at 286.  For at least the contacts described *infra* (and

any uncovered through any further discovery that this Court should allow), general

jurisdiction plainly establishes constitutionally sufficient contacts in all three cases.

*FCNB Spiegel Inc. v. Dimmick*, 619 N.Y.S.2d 935, 937 (New York County, Special

Term, Part II, 1995) ("[t]he [individual] defendant's voluntary, continuous self-

benefitting activity in New York makes it fair and reasonable for an out-of-state

defendant to expect to be subject to New York jurisdiction").

<u>Conclusion</u>

For the foregoing reasons and those asserted in his opposition, Mr. Cashman

respectfully requests that this court deny the Individual Defendants' Motion to Dismiss.

Respectfully submitted,

THOMAS CASHMAN
By his attorneys,

_____
Kathleen E. Cross, BBO #556934
Sharon H. Patton, BBO #634780

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400

10

<u>CERTIFICATE OF SERVICE</u>

     I, Kathleen E. Cross, hereby certify that I have this day served a copy of the foregoing Plaintiff's Surreply in Response to Motion of Defendants Mills, Ill and Joyce to Dismiss, electronically to:

Joan Ackerstein, Esq.
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts  02116

And by mailing a copy of same, postage prepaid to:

Janine Cone Metcalf, Esq.
Jordana R. Sternberg, Esq.
Jones Day
1420 Peachtree Street N.E.
Atlanta, GA 30309

DATED: June 14, 2005                   _____
                                        Kathleen E. Cross

431728

11

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,        ) | |
| ) | |
| Plaintiff,       ) | |
| ) | |
| vs.       ) | |
| ) | |
| INTERNATIONAL BUSINESS   ) | 1:05-cv-10306-RWZ |
| MACHINES CORPORATION,   ) | |
| STEVEN A. MILLS, CHARLES ILL,   ) | |
| JOHN R. JOYCE, and   ) | |
| GREGORY ENRIQUEZ,   ) | |
| ) | |
| Defendants.     ) | |

**AFFIDAVIT OF KATHLEEN E. CROSS IN SUPPORT OF PLAINTIFF'S SURREPLY**

I, Kathleen E. Cross, do hereby depose on oath and state as follows:

1.      I am an attorney admitted to practice in Massachusetts in 1990 and a shareholder of the law firm of Hanify & King, P.C. ("Hanify & King"), One Beacon, Boston, Massachusetts, 02108.

2.      I, along with the law firm of Hanify & King, represent the plaintiff in this matter, Thomas Cashman.

3.      Attached as Exhibit A hereto is a true and accurate copy of a document that I printed from the official website of the defendant, International Business Machines Corporation.  The document is entitled, *News:  IBM to acquire Rational Software.*

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14TH DAY OF JUNE, 2005.

_____
Kathleen E. Cross

432131

# EXHIBIT A

 **United States**

**Search**

Home  |  Products & services  |  Support & downloads  |  My account

Select a country

# News

**News**

Previous stories

Events

Publications

**Related links:**

IBM Press room

Announcement letters

IT analyst support center

Webcasts

### IBM to acquire Rational Software

IBM and Rational Software Corp. announced the two companies have entered into a definitive agreement for IBM to acquire the equity of Rational at a price of approximately $2.1 billion in cash or $10.50 per share.

Rational provides open, industry standard tools, best practices and services for developing business applications and building software products and systems, including embedded software for devices such as cell phones and medical systems.

IBM now will provide a complete software development environment for companies that want to integrate their business processes and software infrastructure across their companies, with suppliers, customers and employees. This requires the integration of data management, systems management, collaboration, transaction and business process integration middleware and software development. The acquisition of Rational will strengthen IBM's leadership in each of these segments, including software development, and reinforces IBM's commitment to open industry standards. The acquisition is an important element of IBM's e-business on demand strategy.

"The software industry, business customers and developers are increasingly demanding software that is based on open industry standards and enables integration -- integration of business applications across the enterprise and the value chain of customers and suppliers," said Steve Mills, IBM senior vice president and group executive, Software Group. "This is an important aspect of IBM's On Demand strategy. Rational supports what IBM does best, which is provide infrastructure software and software tools to help our customers create a complete software development environment. This deal extends IBM's ability to help customers into the 'on demand' future with tools built on industry standards to develop, integrate and manage their business processes."

Rational provides a software development platform that can improve the speed, quality and predictability of software projects. Ninety-eight of the Fortune 100, including IBM, use Rational tools and services. IDC estimates the market opportunity for application development software will grow from $9 billion in 2002 to $15 billion in 2006.

"Rational helps software developers around the world write software faster, with less risk and can help produce a higher return on investment," said Michael Devlin, CEO and co-founder, Rational Software. "The combination of Rational and IBM is a logical extension to what has been a very beneficial, 20-year relationship and will significantly extend our progress in key markets and customer segments."

With headquarters in Cupertino, California, and Lexington, Massachusetts, Rational has more than 3,400 employees and customers in 89 countries. Rational estimates that more than 600,000 software developers use its software

**See also**

→ Rational site

→ IBM software

→ Acquisition Web

tools. IBM intends to merge Rational's business operations and employees into the IBM Software Group as a new division and fifth brand, joining WebSphere, Lotus, Tivoli and DB2. When the acquisition closes, Mike Devlin will become the general manager of the new division and will report to Steve Mills.

Industry analysts have reported that companies using Rational software have seen return on investment rates of 200 percent and higher as a result of increased productivity and application quality and reduced development cycles and testing times. IBM has been using Rational software since 1985.

Rational provides the broadest support for enterprise application development on J2EE, .NET, Linux and other platforms to support the deployment of solutions on the customer's choice of hardware and software platforms. Rational's tools also are used to build technical software, commercial software products and software for embedded devices and real-time systems, such as pagers, cell phones, medical devices, air traffic control systems and government defense systems.

Once the acquisition is completed, IBM plans to:

- Market and sell Rational's application development offerings worldwide through the Rational sales force, which will become part of the IBM sales force team;

- Integrate Rational's products more tightly with IBM software products;

- Continue Rational's investment in and support for open standards technologies that support a variety of platforms, including Unix, Windows and others; and

- Accelerate investments in Rational products to better support the emerging requirements of current customers, system integrators (SIs) and independent software vendors (ISVs).

The acquisition is subject to customary closing conditions, including Rational stockholder and government regulatory approvals. IBM and Rational anticipate closing in the first quarter of 2003.

Rational Software provides a software development platform that improves the speed, quality, and predictability of software projects. Rational's integrated, full lifecycle solution combines software engineering best practices, market-leading tools and professional services. Ninety-eight of the Fortune 100 rely on Rational tools and services to build better software, faster. This open platform is extended by partners who provide more than 500 complementary products and services. Founded in 1981, Rational is one of the world's largest software companies, with revenues of $689 million in its twelve months ended March 31, 2002, and more than 3,400 employees worldwide. Rational is a member of the S&P 500 Index and a component of the Nasdaq-100 Index. Additional information is available at www.Rational.com and www.theRationaledge.com, the monthly e-zine for the Rational community.

**About IBM**  |  **Privacy**  |  **Terms of use**  |  **Contact**