UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CASHMAN,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 05 10306 RWZ |
| | ) |
| INTERNATIONAL BUSINESS MACHINES<br>CORPORATION, STEVEN A. MILLS,<br>CHARLES ILL, JOHN R. JOYCE, and<br>GREGORY ENRIQUEZ,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

**RESPONSE OF DEFENDANTS STEVEN A. MILLS, JOHN R. JOYCE, AND CHARLES ILL TO PLAINTIFF'S JUNE 14, 2005 MOTION TO FILE A SURREPLY**

On March 8, 2005, defendants Steven A. Mills, John R. Joyce, and Charles Ill moved to dismiss the complaint for lack of personal jurisdiction. Since then, plaintiff has filed multiple briefs, including briefs in support of his related motion for jurisdictional discovery, all of which purport to set forth numerous arguments for why a Massachusetts court can assert jurisdiction over these out-of-state defendants. For their part, defendants filed a motion for a protective order against plaintiff's jurisdictional discovery requests, and also sought leave to file a reply brief in support of their motion to dismiss. As a result of all these filings, defendants believe that the record is more than sufficient for the Court to conclude that dismissal of the complaint as to these defendants is appropriate on jurisdictional grounds.

Notwithstanding the above, plaintiff recently filed a *second* surreply brief in what seems to be a never-ending quest to have the last word.[1] In addition, plaintiff sent the Court a letter

---

[1] The sequence leading up to the plaintiff's last filing is as follows: First, defendants filed their motion to dismiss with supporting memorandum; then plaintiff filed his response. Then, defendants sought leave to file a reply brief to respond to new arguments in plaintiff's response brief. Then, plaintiff filed a brief labeled an "opposition" to defendants' motion to file a reply brief. Plaintiff's "opposition" brief also requested permission to file a surreply, although plaintiff did not move the Court for leave to filed a surreply, as normally would be required under these circumstances. Instead, plaintiff incorporated the text of his proposed surreply into his "opposition"

dated June 24, 2005, in which he argues extensively that a recent Massachusetts Superior Court opinion supports jurisdiction here. While defendants are extremely reluctant to burden the Court with more briefs, plaintiff's latest filing and his letter misrepresent defendants' arguments, expand on new arguments originally set out in plaintiff's "opposition" to defendants' motion to file a reply brief, and cite additional case law.

1.  **Plaintiff's last-ditch effort to salvage jurisdiction over these defendants by relying on general jurisdiction principles is without merit.**

*First*, as defendants previously demonstrated, whether general jurisdiction principles even extend to non-corporate defendants is debatable. Plaintiff's assertion that "scores of cases in the First Circuit and elsewhere have considered asserting personal jurisdiction over individuals based on general jurisdiction" ( Pl. Surreply at 9 n.6) is misleading. For the most part, including in the cases plaintiff cites, courts have failed to address the issue.[2] The few courts that have considered the issue have expressed doubt that the kind of "substantial and continuous" activity required for a finding of general jurisdiction can ever be found in cases involving personal jurisdiction over individuals rather than corporate entities.[3]

*Second*, even if plaintiff could satisfy the constitutional requirements for general jurisdiction in this case – which he cannot – he still could not satisfy the state long-arm statute.

---

(continued...)
brief. Because plaintiff's "opposition" brief made new arguments on personal jurisdiction, defendants were forced to file a "response" to the "opposition." Apparently not content with the first surreply, plaintiff then decided to make a motion for leave to file a surreply, to which he attached a second version of his proposed surreply. The second version adds to the arguments made in the first. Defendants are responding here to this second surreply (as well as to the even more recent letter brief plaintiff sent to the Court).

[2] The only case plaintiff cites in which general jurisdiction is found over an individual is *FCNB Spiegel Inc. v. Dimmick*, 619 N.Y.S.2d 935-37 (1995), where the New York state court held that the defendant was "constructively" present in New York and hence subject to jurisdiction there because, although he lived in New Jersey, he was permanently employed in New York City and commuted there on a daily basis to conduct business. None of these defendants commute to Massachusetts to conduct business there on a daily basis, nor does Plaintiff so allege.

