UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10306-RWZ

THOMAS CASHMAN

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
STEVEN MILLS, CHARLES ILL, JOHN R. JOYCE
AND GREGORY ENRIQUEZ

MEMORANDUM OF DECISION

November 23, 2005

ZOBEL, D.J.

Defendant International Business Machines Corporation ("IBM") employed plaintiff Thomas Cashman as a manager and salesperson for several years. After far exceeding his sales quota in 1997, plaintiff accepted a three-year management position in the Netherlands to nurture IBM's European sales. As plaintiff's team began to realize significant sales in Europe, IBM increased the sales quotas and halved the percentage of commission compensation that could be earned by individual team members. Additionally, IBM reduced the percentage of commission compensation received by plaintiff based on team sales. As a result, plaintiff claims approximately $737,000 in lost commission compensation in 1999.

He returned to the Commonwealth in 2000 to lead a sales operation for one of IBM's software products lines, where he was encouraged by defendant Steven Mills ("Mills"), a Senior Vice President and Group Executive, to maximize his commission

compensation. However, despite his team's success, plaintiff received notice from his direct supervisor, Gregory Enriquez, that IBM would not pay him the full commission compensation due to him in 2001 under the software group sales plan. Instead, IBM reduced the amount of sales attributable to plaintiff and, correspondingly, his commission compensation by approximately $375,000. In 2002, plaintiff filed an internal grievance with Charles Ill ("Ill"), then IBM Vice President of Americas Software, but recovered only a small portion of the unpaid commission, and IBM denied his internal appeal. At the same time, plaintiff suffered poor performance ratings by Mr. Enriquez and thereby lost the opportunity to be considered for an executive management position. He attributes the subsequent elimination of possibilities for advancement and the reductions in his management responsibilities to his filing of the internal grievance.

Consequently, plaintiff filed the instant suit against IBM, Mills, Ill and Enriquez. He also named John R. Joyce, a Senior Vice President and Chief Financial Officer of IBM, as a defendant. With respect to plaintiff's 1999 compensation, Counts 1 and 2 allege breach of contract by IBM and unjust enrichment / quantum meruit. Counts 3 and 4 assert the same conduct by IBM with respect to plaintiff's 2001 compensation. In Count 5, plaintiff claims that all defendants violated the Massachusetts Wage Act, codified at Mass. Gen. Laws ch. 149, § 148, for failure to pay his commission compensation. Lastly, Count 6 accuses Enriquez of interfering with plaintiff's advantageous business relations.

Defendants Mills, Joyce and Ill now move for dismissal of the Complaint for lack

of personal jurisdiction. The exercise of personal jurisdiction requires satisfaction of both the Massachusetts long-arm statute and the United States Constitution. See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). The Massachusetts long-arm statute provides jurisdiction over an individual with respect to a claim "arising from the person's . . . transacting any business in this commonwealth." See Mass. Gen. Laws ch. 223A, § 3(a). Commonwealth courts apply a broad interpretation to the transaction requirement, whereby "the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy" the long-arm test. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). When a contract involving other forum-related activities exists between the parties, "a defendant's relatively minor contacts with a Massachusetts plaintiff have been held sufficient to satisfy the transacting business requirement set out in § 3(a)." Id. at 768. The requirement that a claim "arise from" the transaction is met when the claim would not have occurred but for the transaction and is also subject to broad construction. Id. at 770-71.

According to plaintiff, Mills' contacts with the Commonwealth consisted of email communication to sales managers including at least two located in Massachusetts (although not directly to plaintiff) regarding motivation of the sales force and support of the 2001 software group sales plan, written correspondence to plaintiff in Massachusetts congratulating him on meeting the 2001 sales quota, webcasts to the sales force in Massachusetts including plaintiff and his reliance on weekly sales forecasts. (See Pl.'s Oppos. 6-8; Pl.'s Surreply 4; Cashman Aff. ¶¶ 5, 6, 8-10, 12-15).

3

Ill's contacts with the Commonwealth included his reliance on plaintiff's sales forecasts, his review and approval of plaintiff's 2001 annual performance evaluation, his sending a motivational email to plaintiff's team regarding the 2001 sales plan and his handling of plaintiff's grievance in 2002.  (See Pl.'s Oppos. 4-5; Cashman Aff. ¶¶ 5, 9-11, 13, 15).  Regarding Joyce, plaintiff asserts contacts with the forum based upon his overall responsibility for financial and business development of IBM and the availability to him of sales forecasts data.  (See Pl.'s Oppos. 8; Cashman Aff. ¶¶ 9, 15).

These contacts do not satisfy the Massachusetts long-arm statute for personal jurisdiction over Mills, Ill and Joyce with respect to plaintiff's claim under the Massachusetts Wage Act in Count 5.  Whether, in connection with plaintiff's employment agreement, Ill or Mills' contacts satisfy the broad test for transacting business in Massachusetts is arguable.  Regardless, however, plaintiff fails to demonstrate how his claim arises from these contacts.  Ill and Mills argue that their contacts, as alleged by plaintiff, were unrelated to the actual decision not to pay the commissions compensation.  (See Defs.' Mem. in Supp. of Mot. 4-5).  Although plaintiff repeatedly asserts that the nonpayment was made possible by defendants' contacts, he never articulates an actual causal connection between these events.  Specifically, plaintiff never explains why the decision not to pay plaintiff's full commission would not have occurred but for Ill and Mills' respective support of the sales plan.  Additionally, plaintiff never links Ill or Mills' use of sales forecasts with the failure to pay.  While plaintiff argues that Mills intended to use the forecasts to produce a budget sufficient to cover software group expenses including commissions compensation, still plaintiff

4

never clarifies how the alleged budget shortfall led to Mills' participation in the denial of plaintiff's commissions.  (See Pl.'s Surreply 4).  Plaintiff points to Ill's participation in the grievance process, but this contact necessarily occurred after the harm claimed.  (See Pl.'s Oppos. 12).  With respect to Joyce, plaintiff fails to cite any actual contact by Joyce with the Commonwealth or its residents, much less plaintiff, or any relationship between such contacts and the instant claim.  The scope of the long-arm statute, though broad, does not extend that far.  Plaintiff's failure to satisfy the Massachusetts long-arm statute renders unnecessary an analysis of personal jurisdiction under the Constitution.

Accordingly, defendant's motion for dismissal of the Complaint for lack of personal jurisdiction (#6 on the docket) is allowed as to defendants Ill, Mills and Joyce.


|  DATE | /s/ Rya W. Zobel  <br>RYA W. ZOBEL  <br>UNITED STATES DISTRICT JUDGE |
|---|---|