[3] *See Burnham v Superior Court of Cal.*, 495 U.S. 604, 610 n. 1 (1990); *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 10093 (M.D.Fla. 1995); *In re DaimlerChrysler AG Securities Lit.*, 197 F.Supp.2d 86,97 (D. Del. 2002).

In his latest filing, plaintiff asserts that his Wage Act claim should be treated as a breach of contract claim. The Massachusetts long-arm statute provides for personal jurisdiction over a breach of contract claim pursuant to subsection (a)'s "transact[ing] business" test. *See* Mass. G.L. c. 223A, § 3(a). And, it is well established that subsection (a)'s transacting business test "is grounded on specific jurisdiction" only. *Connecticut Nat'l Bank v. Hoover Treated Wood Prods., Inc.*, 37 Mass. App. Ct. 231, 233 n.6, 638 N.E.2d 942, 944 n.6 (1994). Therefore, plaintiff's general jurisdiction argument never gets off the ground because the requirements of Massachusetts law stops it in its tracks.[4]

2. **Plaintiff cannot establish specific jurisdiction over defendants regardless of whether contract-based or tort-based principles are applied.**

Plaintiff asserts that defendants err by relying on the causation analysis of *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715-16 (1st Cir. 1996), because his Wage Act claim is essentially a breach-of-contract claim, and not a tort claim. This is a rather odd argument to make, given that it was *plaintiff* who relied on *Nowak* in his brief in response to defendants' motion to dismiss. Moreover, although *Nowak* is a tort case, it involved jurisdiction under the "transacting business" prong of the state long-arm statute, which is also at issue here.

Plaintiff's new argument appears to be focusing on the nature and the quality of the contacts, instead of the relatedness inquiry. It is the latter and not the former that is at issue here. (*See* Def. Reply Br. at 4.) And causation is important to the relatedness inquiry, regardless of

---

[4] Plaintiff attempts to avoid this problem by suggesting that the state long-arm statute is automatically satisfied if general jurisdiction can be found. (*See* Pl. Surreply at 9 n.5.) In fact, that is not the case. As this Court has recognized, *in addition to* due process requirements, a "nonresident defendant must be amenable to service of process" under the state long-arm statute. *Radionics, Inc. v. Elekta Instrument AB*, No. Civ. A 93-10014-Z, 1994 WL 175028, * 1 (D. Mass. Apr. 26, 1994) (Zobel, J.). Thus, if the Massachusetts long-arm statute does not reach the defendants, the court may not assert jurisdiction over them even if constitutional standards are met. *Id.*; *see also Jana Brands, Inc. v. NexiFM, Inc*, No. 1:01CV12320, 2003 WL 164251, * 1 (D. Mass. Jan. 23, 2003) (Zobel, J.) (recognizing that state long-arm statute must be met both in its "literal" as well as its "constitutional" boundaries). The new case plaintiff cites in his letter to the Court also holds that the Massachusetts long-arm statute imposes separate requirements that must be met independent of the requirements of constitutional due process. *See O'Leary*

whether the case raises tort or contract claims. As the *Nowak* court explained, the relatedness requirement "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action . . . [and] *ensures that the element of causation remains in the forefront of the due process investigation.*" *Id.* at 714 (emphasis added) (internal quotation marks omitted). That causation is just as important in a contract case as in a tort case is demonstrated by the opinion of Chief Judge Young in *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 158 n.1 (D. Mass. 2002), which relies on *Nowak* for its relatedness analysis of a Wage Act claim. In fact, the very case on which plaintiff relies -- *United Electrical Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) -- establishes this principle. In that case, the First Circuit rejected a finding of relatedness *in a breach of contract* case where the alleged "breach of contract [could] not conceivably be said to have arisen directly from, *or been caused proximately by*, ITD's remaining Massachusetts contacts." *Id.* (emphasis added). Thus, *United Electrical* supports the defendants' position that their allegedly wrongful conduct under the statute -- *i.e.*, their supposed *failure to pay plaintiff wages* -- must be sufficiently related to their contacts with Massachusetts to justify personal jurisdiction under the due process clause.

Here, plaintiff talks generally about the defendants' contacts "relating to Mr. Cashman's *employment relationship* with IBM" (Pl. Surreply Br. at 4 (emphasis added)), but he does not attempt to connect those contacts to his specific Wage Act claim regarding the defendants' alleged *failure to pay wages*. Resolution of the relatedness issue turns on the latter, not the former, as defendants previously demonstrated in their reply brief. (*See* Defendants' Reply at 8-

---

(continued...)

*v Henn*, Civ. Action No. 04-01653, slip op. at 3-4 (Mass. Super. Ct. June 10, 2005) (jurisdiction is permissible only when it is authorized by "*both*" the state long-arm statute and the requirements of due process) (emphasis added).

10 (citing cases regarding contacts with the forum sufficiently "related" to the plaintiff's claim to constitute the acts by which the defendants supposedly *caused* the plaintiffs injuries).)

Saying that the Court should look at contract-based contacts, therefore, does not help plaintiff. None of the general business contacts plaintiff cites involve contacts relating to the defendants' alleged "breach of contract" (*i.e.*, IBM's alleged failure to pay wages). Moreover, there is no evidence that the defendants' alleged general business contacts relate to the broader contractual picture either, such as place of negotiations, place of contract formation, or course of conduct. Instead, plaintiff's purported evidence, as he admits, relates (if at all) only to defendants' claimed forum contacts generally connected with Mr. Cashman's employment. These contacts do not relate to the establishment of a contractual obligation to pay Mr. Cashman a certain amount of wages, or actions taken with respect to any contractual obligation to pay Mr. Cashman a certain amount of wages.

One of the primary cases on which plaintiff relies -- *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 290 (1st Cir. 1999) demonstrates why contacts such as those alleged here relating generally to plaintiff's employment relationship (if even that)[5] are not sufficient to establish the relatedness component of constitutional due process. In *Phillips Exeter*, the plaintiff asserted that the fiduciary relationship between the defendant and the plaintiff "should itself have been evaluated as a New Hampshire contact related to Exeter's claims." *Id.* The court rejected that argument, holding that the relatedness requirement is not met merely because a plaintiff's cause of action arose out of a general relationship between the parties. To the contrary, the court said, the action must directly arise out of the specific contacts between the defendant and the forum state: "[T]he mere existence of a contractual relationship

---

[5] It is a stretch to say that defendant Joyce's alleged contacts with Massachusetts relate to plaintiff in any way.

- 5 -

between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state. Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.'" *Id.*

In this case, none of the general business contacts alleged here relate to prior negotiations of the plaintiff's wages, contemplated future consequences of an agreement concerning plaintiff's wages, the actual terms of the alleged contract concerning plaintiff's wages, or the parties' actual course of dealing concerning plaintiff's wages. Thus, even under plaintiff's suggested contract-based analysis, plaintiff cannot satisfy the "relatedness" prong of the constitutional due process test.

The *Philips Exeter* court did recognize that the existence of a general relationship between the parties might play into the analysis of the third prong of the constitutional test regarding purposeful availment. 196 F.3d at 289. To the extent that plaintiff is relying on the alleged contractual relationship to establish purposeful availment by *these* defendants, that effort fails as well. As the complaint makes clear, the alleged facts regarding contract formation for the most part *do not even involve these defendants*. (*See* Cmplt., ¶¶ 28-49.) The only exceptions are two limited references to defendant Mills, who supposedly "wrote to hundreds of [ ] sales managers by email (including Mr. Cashman at his Massachusetts' office)" to convey a "message of unbounded earnings potential for sales personnel. . . ." (*Id.,* ¶ 39; *see also id.,* ¶ 41.) Mr. Mills purportedly conveyed a similar message at an IBM "E-University" speech. (*Id.,* ¶¶ 42, 49.) The E-University speech took place outside of Massachusetts. Therefore, the defendants' Massachusetts' contacts relating to plaintiff's breach of contract claim (*see id.,* ¶¶ 78-85), boil

down to a single email allegedly sent by only one of the defendants (Mills) to all salespersons wherever they were located. That this lone email fortuitously ended up being sent into Massachusetts because that is where the plaintiff kept his home office cannot be read as establishing purposeful availment of the privilege of conducting business in this state by Mr. Mills, and certainly cannot form the basis for jurisdiction in Massachusetts over the other two defendants.

3.  **The O'Leary case does not support jurisdiction here.**

Plaintiff's June 24, 2005 letter to the Court asserts that *O'Leary v. Henn*, Civ. Action No. 04-01653 (Mass. Sup. Ct. June 10, 2005), supports personal jurisdiction over these defendants. In fact, other than both raising a Wage Act claim, the two have nothing in common.

In *O'Leary*, the individual defendant the plaintiff sought to hold liable under the Wage Act was a significant investor in and outside director of the failed corporation. *O'Leary*, slip op. at 6. In addition, he also allegedly (1) "actively managed the affairs" of the company, (2) "controlled the daily operations" of the company "after obtaining secured creditor status," (3) "developed a furlough program to delay the assertion of inchoate wage claims" by company employees "with the hope that some would become time-barred," (4) "directed that the wage arrearages" of company employees not be paid, and (5) "gave the direction to deny payment of the plaintiff's unpaid wages and vacation pay." Id. at 9. The individual defendant's argument for why Massachusetts lacked personal jurisdiction over him was merely that he did all of the above from his office in Arizona. The court rejected this argument because those actions, while taken from the defendant's office in Arizona, were specifically and deliberately directed into Massachusetts.

As defendants pointed out both in their initial brief and in the reply brief for which they sought leave to file, their argument against personal jurisdiction under the Massachusetts long-

arm statute does not rely (as the defendant in *O'Leary* did) on their physical absence from the state. Rather, defendants' argument is that any contacts they may have had with Massachusetts do not "relate to" the plaintiff's claim for unpaid wages. In *O'Leary*, the defendant's contacts clearly did relate to the claim of unpaid wages. In fact, the court specifically noted that the defendant participated in a board meeting where "the topic of conversation was a proposed reduction in the future compensation of the plaintiff." *Id.* at 6. Thus, nothing in *O'Leary* supports plaintiff's position that general corporate contacts of an officer or other employee of a corporation -- that is, contacts that do not have any specific relation to the plaintiff's unpaid wages claim -- give rise to personal jurisdiction under either the Massachusetts long-arm statute or the Federal Constitution.

Moreover, the *O'Leary* court's resolution of the constitutional question was a single sentence with no separate analysis of the three-pronged due process inquiry applicable here.[6] In particular, the court did not specifically analyze the additional constitutional requirement of purposeful availment, also discussed in the defendants' proposed reply brief. Just like the "relatedness" prong, *O'Leary* also involved much stronger facts on purposeful availment, since the individual defendant allegedly was actively controlling the company from Arizona. For example, he was making all decisions about what debts, including wages, would be paid, knowing that the impact of those decisions would be felt in Massachusetts, where the company conducted its business.[7]

No similar allegations are made in this case against these defendants. Rather, plaintiff merely alleges (1) that defendant Ill responded from his New York office to plaintiff in

---

[6] "Following the same line of reasoning, this Court finds that Eller's Cognistar-related activities satisfy the Fourteenth Amendment due process requirement of minimum contacts." *O'Leary*, slip op. at 7.

[7] The corporation that allegedly failed to pay the plaintiff his wages had gone bankrupt (unlike IBM, in this case).

Massachusetts concerning plaintiff's claim of unpaid wages, and (2) that defendant Mills allegedly sent out mass emails to all employees in his group wherever they were located, or else held video web casts that allegedly reached plaintiff in Massachusetts, as well as other employees wherever they were located, concerning the sales plans under which plaintiff and his co-workers performed. As to defendant Joyce, plaintiff has not even alleged this much, relying instead solely on Joyce's overarching responsibilities as Chief Financial Officer of IBM. Thus, the defendants' contacts in this case with Massachusetts, assuming any exist, were no more than fortuitous, and do not satisfy the purposeful availment requirement.

Respectfully submitted,

**STEVEN A. MILLS, JOHN R. JOYCE AND CHARLES ILL**

/s/ Joan Ackerstein
Joan Ackerstein, BBO # 348220
Heather Stepler, BBO # 654269
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
(617) 367-0025

Janine Cone Metcalf (admitted pro hac vice)
Jordana R. Sternberg (admitted pro hac vice)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3053
(404) 521-3939
(404) 581-8330

Dated: June 28, 2005